1  Mark C. Goodman (State Bar No. 154692)
       mark.goodman@bakermckenzie.com
2  **BAKER & McKENZIE LLP**
   Two Embarcadero Center, 11th Floor
3  San Francisco, CA  94111
   Telephone:   +1 415 576 3000
4  Facsimile: +1 415 576 3099

5  Alexander G. Davis (State Bar No. 287840)
       alexander.davis@bakermckenzie.com
6  Anne Kelts Assayag (State Bar No. 298710)
       anne.assayag@bakermckenzie.com
7  **BAKER & McKENZIE LLP**
   600 Hansen Way
8  Palo Alto, CA  94304-1044
   Telephone:   +1 650 856 2400
9  Facsimile: +1 650 856 9299

10  Attorneys for Defendants
    SUBWAY RESTAURANTS, INC.,
11  FRANCHISE WORLD HEADQUARTERS, LLC and
    SUBWAY FRANCHISEE ADVERTISING TRUST FUND LTD.

12

                    **UNITED STATES DISTRICT COURT**

13

                   **NORTHERN DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| KAREN DHANOWA and NILIMA AMIN, on behalf of themselves and all others,<br><br>Plaintiffs,<br><br>vs.<br><br>SUBWAY RESTAURANTS, INC., a Delaware Corporation; FRANCHISE WORLD HEADQUARTERS, LLC., a Connecticut Limited Liability Corporation; SUBWAY FRANCHISEE ADVERTISING TRUST FUND LTD., a Connecticut Corporation; and DOES 1 through 50, Inclusive,<br><br>Defendants. | Case No.  4:21-cv-00498-JST<br><br>**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:   September 2, 2021<br>Time:   2:00 p.m.<br>Ctrm:   Courtroom 6 – 2nd Floor<br>Judge:  Hon. Jon S. Tigar<br>Oakland Courthouse<br><br>Complaint Filed: January 21, 2021<br>Amended Complaint Filed: June 8, 2021 |

# <u>TABLE OF CONTENTS</u>

**Page**

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 1

I.      INTRODUCTION ..................................................................................................... 2

II.     RELEVANT FACTUAL BACKGROUND................................................................. 3

      A.      Plaintiffs' Unexplained And Speculative Fraud Allegations........................................ 3

      B.      Subway's Actual Menus, Labeling And Advertising Practices.................................... 4

      C.      Plaintiffs Do Not Allege Facts Showing *Why* Subway's Statements Are False.......... 5

III.    PROCEDURAL HISTORY......................................................................................... 7

IV.     DISCUSSION ............................................................................................................ 8

      A.      The Pleading Standards That Apply To This Case...................................................... 8

      B.      Plaintiffs Cannot Meet The Federal Pleading Standard............................................. 10

            1.      Plaintiffs Offer no Facts to Support their Misrepresentation Allegations ...................................................................................... 10

            2.      Plaintiffs' Allegations about Adulteration are Speculative, too ..................... 13

            3.      Plaintiffs do not Allege where they saw Subway's Representations.............. 13

V.      CONCLUSION........................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...............................................................................................13

*Astiana v. Ben & Jerry's Homemade, Inc.,*
   No. C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ...........................8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).................................................................................................2

*Brazil v. Dole Food Co.,*
   935 F.Supp.2d 947 (N.D. Cal. 2013)...................................................................9, 10

*Cafasso v. Gen. Dynamics C4 Sys.,*
   637 F.3d 1047 (9th Cir. 2011) .............................................................................12

*Chevron Prods. Co. v. Advanced Corrosion Techs. & Training, LLC,*
   No. 20-cv-09095-CRB, 2021 WL 2156467 (N.D. Cal. May 27, 2021) ....................10

*Colgate v. JUUL Labs, Inc.,*
   345 F.Supp.3d 1178 (N.D. Cal. 2018) ..............................................................11, 14

*Cooper v. Curallux LLC,*
   No. 20-cv-02455-PJH, 2020 WL 4732193 (N.D. Cal. Aug. 14, 2020) ....................11

*In re Ferrero Litig.,*
   794 F.Supp.2d 1107 (S.D. Cal. 2011) ...............................................................9, 14

*Fmali Herb, Inc. v. Heckler,*
   715 F.2d 1385 (9th Cir. 1983) ...............................................................................6

*Ham v. Hain Celestial Grp., Inc.,*
   70 F.Supp.3d 1188 (N.D. Cal. 2014) ....................................................................11

*In re Harmonic Inc. Sec. Litig.,*
   163 F.Supp.2d 1079 (N.D. Cal. 2001) ..................................................................12

*In re Invision Techs., Inc. Sec. Litig.,*
   No. C04-03181 MJJ, 2006 WL 538752 (N.D. Cal. Jan. 24, 2006) ..........................12

*IUE AFL-CIO Pension Fund v. Herrmann,*
   9 F.3d 1049 (2d Cir. 1993)..................................................................................3, 9

*Jones v. Conagra Foods, Inc.,*
   912 F.Supp.2d 889 (N.D. Cal. 2012) .....................................................................9

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................10

*Love v. FYI MC, LLC*,
    No. 21-cv-02845-EMC, 2021 WL 2913654 (N.D. Cal. July 12, 2021) ......................4

*McFall v. Perrigo Co.*,
    No. 2:20-cv-07752-FLA (MRWx), 2021 WL 2327936 (C.D. Cal. Apr. 15, 2021) ..................16

*Moore v. Trader Joe's Co.*,
    No. 4:18-cv-04418-KAW, 2019 WL 2579219 (N.D. Cal. June 24, 2019)................................8

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ................................................................8

*Romero v. Flowers Bakeries, LLC*,
    No. 14-cv-05189-BLF, 2015 WL 2125004 (N.D. Cal. May 6, 2015).......................8, 10, 13, 14

*Sherwin-Williams Co. v. JB Collision Servs.*,
    No. 13-CV-1946-LAB-WVG, 2014 WL 5112057 (S.D. Cal. Oct. 9, 2014) ..............................15

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ................................................................8

*Tompkins v. Emc Mortg. Corp.*,
    No. CV 10-608-PHX-SRB, 2010 WL 11629510 (D. Ariz. Oct. 28, 2010)................................12

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) ................................................................3, 9, 17

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................14

**Statutes**

Federal Food, Drug, and Cosmetic Act................................................................16

**Other Authorities**

CACI § 1900 ................................................................15

Fed. R. Civ. P. 8 ................................................................1

Fed. R. Civ. P. 9(b) ................................................................ *passim*

Fed. R. Civ. P. 11 ................................................................8, 17

Fed. R. Civ. P. 12(b)(6)................................................................1, 4, 8

## NOTICE OF MOTION AND RELIEF REQUESTED

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

Please take notice that, on September 2, 2021, at 2:00 p.m. or as soon thereafter as the matter can be heard in Courtroom 6, 2nd Floor, of the United States District Court, Oakland Courthouse, located at 1301 Clay Street, Oakland, CA 94612, Defendants Subway Restaurants, Inc., Franchise World Headquarters, LLC and Subway Franchisee Advertising Trust Fund Ltd. (collectively, "Subway") will and do hereby move the Court for an order dismissing the plaintiffs' First Amended Complaint (the "FAC").

Subway's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, the declarations of Alexander G. Davis and Jennifer Myers, the Proposed Order, any oral argument that may be presented at the hearing, on all other papers, records and pleadings on file in this action and on such additional evidence and argument as the Court may allow prior to and during the hearing on this motion.

*Relief Requested*:  Subway respectfully requests that the Court (1) grant its request for judicial notice and (2) issue an order dismissing with prejudice the FAC in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state any claim on which relief may be granted and terminating the action.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the FAC must be dismissed under Federal Rules of Civil Procedure 8 and 9(b) because it fails to allege facts demonstrating that certain alleged representations by Subway about its tuna products are false or misleading to a reasonable consumer of tuna products.

2.      Whether the FAC must be dismissed under Federal Rules of Civil Procedure 8 and 9(b) because it fails to allege facts supporting a plausible inference that the plaintiffs relied on misleading statements before purchasing tuna products from Subway restaurant locations in California at some time between January 21, 2017 and December 31, 2020 or were damaged in any way as a result of purchasing such products.

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

One of the most fundamental tenets of federal pleading standards is that a plaintiff's factual

4

allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

5

*Twombly*, 550 U.S. 544, 555 (2007).  Here, despite initially filing a baseless lawsuit recklessly

6

claiming that Subway tuna products do not contain any tuna whatsoever, being warned repeatedly

7

by Subway to withdraw their unsupportable claims and being provided facts demonstrating that

8

their claims were demonstrably false because all Subway tuna products consist of tuna, the plaintiffs

9

refused to dismiss the meritless suit and instead filed an amended complaint that entirely withdraws

10

the claim that Subway tuna is not tuna but asserts vague, wholly speculative and unsupportable

11

claims about the origins of Subway's tuna products.  Such tactics cannot be allowed to succeed.

12

Indeed, after first baldly claiming that Subway's tuna was not tuna, a demonstrably false

13

claim that was quickly abandoned, the plaintiffs -- still without a scintilla of actual factual support

14

-- now allege that tuna wraps, sandwiches or salads purchased from a Subway restaurant in

15

California at some point during a three year period may not have been "100% sustainably caught

16

skipjack and yellowfin tuna" and/or might have contained "tuna species that come from anything

17

less than healthy stocks, for example Albacore and Tongol."  Plaintiffs offer no facts to support

18

these allegations.  In an extraordinary violation of their requirements to conduct due diligence before

19

filing claims in this Court and to plead the fraud alleged in the FAC "with particularity" under

20

Federal Rule of Civil Procedure 9(b), the plaintiffs do not set forth facts sufficient to explain ***what***

21

false statements they supposedly saw, ***where*** and ***when*** they saw those statements and ***why and how***

22

any statements made by Subway are false.  Perhaps more importantly, the plaintiffs also fail to

23

plausibly allege actual reliance on any alleged representations because they do not claim they visited

24

the lone page on Subway's website where such statements have ever actually appeared and do not

25

allege that they did so before they purchased any Subway tuna products or that they incurred any

26

actual damages as a result of purchasing and enjoying Subway's tuna products.

27

Plaintiffs' failure to allege facts that state a plausible claim against Subway does violence to

28

the core policies of Rule 9(b): "[T]o deter the filing of complaints as a pretext for the discovery of

unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis" (*United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal citations and quotations omitted)), to safeguard a "defendant's reputation and goodwill from improvident charges of wrongdoing" and to "inhibit the institution of strike suits" (*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993)).  These principles are dear and the Court should not tolerate the violation of Rule 9 that the plaintiffs are perpetrating here.

Given the allegations in the FAC and the circumstances at issue -- including the fact that the plaintiffs cannot allege that they purchased Subway tuna products based only on statements that are not made in any Subway advertisement, in any Subway restaurant or on any Subway menu -- the Court should dismiss the plaintiffs' FAC without leave to amend, put an end to this frivolous lawsuit and allow Subway and its thousands of small business franchisees to clear their good names.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   Plaintiffs' Unexplained And Speculative Fraud Allegations

Plaintiffs are alleged to be residents of Alameda County, California.  (FAC at ¶¶14-15.) At some point between January 21, 2017 and "2020," the plaintiffs each purchased one or more tuna products -- including tuna sandwiches, wraps and/or salads -- from Subway restaurants in California.  (*Id.* at ¶33.)  The FAC does not allege that the plaintiffs actually read or relied on any specific statements by Subway or at a Subway restaurant before purchasing and consuming Subway tuna products or that the plaintiffs tested or otherwise investigated the products to determine how the tuna was caught or what kind of tuna it is.  Instead, the plaintiffs generally allege that Subway's advertising, labeling, marketing and packaging have at some point included statements that (1) tuna products are "100% sustainably caught skipjack and yellowfin tuna" and (2) tuna products do not include "tuna species that come from anything less than healthy stocks, for example Albacore and Tongol."  (*Id.* at ¶25.)  Plaintiffs do not attempt to link either alleged statement to a particular mode of advertising, labeling, marketing or packaging, do not allege who supposedly made the statements or when exactly those statements were made and do not allege

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

facts demonstrating that the alleged statements are false or caused them to incur any specific damages.  Tellingly, the plaintiffs do not allege that they ever visited Subway's website before purchasing any Subway tuna products.

**B.      Subway's Actual Menus, Labeling And Advertising Practices**

While the claims alleged in the FAC depend on consumers actually being misled by labeling or advertising, Subway's restaurants, labels and advertising have never featured the representations alleged in the FAC.  The menus at every Subway restaurant in California and on the internet simply describe Subway's tuna products as "Tuna" or "Classic Tuna."  (Request for Judicial Notice("RJN"), Exs. A-H, M-R.)[1]  Subway tuna sandwiches and wraps are served in nonspecific paper packaging and "To-Go" bags that make no representations about tuna or any other aspect of the product.  (RJN, Exs. J and L.)  Subway tuna salads likewise are served in packaging bearing no statements regarding the products.  (RJN, Ex. K.)

The "US Product Ingredient Guide" -- available for download on the Subway website and available in paper copy at Subway restaurant locations -- describes Subway "Tuna Salad" as "Flaked Tuna in Brine (tuna, water, salt), mayonnaise."  (RJN, Ex. U.)  For the time period during which the plaintiffs claim they purchased Subway tuna products, the ordering portal on the Subway website stated that the "Classic Tuna" sandwich included "[f]laked tuna blended with creamy mayo then topped with your choice of crisp, fresh veggies."  (RJN, Exs. M and N.)  The website ordering page similarly described tuna wraps and salads as "flaked tuna."  (RJN, Exs. O-R.)  The FAC does not take issue with any of the representations that a consumer might actually see when purchasing tuna products from Subway.

The fact is, Subway did not run any media advertising campaigns between January 21, 2017 and December 31, 2020 stating that its tuna products are "100% sustainably caught skipjack

---

[1] The Court can consider these matters on a motion to dismiss: "When ruling on a Rule 12(b)(6) motion to dismiss, a court may, without converting the motion to one for summary judgment, consider 'documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice[.]'"  *Love v. FYI MC, LLC*, No. 21-cv-02845-EMC, 2021 WL 2913654, at *3 (N.D. Cal. July 12, 2021) (quoting *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003)).

and yellowfin tuna" or that Subway does not use "tuna species that come from anything less than healthy stocks, for example Albacore and Tongol."  Instead, a few Subway advertising campaigns simply used the word "Tuna" to describe certain new sandwich offerings.  (RJN, Ex. I.)  Plaintiffs do not allege any specific facts to the contrary in the FAC.

Importantly, while the FAC does not alleged any facts about where they were made or who exactly made them, the representations alleged in the FAC in fact appeared only on a single page on Subway's website that has nothing to do with ordering or purchasing any food products. Indeed, to see the statements alleged in the FAC, a customer not only would have to go to Subway's website, she would have to click on a tab at the top of the homepage titled "Responsibility" and then would need to select a tab labeled "Our Communities" from five available options.  From the "Our Communities" menu, the customer would have to select a sub-section called "Responsible Sourcing" from three other options.  The customer would then have to go to the very bottom of that page, where she would see the following statements about tuna between approximately September 2018 and November 2020: "We only sell skipjack and yellowfin tuna.  It is sourced from fisheries with non-threatened stock levels.  Furthermore, we have a global ban on the sale of tuna species that come from anything less than healthy stocks, for example Albacore and Tongol."  (RJN, Exs. S and T.)  The FAC does not include any facts demonstrating that the plaintiffs ever explored the Subway website, much less found the "Responsible Sourcing" sub-section of the "Our Communities" page, or that they did so before purchasing tuna products from a Subway restaurant in California and specifically relied on those particular statements in making their purchasing decisions.  Nor does the FAC allege any facts demonstrating that Subway competitors sell tuna that is different than the tuna that Subway sells or that is priced any differently.

## C.  Plaintiffs Do Not Allege Facts Showing *Why* Subway's Statements Are False

The FAC concedes that the plaintiffs did not verify the contents of the tuna they allegedly purchased from Subway.  (FAC at ¶34.)  However, this lack of facts did not stop the plaintiffs from claiming that Subway tuna products do not contain 100% sustainably caught skipjack and yellowfin tuna, whatever that means.  (*Id.* at ¶31.)  Critically, the FAC -- unlike the abandoned

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   claims from the original complaint -- does not expressly allege that Subway's tuna products are

2   not 100% tuna or that the products are not 100% sustainably caught.  Indeed, the FAC does not

3   even allege what the tuna products are if they are not 100% sustainably caught skipjack and

4   yellowfin tuna.  The FAC does not identify any testing indicating the presence of ingredients other

5   than what Subway has said is in its tuna products; *i.e.,* tuna and mayonnaise.  Nor does the FAC

6   set forth any subjective facts -- such as that the product smelled or tasted like something other than

7   tuna -- but instead summarily and baldly proclaims that Subway's representations about its tuna

8   are false, period, without further explanation.  Plaintiffs even go so far as to attempt to shift their

9   pleading burden onto Subway, claiming that they did not receive a tuna product that ***Subway*** "can

10  establish . . . was 100% sustainably caught skipjack and yellowfin tuna.  (*Id.* at ¶6.)  Such

11  allegations improperly attempt to turn the rules of pleading on their head.

12        Plaintiffs next allege that Subway does not take "sufficient measures to control or prevent

13  the known risks of adulteration" of its tuna products.  (FAC at ¶22.)  This allegation was

14  undoubtedly cut and pasted from a prior complaint in a different lawsuit that the plaintiffs'

15  lawyers filed about defective food products, as there is no allegation in this case that the tuna

16  products were actually adulterated.  Indeed, the FAC stops well short of alleging what the known

17  risks are, what adulteration might have befallen the tuna products the plaintiffs allegedly

18  purchased and consumed or what measures would be sufficient to prevent adulteration and why.

19  Plaintiffs charge Subway with "actively perpetuat[ing] actions and steps that encourage mixing

20  non-tuna ingredients into the" tuna products but they provide no facts explaining what these

21  "actions and steps" are, what "non-tuna ingredients" might actually be in the products or how the

22  plaintiffs have made any such determination.  (*Id.*)  The most the plaintiffs say is the wholly

23  unsupportable claim that, because Subway's tuna arrives at its stores in sealed vacuum bags that

24  are packaged outside of the United States, the contents of those bags cannot be trusted.  (*See id.*)

25  These allegations are not only hopelessly speculative, they ignore the fact that such imports are

26  subject to FDA jurisdiction and regulations, meaning that those food products are just as

27  trustworthy as anything packaged in the United States.  *See generally*, *Fmali Herb, Inc. v.*

28  *Heckler*, 715 F.2d 1385, 1386 (9th Cir. 1983) (describing FDA regulations governing pretesting

1   requirements relating to introduction of foreign-originating food substances into products sold in

2   the United States).

3          The FAC asserts a variety of statutory and common law claims, all of which sound in fraud

4   and are based on the same theory; *i.e.,* for reasons the plaintiffs are entirely incapable of

5   explaining, Subway's representations about the content of its tuna products are somehow

6   inaccurate or misleading.  (*See* FAC at ¶¶45-124.)  All of these claims must be dismissed.

7   **III.    PROCEDURAL HISTORY**

8          It would be bad enough if the FAC represented the plaintiffs' first effort at stating claims

9   against Subway.  But it is truly telling (and damning) that this lawsuit was initiated by the

10  plaintiffs' lawyers filing a complaint alleging that Subway's tuna products contain **no tuna fish at**

11  **all**.  (*See* ECF No. 4 at ¶2 ("The Products lack tuna and are completely bereft of tuna as an

12  ingredient").)  Plaintiffs and their attorneys appear to have reasoned that filing these public

13  charges to maximize media attention would somehow result in a quick settlement and excuse their

14  failure to have a reasonable basis on which to make such claims.  Indeed, the plaintiffs, and much

15  more likely their attorneys, made these irresponsible claims with callous indifference not only to

16  the facts but to the hard working Subway franchisees around the world who have since suffered

17  decreases in sales of one of their best-selling products because of press reports about the lawsuit

18  and its sensational -- and wholly meritless -- claims.

19         After Subway painstakingly provided the plaintiffs' lawyers with evidence demonstrating

20  the quality and sourcing of Subway's tuna products, and **the fact that the tuna was in fact tuna**,

21  the plaintiffs quickly abandoned their "no tuna at all" theory, thereby effectively conceding that

22  their original claims were unsupportable.  However. rather than do the right thing and dismiss the

23  suit and publicly apologize for the harm that they caused to Subway's franchisees, the plaintiffs

24  came up with a new theory that consumers were somehow misled by claims that the tuna is 100%

25  sustainably caught skipjack and yellowfin.  Thus, while Subway has offered the plaintiffs' and

26  their counsel a graceful exit from the morass they had created by simply dismissing their claims

27  with prejudice and issuing a public apology, they have instead doubled down on their destructive

28  behavior with new, equally unsupportable claims that they refuse to withdraw.  Their decision to

continue to press forward with a complaint that violates the most basic requirements of federal pleading standards, the policies underlying Rule 9(b) and the strictures of Rule 11 represents the nadir of consumer litigation practice and is something for which the plaintiffs and their attorneys should ultimately be held accountable.

## IV.   DISCUSSION

### A.    The Pleading Standards That Apply To This Case

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on such a motion, the Court ignores "legally conclusory statements" in the pleadings not supported by actual factual allegations. *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796 at *2 (N.D. Cal. May 26, 2011) (internal quotations and citations omitted). And the Court must disregard "allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2015 WL 2125004 at *3 (N.D. Cal. May 6, 2015) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)) (internal quotations omitted).

What the Court ***can consider*** on a motion to dismiss are any well-pled allegations of fact to determine whether those allegations state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). Plausible claims set forth sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Moore v. Trader Joe's Co.*, No. 4:18-cv-04418-KAW, 2019 WL 2579219 at *2 (N.D. Cal. June 24, 2019) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted). This means that the plaintiffs' factual allegations must create more than a "sheer possibility that a defendant has acted unlawfully . . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted). Stated another way, the plaintiffs' factual pleading in this case "must be enough to raise a right to relief above the speculative level." *Astiana*, 2011 WL

2111796 at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted).  Plaintiffs' complaint here falls far short of this mark because it simply "tenders naked assertion[s] devoid of further factual enhancement."  *See In re Ferrero Litig.*, 794 F.Supp.2d 1107, 1111 (S.D. Cal. 2011) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).

In addition, where, as here, claims sound in fraud, the plaintiffs must allege facts with particularity to satisfy the heightened pleading requirements of Rule 9(b).  *Jones v. Conagra Foods, Inc.*, 912 F.Supp.2d 889, 894 (N.D. Cal. 2012) (citing Rule 9(b)).  This rule exists "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal citations and quotations omitted).  Rule 9(b) further safeguards a "defendant's reputation and goodwill from improvident charges of wrongdoing" and "inhibit[s] the institution of strike suits."  *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993).

In light of these strongly-held policies, the core requirement of this heightened pleading burden -- and the most glaring omission in the case before this Court -- is to "set forth what is false or misleading about a statement, ***and why it is false***."  *Brazil v. Dole Food Co.*, 935 F.Supp.2d 947, 953 (N.D. Cal. 2013) (quoting *Decker v. Glenfed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.*, 927 F.Supp. 1297, 1309 (C.D. Cal. 1996)) (internal quotations omitted) (emphasis added).  In addition, the complaint must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"  *Id.* (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)).  Here, the plaintiffs fail to satisfy both plausibility ***and*** the heightened pleading standards for fraud.  As a result, the Court is required to dismiss the FAC in its entirety.

1

**B.      Plaintiffs Cannot Meet The Federal Pleading Standard**

2

**1.      Plaintiffs Offer no Facts to Support their Misrepresentation Allegations**

3

The FAC's causes of action all sound in fraud.  The First Cause of Action is titled

4

"Common Law Fraud" and alleges that Subway provided the plaintiffs "with false or misleading

5

material information and failed to disclose material facts."  (FAC at ¶47.)  The Second Cause of

6

Action, entitled "Intentional Misrepresentation," alleges that Subway knowingly made "false

7

representations."  (*Id.* at ¶52.)  The Third Cause of Action for "Negligent Misrepresentation"

8

similarly alleges that Subway "knew or should have known" that certain of its representations

9

were false.  (*Id.* at ¶59.)  *See generally Chevron Prods. Co. v. Advanced Corrosion Techs. &*

10

*Training, LLC*, No. 20-cv-09095-CRB, 2021 WL 2156467, at *3 (N.D. Cal. May 27, 2021)

11

(noting differing approaches to assessing whether negligent misrepresentation claims trigger Rule

12

9(b) and ultimately applying a "case-by-case" approach so that "if plaintiffs are alleging conduct

13

'grounded in fraud . . . the pleading of that claim ***as a whole*** must satisfy the particularity

14

requirement of Rule 9(b).'") (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.

15

2009)) (emphasis added).  While the FAC's Fourth Cause of Action is for "Unjust Enrichment," it

16

demands recovery based on the premise that Subway has misrepresented the content of its tuna

17

products and so, like the other claims in the FAC, requires heightened pleading.  (FAC at ¶66.)

18

Finally, all three of the plaintiffs' California statutory claims -- under the Consumer Legal

19

Remedies Act, False Advertising Law and Unfair Competition Law (*id.* at ¶¶68-124) -- arise from

20

the core allegation that Subway made false statements of fact about its tuna products in

21

unspecified advertising, labeling and marketing claims and so must be pled with particularity.  *See*

22

*Brazil*, 935 F.Supp.2d at 963 (UCL, FAL and CLRA claims based on food mislabeling were "all

23

subject to the heightened pleading requirement of Rule 9(b)"); *Romero*, 2015 WL 2125004 at *3

24

("This Court -- along with other courts in this District -- has rejected the notion that 'misbranding'

25

under the 'unlawful' prong of the UCL excuses a plaintiff's obligation to plead fraud with

26

particularity"); *see generally Kearns*, 567 F.3d at 1125 ("we have specifically ruled that Rule

27

9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL").

28

1    Plaintiffs cannot satisfy this heightened pleading burden with respect to any of their

2    claims.  The FAC repeats as a mantra two alleged statements -- that Subway's tuna products (1)

3    are "100% sustainably caught skipjack and yellowfin tuna" and (2) do not contain "tuna species

4    that come from anything less than healthy stocks, for example Albacore and Tongol" -- and claims

5    these statement are false or misleading.  (FAC at ¶¶2, 4-8, 21, 23, 25, 31-33.)  *But the FAC offers*

6    *no facts demonstrating that the statements are actually false or explaining why the plaintiffs*

7    *believe these statements are false or how the statements caused damages to the plaintiffs.*  Any

8    claim of false representation about consumer products must supply this foundational information

9    to survive a motion to dismiss.  *See, e.g., Colgate v. JUUL Labs, Inc.*, 345 F.Supp.3d 1178, 1183

10   (N.D. Cal. 2018) (defendant misrepresented the amount of nicotine in its products *because "they*

11   *contain 6.2% nicotine salt, rather than the 5% nicotine advertised"*) (emphasis added); *Ham v.*

12   *Hain Celestial Grp., Inc.*, 70 F.Supp.3d 1188, 1191 (N.D. Cal. 2014) ("All Natural" label is false

13   "*because one of the ingredients is a nonorganic synthetic substance*") (emphasis added); *Cooper*

14   *v. Curallux LLC*, No. 20-cv-02455-PJH, 2020 WL 4732193 at *1 (N.D. Cal. Aug. 14, 2020)

15   (defendants' claim of "no side effects" for its low level laser hair loss therapy was false *because*

16   *"scientific studies and experts in the field of hair restoration state that there are several side*

17   *effects"* associated with that treatment) (emphasis added).

18   By contrast to the myriad authority requiring facts demonstrating a misrepresentation, the

19   plaintiffs in this case do not allege a single such fact.  Instead, the plaintiffs simply conclude that

20   the statements are false based on a tautology:  "Because we have alleged Subway's statements are

21   false, therefore they are false."  (*See, e.g.*, FAC at ¶2 ("Defendants label and advertise the

22   Products as '100% tuna' and additionally represent that the tuna in their products contains either

23   skipjack and/or yellowfin tuna from sustainably farmed fisheries . . . .  In reality, the Products do

24   not contain 100% skipjack and yellowtail [sic] tuna").)  For example, the FAC does not cite any

25   documents, pictures or other evidence that the tuna sold by Subway is not sustainably caught

26   (indeed, they do not even allege what they think "sustainably caught" means) or is not 100%

27   skipjack or yellowfin tuna.  Nor does the FAC cite to any scientific data or test results showing the

28   presence of other species of tuna in the tuna sold at Subway restaurants in California.  The FAC

does not even attempt to explain what else the plaintiffs claim was actually in their sandwiches *other than* skipjack and yellowfin tuna.  Indeed, the plaintiffs confirm that they made no effort to attempt to ascertain the contents of the Subway tuna products at the time they purchased and consumed those products, meaning that there is no means alleged by which the plaintiffs could have reasonably determined what was in their tuna or how it was caught.  (*Id.* at ¶34.)  The result is a fundamentally deficient theory of fraud that requires the parties and the Court to speculate wildly about what the plaintiffs are claiming and how they might prove their case.  Such circumstances require the Court to dismiss the FAC in its entirety.  *See, e.g.*, *In re Harmonic Inc. Sec. Litig.*, 163 F.Supp.2d 1079, 1097 (N.D. Cal. 2001) (dismissing securities fraud claims "for failure to allege falsity with particularity" where the "plaintiffs highlight certain phrases or passages in some of the analysts' reports, but do not explain why the highlighted passages were false"); *In re Invision Techs., Inc. Sec. Litig.*, No. C04-03181 MJJ, 2006 WL 538752 at *4 (N.D. Cal. Jan. 24, 2006) (dismissing PSLRA claim where the "plaintiffs did not explain why that statement in particular was false or misleading"); *Tompkins v. Emc Mortg. Corp.*, No. CV 10-608-PHX-SRB, 2010 WL 11629510 at *4 (D. Ariz. Oct. 28, 2010) (fraud-based claims must be dismissed when they "do not explain why the alleged omissions were false or misleading").

Although the FAC includes a section purporting to satisfy Rule 9(b) requirements (FAC at ¶¶35-41), on the key issue of "why," the plaintiffs simply answer the wrong question:  Plaintiffs allege that Subway supposedly made the alleged representations because it wanted to induce consumers to detrimentally rely on those representations, which is itself merely a legal conclusion. (*See id.* at ¶41.)  But the inquiry cannot be about the defendants' motives -- *i.e.*, why they would supposedly make a false statement -- but must show why *the statement is actually false*.  *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  Plaintiffs cannot survive 12(b)(6) scrutiny by paying lip service to Rule 9(b) requirements while failing to allege the facts required under federal procedure and Ninth Circuit case law.

1

### 2. Plaintiffs' Allegations about Adulteration are Speculative, too

2

Plaintiffs' remaining allegations do not offer any explanation for their fraud claims but,

3

instead, dabble in the sort of speculation, "sheer possibilities" and unwarranted inferences that

4

federal pleading standards do not tolerate.  *See Iqbal*, 556 U.S. at 678.

5

First, the plaintiffs speculate that Subway "does not take sufficient measures to control or

6

prevent the known risks of adulteration."  (FAC at ¶22.)  Plaintiffs do not identify any such

7

measures, much less explain how they bear on adulteration risks.  Second, the plaintiffs leap to the

8

conclusion that Subway "actively perpetuate[s] actions and steps that encourage mixing non-tuna

9

ingredients into the Products."  (*Id.*)  Missing from their pleading, however, is even the slightest

10

factual detail of what these "actions and steps" might be or what "non-tuna ingredients" are mixed

11

into the product, if any are.  Third, the plaintiffs "reason" that, because the tuna products are

12

vacuum sealed "outside the United States," their contents are suspect and Subway lacks a "reliable

13

and standardized protocol to ensure . . . the sealed vacuum bags are actually tuna.  (*Id.*)  This

14

offensive -- and xenophobic -- notion that foreign-packed food items cannot be trusted falls

15

squarely into the realm of base speculation and unwarranted inference.  *See Iqbal*, 556 U.S. at 678.

16

Finally, the plaintiffs suggest that their fraud claims may have merit because ***Subway***

17

cannot currently establish that tuna sandwiches allegedly consumed by the plaintiffs at some point

18

during a three-year class period ***did*** contain the tuna fish species as advertised.  (FAC at ¶6.)  This

19

attempt to shift the plaintiffs' pleading burden onto the defendants finds no basis in the law and, at

20

any rate, is based on nothing more than rank speculation.

21

The Court should grant Subway's motion to dismiss.

22

### 3. Plaintiffs do not Allege where they saw Subway's Representations

23

As it evident from the face of the FAC, the plaintiffs have failed to allege facts giving rise

24

to a plausible inference of reliance.  This problem results from the failure to allege any facts about

25

***where*** and ***when*** the plaintiffs supposedly encountered the representations at issue, as Rule 9(b)

26

requires, which necessarily means that the plaintiffs have not alleged facts sufficient to show that

27

they actually relied on any such representations.  *See, e.g.*, *Romero*, 2015 WL 2125004 at *4

28

("Related to Plaintiff's failure to plead particular misrepresentations is her failure to plead her

1   actual reliance on those misrepresentations") (citations omitted).  Instead of meeting the pleading

2   standard, the plaintiffs simply suggest that the supposedly offending statements appear somewhere

3   in Subway's "labeling," "packaging," "marketing," "advertising," "website" and "menus."  (*See,*

4   *e.g.*, FAC at ¶¶2, 21 and 31.)  These allegations are woefully insufficient.

5          Critically, the plaintiffs do not state where on any of the media identified in the FAC they

6   supposedly saw the representations to which they refer; they only claim to have purchased tuna

7   products from Subway at some point between January 21, 2017 and "2020."  (FAC at ¶33.)  This

8   is an important omission because, as noted *supra,* the representations to which the plaintiffs refer

9   in the FAC were never made on any labeling, packaging, marketing, advertising or menus.  (*See*

10  RJN, Exs. A-R.)  Thus, the allegations in the FAC are fatally vague under Rule 9(b):  As this

11  Court reasoned when faced with considerably more detailed allegations than those in the FAC

12  here, "Plaintiff cannot simply identify a list of products, allege a slew of problems with

13  Defendant's labeling of those products, and then ask Defendant and the Court to mix and match.

14  It is not the task of the Court or of Defendant to diagram the intersection between the challenged

15  products and the mislabeling allegations."  *Romero*, 2015 WL 2125004 at *4.  Plaintiffs' failure to

16  allege the "where," "what" and "when" of their misrepresentation claims is an additional reason to

17  dismiss the FAC.  *See, e.g., Colgate v. JUUL Labs, Inc.*, 345 F.Supp.3d at 1191 ("because

18  plaintiffs have not identified which advertisements they saw during the class period, or where they

19  saw them (outside of social media), I grant JUUL's motion to dismiss plaintiffs' false advertising,

20  CLRA ,. . . fraud, and UCL . . . claims").

21         But the plaintiffs must also allege actual reliance to maintain UCL, CLRA and FAL

22  claims.  *See In re Ferrero Litig.*, 794 F.Supp.2d at 1111.  The same is true for their fraud and

23  misrepresentation claims.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir.

24  2003) (describing "indispensable elements of a fraud claim" under California law); *Colgate v.*

25  *JUUL Labs, Inc.*, 345 F.Supp.3d at 1195 (citing elements of claim for negligence

26  misrepresentation under California law) (citing *Fox v. Pollack*, 181 Cal.App.3d 954, 962 (1986)).[2]

27  _____

28  [2] Plaintiffs' "Common Law Fraud" and "Intentional Misrepresentation" causes of action are
    duplicative because, "[u]nder California law, intentional misrepresentation is [simply] a species of

1    This means that the plaintiffs must allege facts demonstrating that they actually read the two

2    statements at issue (*i.e.,* what they read and where they read it) and relied on both of them before

3    purchasing tuna products from Subway (*i.e.,* when they read it and why it mattered to them).

4            Instead of alleging such facts, the plaintiffs merely claim that Subway made

5    representations regarding 100% sustainably caught tuna and that the plaintiffs purchased tuna

6    from Subway at unspecified locations on unspecified dates in Alameda County and elsewhere in

7    California.  (FAC at ¶33.)  Neither plaintiff alleges that they viewed Subway's website before

8    making such purchases.  This omission is unsurprising:  No materials physically located at

9    Subway restaurants between January 21, 2017 and December 31, 2020 contained representations

10   that Subway tuna was "100% sustainably caught skipjack and yellowfin tuna" or that it did not

11   contain "tuna species that come from anything less than healthy stocks, for example Albacore and

12   Tongol."  (RJN, Exs. A-L.)  Instead, the menus at Subway restaurants describe the product simply

13   as "Tuna" or "Classic Tuna" (RJN, Exs. A-H) and the packaging of tuna sandwiches, wraps and

14   salads simply states "Subway" or contains the restaurant's "S" trademark.  (RJN, Exs. J-L.)

15   Plaintiffs cannot plausibly allege reliance on the other representations under such circumstances.

16           To the extent the plaintiffs might try to suggest that they ordered their tuna products

17   through Subway's website, those efforts would fail, too.  First, the plaintiffs specifically allege in

18   the FAC that they purchased Subway products at a brick and mortar restaurant.  (FAC at ¶33.)

19   Second, even if the plaintiffs had ordered their food online, which they do not allege, Subway's

20   online ordering portal during the time in question did not contain the representations that the

21   plaintiffs allege in the FAC.  Instead, the ordering portal described tuna products as "flaked tuna."

22   (RJN, Exs. M-R.)  The same description is included in the detailed "Nutrition Facts" information

23   for tuna on the Subway website.  (RJN, Ex. U.)

24

25

26   _____

      fraud."  *Sherwin-Williams Co. v. JB Collision Servs.*, No. 13-CV-1946-LAB-WVG, 2014 WL

27   5112057 at *4 (S.D. Cal. Oct. 9, 2014).  The California Civil Jury Instructions do not include a
      separate cause of action for "Common Law Fraud," only "Intentional Misrepresentation."  *See*

28   CACI § 1900.

Subway's print and media advertising in California during the relevant time period did not contain the phrases "100% sustainably caught skipjack and yellowfin tuna" or "tuna species that come from anything less than healthy stocks, for example Albacore and Tongol," either.  Instead, Subway's advertising simply used the word "Tuna" to market new tuna-based menu items, such as the "Green Goddess Tuna Melt" or the "Southwest Tuna" sandwich.  (RJN, Ex. I.)

Indeed, the ***only*** place that Subway has ever made the representations identified in the FAC is on a non-commerce page of its website titled "Our Communities."  (RJN, Exs. S and T.) A consumer cannot order food from this page and does not need to view this page to order food or obtain nutritional information about Subway's tuna products.  Instead, to get to that particular page, and the representations about which the plaintiffs complain, a consumer must (1) click on the "Responsibility" tab at the top of the Subway homepage, (2) then select the option for "Our Communities" from five separate choices, (3) then consider four subsections on the "Our Communities" page and, from those four subsections, (4) select the "Responsible Sourcing" subsection and, finally, (5) scroll down to the bottom of that page to see that Subway says:

> We only sell skipjack and yellowfin tuna. It is sourced from fisheries with non-threatened stock levels.  Furthermore, we have a global ban on the sale of tuna species that come from anything less than healthy stocks, for example Albacore and Tongol.  (RJN, Ex. T.)

As this is the only place where Subway has ever made such representations, the claims cannot constitute food labeling under federal law because they do not appear on the tuna products (or their containers or wrappers) and do not "accompany" the products when they are purchased.  *See McFall v. Perrigo Co.*, No. 2:20-cv-07752-FLA (MRWx), 2021 WL 2327936 at *7 (C.D. Cal. Apr. 15, 2021) (describing definition of "labeling" under the Federal Food, Drug, and Cosmetic Act) (citing 21 U.S.C. § 321).

Ultimately, it is simply not plausible to infer that two individuals (much less an entire class of consumers) who purchased Subway tuna products in California at some point during a three-year period would have first reviewed the "Responsible Sourcing" sub-subsection of the "Our Communities" subsection of the "Responsibility" section of the Subway website before purchasing a tuna sandwich.  Plaintiffs certainly have not offered any specific allegation to that

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

effect and such behavior would not be typical of a consumer of Subway products.  The inability to make such allegations means that the plaintiffs have not pled actual reliance and do not have standing to bring the claims they have alleged.  The Court should therefore dismiss the FAC without leave to amend.

## V.    CONCLUSION

This lawsuit demonstrates why Rule 9(b) (and Rule 11) exists.  A consumer cannot come to this Court, charge a business with highly-publicized accusations of fraud and then utterly fail to explain **where** they saw the alleged misstatements and **why** those statements were misleading and **how** they caused actual damages to the consumer.  Plaintiffs and their attorneys have "unilaterally impos[ed] upon the [C]ourt, the parties and society" -- including the thousands of independent Subway restaurant franchisees who have suffered real injury as a result of this irresponsible and cynical lawsuit -- "enormous social and economic costs" without any factual basis on which to do so.  *See United Healthcare*, 848 F.3d at 1180.  Such conduct is, frankly, outrageous.

The Court should therefore grant the motion to dismiss so that Subway and its franchisees can begin to put this unfortunate matter behind them and the plaintiffs and their counsel can proceed to face the consequences of their actions under Rule 11.

Dated:  July 23, 2021

**BAKER & McKENZIE LLP**

By:    /s/ Mark C. Goodman
       Mark C. Goodman
Attorneys for Defendants
SUBWAY RESTAURANTS, INC.,
FRANCHISE WORLD HEADQUARTERS,
LLC, and SUBWAY FRANCHISEE
ADVERTISING TRUST FUND LTD.