Patrick McNicholas, Esq., SBN 125868
pmc@micholaslaw.com
Jeffrey Lamb, Esq., SBN 257648
jrl@mcnicholaslaw.com
Emily Pincin, Esq., SBN 334566
erp@mcnicholaslaw.com
McNICHOLAS & McNICHOLAS, LLP
10866 Wilshire Blvd., Ste. 1400
Los Angeles, California 90024
Tel: (310) 474-1582
Fax: (310) 475-7871

Mark Lanier, Esq., (Admitted *Pro Hac Vice*)
mark.lanier@lanierlawfirm.com
Alex Brown, Esq., (Admitted *Pro Hac Vice*)
alex.brown@lanierlawfirm.com
Jonathan Wilkerson, Esq., (Admitted *Pro Hac Vice*)
jonathan.wilkerson@lanierlawfirm.com
THE LANIER LAW FIRM, PC
10940 W. Sam Houston Pkwy N, Ste. 100
Houston, TX 77064
Tel: (713) 659-5200
Fax: (713) 659-2204

Shalini Dogra, Esq., SBN 309024
shalini@dogralawgroup.com
DOGRA LAW GROUP PC
2219 Main Street, Unit 239
Santa Monica, CA 90405
Tel: (747) 234-6673
Fax: (310) 868-0170

Attorneys for Named Plaintiffs KAREN DHANOWA and NILIMA AMIN and Proposed Class

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Case No: 4:21-CV-00498-JST

KAREN DHANOWA and NILIMA AMIN, on behalf of themselves and all others similarly situated;

Plaintiff,

v.

SUBWAY RESTAURANTS, INC., a Delaware Corporation; FRANCHISE WORLD HEADQUARTERS, LLC., a Connecticut Limited Liability Corporation; SUBWAY FRANCHISEE ADVERTISING TRUST FUND LTD., a Connecticut

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

1. COMMON LAW FRAUD

2. INTENTIONAL MISREPRESENTATION

3. NEGLIGENT MISREPRESENTATION

4. UNJUST ENRICHMENT

1

Corporation; and DOES 1 through 50, Inclusive,

Defendants.

5. CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750, *et seq.*

6. VIOLATION OF THE FALSE ADVERTISING LAW ("FAL"), CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*

7. VIOLATION OF THE UNFAIR COMPETITION LAW ("UCL"), CALIFRONIA BUSINESS AND PROFESSIONS CODE §17200 *et seq.*

**DEMAND FOR JURY TRIAL**

Plaintiffs Karen Dhanowa and Nilima Amin, by and through their attorneys, bring this action on behalf of themselves and all other similarly situated against Subway Restaurants. Inc., Franchise World Headquarters, LLC., Subway Franchisee Advertising Trust Fund Ltd. Corporation (collectively hereinafter referred to as "Defendants"), and Does 1 through 50. Plaintiffs hereby allege, on information and belief, except as those allegations which pertain to the named Plaintiffs, which allegations are based on personal knowledge, as follows:

**NATURE OF THE ACTION**

1.     This action arises out of Defendants' intentionally false and misleading representations in its marketing and selling about tuna being used as an ingredient in some of their food items, including salads, sandwiches, and wraps (the "Tuna Products"). Aware that consumers place a heightened value on tuna as an ingredient, Defendants deliberately make false and misleading claims about the composition of its Tuna Products to increase profits at the expense of unsuspecting buyers.

2.     Defendants have consistently advertised the Tuna Products as being "tuna" and "100% tuna." It is self-evidence that a food item labeled as being "tuna" should be just that: only tuna. Such food item should contain no other fish species, animal species, or miscellaneous products not otherwise identified or marketed as being included in the "tuna" food item.

3.     However, the Tuna Products' labeling, marketing, and advertising is false, deceptive, and misleading. The statements that are false, deceptive, and misleading are that (1) the Tuna Products are "tuna" and (2) the Tuna Products are comprised of "100% tuna."

4.     In reality, the Tuna Products do not contain 100% tuna; instead, they contain other fish species, animal products, or miscellaneous products aside from tuna. When ordering "tuna" at a restaurant, a reasonable consumer believes that the product they are paying for contains *only* tuna and no other fish species, animal products, or miscellaneous products. Accordingly, the Tuna Products are misbranded under Federal and California State law. Defendants' deceptive marketing scheme of the Tuna Products includes tactics such as falsely labeling the Tuna Products as being "tuna" on menus throughout Defendants' "Subway" eatery locations, as well as on Defendants' website.

5.     Reasonable consumers rely on product labeling and marketing in making their purchasing decisions. When a reasonable consumer sees a salad, sandwich, or wrap labeled, marketed, or advertised as being "tuna," he or she reasonably expects that the food product will be comprised *only* of tuna (as opposed to being comprised of tuna and some other fish species, animal products, and/or miscellaneous or mysterious substances not otherwise expected to be in the product).

6.     In reliance on Defendants' misleading marketing and deceptive advertising practices, Plaintiffs and other consumers purchased the Tuna Products because they reasonably believed, based on Defendants' marketing and advertising, that the Tuna Products contained 100% tuna and no other fish species, animal products, or miscellaneous products. Had Plaintiffs and other consumers known that the Tuna Products partially or wholly lacked tuna as an ingredient, or that the Tuna Products contained other fish species, animal products, or miscellaneous ingredients, they would not have purchased the Tuna Products or would have paid significantly less for them. As a result, Plaintiffs and other similarly situated class members have been deceived and suffered economic injury.

7.     Defendants' labeling, marketing, and advertising uniformly involves false and/or misleading statements, as well as material omissions of fact, concerning the Tuna Products, which have injured Plaintiffs and the Class, and duped them into buying premium priced food dishes based on the representation that the Tuna Products contained only tuna and no other fish species, animal

products, or miscellaneous ingredients. These deceptive business practices and representations have misled the general public into believing that the Tuna Products contain 100% tuna and *only* tuna.

8.      Based on the fact that Defendants' advertising misled Plaintiffs and all others similarly situated, Plaintiffs bring this class against Defendants to seek reimbursement of the premium they and the Class Members paid due to Defendants' false and deceptive representations about the composition and ingredients of the Tuna Products.

9.      Plaintiffs seek relief in this action individually and on behalf of all purchasers of the Tuna Products statewide in California for common law fraud, intentional misrepresentation, negligent misrepresentation, and unjust enrichment. Additionally, Plaintiffs seek relief in this action individually and on behalf of all purchasers of the Tuna Products in California for violation of the California Bus. & Prof. Code §§17500, *et seq*., California's False Advertising Law ("FAL"), Bus. & Prof. Code §§17200, *et seq*., as well as California's Unfair Competition Law ("UCL").

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act,  because the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interests and costs, and at least one class member is a citizen of a state different from Defendant Subway Restaurants, Defendant Franchise World Headquarters, as well as Defendant Subway Franchisee Advertising Trust Fund Ltd. Additionally, this is a class action involving more than 1,000 (one thousand) class members.

11.     The Court has personal jurisdiction over Defendants pursuant to Cal. Code Civ. P. § 410.10, as a result of Defendants' substantial, continuous, and systematic contacts with the State, and because Defendants have purposely availed themselves to the benefits and privileges of conducting business activities within the  State.

12.     Pursuant to 28 U.S.C. §1391, this Court is the proper venue for this action because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District. Moreover, Defendants distributed, advertised and sold the Tuna Products, which are the subject of the present Complaint, in this District.

**PARTIES**

13.    At all times relevant hereto, Plaintiff Dhanowa is and was a citizen and resident of the State of California, Alameda County.

14.    At all times relevant hereto, Plaintiff Amin is and was a citizen and resident of State of California, Alameda County.

15.    Defendant Subway Restaurants is a Delaware corporation headquartered in the State of Connecticut, with its principal place of business at 325 Sub Way, Milford, CT 06461. Therefore, Defendant Subway Restaurants is a citizen of the states of Delaware and Connecticut. At all times relevant hereto, Defendant Subway Restaurants manufactured, mass marketed, sold, produced, and distributed the Tuna Products throughout the United States, including the State of California.

16.    Defendant Franchise World Headquarters, LLC is a Connecticut limited liability corporation and is headquartered in the State of Connecticut, with its principal place of business at 325 Sub Way, Milford, CT 06461. Hence, Defendant Franchise World Headquarters is a citizen of the State of Connecticut. At all times relevant hereto, Defendant Franchise World Headquarters manufactured, mass marketed, sold, produced, and distributed the Tuna Products throughout the United States, including the State of California.

17.    Defendant Subway Franchisee Advertising Trust Fund Ltd. is a Connecticut corporation headquartered in the State of Connecticut, with its principal place of business at 325 Sub Way, Milford, CT 06461. Thus, Defendant Subway Franchisee Advertising Trust Fund is a citizen of the State of Connecticut. At all times relevant hereto, Defendant Subway Franchisee Advertising Trust Fund Ltd. manufactured, mass marketed, sold, produced, and distributed the Tuna Products throughout the United States, including the State of California.

18.    Plaintiffs are informed and believes, and based thereon allege, that at all times relevant hereto each of these individuals and/or entities was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged. Plaintiffs reserve their right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of

Defendant Subway Restaurants, Defendant Franchise World Headquarters, and Defendant Subway Franchisee Advertising Trust Fund Ltd. who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.  Subway Falsely Advertises the Tuna Products as Being "Tuna" and "100% Tuna"**

19.   Consumers, including Plaintiffs, often purchase a particular type of salad, sandwich, or wrap due to the main ingredient alleged to be present in the food item. Indeed, the contents of a salad, sandwich, or wrap is usually the most important attribute to buyers when they are deciding which food dish to purchase. Moreover, consumers, including Plaintiffs, typically associate tuna as a superior ingredient and are typically willing to pay a premium for it. Furthermore, buyers are often willing to pay more for tuna as the filling in salads, wraps, and sandwiches because they associate the ingredient as having a higher nutritional value, including greater protein levels.

20.   Defendants have consistently advertised the Tuna Products as being "tuna" and "100% tuna." However, the Tuna Products' labeling, marketing, and advertising is false and misleading. Defendants know or have reason to know that consumers, including Plaintiffs, would find the challenged attribute important in their decision to purchase the Tuna Products, as indicated by the fact that Defendants repeatedly emphasized the advertising claim prominently on Defendants' menus and website.

21.   In reality, the Tuna Products do not contain 100% tuna; instead, they contain other fish, animal species, or miscellaneous ingredients aside from tuna. Accordingly, the Tuna Products are misbranded under Federal and California State law. Defendants' deceptive marketing scheme of the Tuna Products includes tactics such as falsely labeling the Tuna Products as being "tuna" on menus throughout Defendants' "Subway" eatery locations, as well as on Defendants' website.

22.   Defendants' in-store menus identify its Tuna Products as being "tuna." Additionally, Defendants' website identifies its Tuna Products as being "100% wild caught tuna blended with creamy mayo."

SECOND AMENDED CLASS ACTION COMPLAINT

23.   Marine biologist Paul Barber, Ph.D. of Integrative Biology, performed testing on twenty (20) samples of Tuna Products from twenty different Subway restaurants in the greater Southern California region. This testing was performed by researchers at the Barber Lab, located at UCLA's Department of Ecology and Evolutionary Biology. Specifically, Dr. Barber performed DNA barcoding testing on twenty samples of Defendants' Tuna Products. DNA barcoding is a method for identifying an unknown sample to a particular specie(s) based on a diagnostic DNA sequence. Much like how barcodes can differentiate the broad diversity of products in a grocery store, DNA barcoding can accurately identify organisms to species based on the uniqueness of their DNA sequence at a predefined region of the genome. DNA barcoding is widely applied as a forensic tool to identify wildlife products, including marine wildlife, and is increasingly used to detect seafood fraud both in commercial and consumer markets.

24.   At each of the twenty Subway restaurant establishments, 50 grams of Tuna Products were collected. Custom sequencing was used to try and identify the kind of genetic information that was present in each of the twenty samples of Tuna Products. The samples were tested against four different primers: vertebrate primers, tuna primers, COI (cytochrome c oxidase I) primers, and plant primers.

25.   Of the twenty samples tested, nineteen of them had ***no detectable tuna DNA sequences whatsoever***. Additionally, the test results indicate that all twenty of the samples contained detectable sequences of chicken DNA; a majority of the samples (eleven out of twenty) contained detectable sequences of pork DNA; and some of the samples (seven out of twenty) contained detectable sequences of cattle DNA.

26.   As such, the Tuna Products are not being sold as advertised; that is, the Tuna Products are not "tuna" or "100% tuna" but are contaminated or otherwise adulterated such that consumers are not receiving the product they reasonably expect to be purchasing. Defendants do not take sufficient measures to control or prevent the known risks of adulteration to its Tuna Products. On the contrary, they actively perpetuate actions and steps that encourage mixing or allowing non-tuna ingredients to make their way into the Tuna Products.

27.   Plaintiffs are informed and believe, and based thereon allege, that all California-based Subway restaurants receive their Tuna Products from the same supply chain. Further, Plaintiff are informed and believe, and based thereon allege, that Defendants fail to take sufficient measures to control or prevent the known risks of adulteration to its Tuna Products on a statewide basis.

28.   Consequently, because the Tuna Products were not being sold as advertised, consumers are not receiving the benefit of their bargain. Defendants' marketing and labeling of the Tuna Products are designed to, and do in fact, deceive, mislead, and defraud consumers.

29.   Defendants have no reasonable basis for labeling, advertising, and marketing the Tuna Products as being tuna or containing 100% tuna. As a result, consumers are consistently misled into purchasing the Tuna Products for the commonly known and/or advertised benefits and characteristics as set forth in the marketing and advertising of Defendants.

30.   21 U.S.C. § 343 states that a food product is misbranded if "its labeling is false or misleading in any manner, if it is offered for sale under the name of another food," or if it is an imitation of another food," with labeling defined as "all labels and other written printed, or graphic matter (1) upon any article or any of its containers or wrappers or (2) accompanying such article." Similarly, under California's Sherman Food, Drug and Cosmetic Law ("Sherman Law"), Article 6, § 110660, "Any food is misbranded if its labeling is false or misleading in any particular."

31.   Defendants further disseminated their false labeling and misrepresentations through their in-store display menus and takeaway menus that accompanied the Tuna Products and identified the food items as being or containing solely tuna, even though none of the Tuna Products tested contained *only* tuna.

32.   Additionally, § 402(b) of the Food, Drug and Cosmetic Act ("FDCA") affirms that a food product is adulterated "if any valuable constituent has been in whole or in part omitted or abstracted therefrom; or if any substance has been substituted, wholly or in part therefor; or if damage or inferiority has been concealed in any manner; or if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight or reduce its quality or strength or make it appear better or of greater value than it is."

33.     Likewise, under California's Sherman Law, Article 5, § 110585, "any food is adulterated" if: (a) any valuable constituent has been in whole or in part omitted or abstracted therefrom; (b) if any substance has been substituted wholly or in part therefor; (c) if damage or inferiority has been concealed in any manner or; (d) if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight or reduce its quality or strength to make it appear better or of greater value than it is."

34.     Furthermore, 21 U.S.C. § 331 prohibits the "introduction or delivery for introduction of any food that is adulterated or misbranded into interstate commerce," as well as the "adulteration or misbranding of any food in interstate commerce." Similarly, pursuant to California's Sherman Law, Article 5, §§110620, 110625 and 110630, it is unlawful for any person "to manufacture, sell, deliver, hold or offer for sale any food that is adulterated," "to adulterate any food," or  "to receive in commerce any food that is adulterated or to deliver or proffer for delivery any such food."

35.     Defendants have engaged in economic adulteration by selling a food product that partially or wholly lacked the valuable constituents of the tuna as represented by Subway, and  that had been substituted in part or whole. Defendants have further committed unlawful adulteration  by concealing the inferiority of the Tuna Products. Moreover, Defendants' conduct also constitutes prohibited adulteration because substances had been added and mixed into the Tuna Products to make them appear better or of a greater value than they actually were. Significantly, Defendants have perpetuated all the practices of adulteration with the intention of reaping ill-gotten profits at the expense of consumers.

### B.  Plaintiff's Experience

36.     In each year beginning in 2013 and continuing until 2019, Plaintiff Amin ordered Tuna Products at Subway restaurants for health and weight loss purposes. Between 2013 and 2019, Plaintiff Amin ordered, purchased, and consumed over one-hundred Tuna Products from Subway restaurants—specifically, the Subway restaurant located at 2717 Middlefield Road, Palo Alto, CA 94306.

37.    Between 2013 and 2019, Plaintiff Amin ordered Tuna Products at Subway restaurants based on the representations and/or omissions of material fact(s) identified on Subway's in-restaurant menus, which are typically located behind the sandwich bar on the back wall of the restaurant. Specifically, each time Plaintiff Amin visited a Subway restaurant to order a sandwich, she looked at the menu, acknowledged the food option identified as being "tuna," ordered a sandwich or wrap because it was identified as being "tuna," and consumed the Tuna Products, all with the understanding and belief that what she was eating was, in fact, *only* tuna.

38.    When reading a menu item identified as being "tuna," reasonable consumers, including Plaintiff Amin, reasonably believe that the product they are ordering and purchasing will contain *only* tuna and no other fish species, animal species, or miscellaneous products not otherwise identified in the menu item.

39.    In fact, Plaintiff Amin and other reasonable consumers did not receive the Tuna Products as they are advertised. Instead, Plaintiff Amin and other reasonable consumers received Tuna Products that were adulterated and contained chicken, pork, and/or cattle DNA or Tuna Products that otherwise contained some material that was not in fact tuna.

40.    During the time when Plaintiff Amin was purchasing and consuming the Tuna Products, Plaintiff did not take steps to verify the Tuna Products' components, or to verify whether the Tuna Products contained tuna as the sole ingredient. Reasonable consumers such as Plaintiff would not have considered it necessary to verify the clear message conveyed by Defendants' labeling, advertising, and marketing of the Tuna Products.

41.    The malicious actions taken by Defendants caused significant harm to Plaintiff Amin and similarly situated class members who purchased the Tuna Products because they reasonably believed, based on Defendants' marketing, packaging, labeling, and advertising schemes, that the Tuna Products were being sold as advertised when they were not. Had Plaintiff Amin and other class members known the Tuna Products actually contained ingredients other than tuna, they would not have bought the Tuna Products or would have paid substantially less money for them. As a result, Plaintiffs and similar situated class members have been deceived and suffered economic injury. Plaintiffs were economically harmed by Defendants' false labeling, deceptive marketing and

misleading packaging conveying the message that the Tuna Products were made with tuna as they had represented. The value of the Tuna Products that Plaintiffs actually purchased and consumed was materially less than their value as misrepresented by Defendants.

42.   Pursuant to Federal Rule of Civil Procedure 9(b), Plaintiff Amin further alleges as follows:

a.   Who: Defendants made material misrepresentations and/or omissions of fact in the marketing of its Tuna Products;

b.   What: Defendants made material misrepresentations and/or omissions of fact by marketing, labeling, and advertising its Tuna Products as being "tuna" and "100% tuna." Defendants made these claims with respect to the Tuna Products even though the Tuna Products contain no detectable tuna DNA sequences. Additionally, Defendants' Tuna Products contain detectable sequences of chicken DNA, pork DNA, and cattle DNA;

c.   When: Each year between 2013 and 2019;

d.   Where: Defendants' misrepresentations and/or omissions of material fact(s) were made on the in-store menus at Defendants' restaurants. Subway's in-restaurant menus are typically located behind the sandwich bar on the back wall of the restaurant. The menus in Defendants' in-store restaurants clearly identify the Tuna Products as being "tuna." Further, Defendants' online menus identify the Tuna Products as being "100% tuna";

e.   How: Defendants made written misrepresentations and failed to disclose material facts in the labeling, marketing, and advertising of the Tuna Products and on their website and in-store menus.

f.   Why: Defendants engaged in the material misrepresentations and/or omissions detailed herein for the express purpose of inducing reasonable consumers, including Plaintiffs, to purchase and/or a pay a premium for the Tuna Products based on the representation that they are "tuna" and contain "100% tuna." Reasonable consumers, including Plaintiffs, reasonably believe that when they order a product identified as "tuna," that product does not contain any other fish species, animal species, or miscellaneous products. Defendants profited by selling the Tuna Products to millions of unsuspecting consumers in California, as well as nationwide.

## C. Class Action Allegations

43.   Plaintiffs bring this class action on behalf of themselves individually and all others similarly situated, pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3). Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this class action on behalf of themselves individually and all others similarly situated statewide in California. Plaintiff seeks to represent a class comprised of all persons in California who, on or after January 21, 2017 (the "Class Period") purchased the Tuna Products personal use and not for resale distribution.

44.   The proposed class consists of all consumers who purchased the Tuna Products in the State of California for personal use and not for resale, during the time period January 21, 2017, through the present. Excluded from the Class are Defendants, their affiliates, employees, officers and directors, any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Tuna Products, the Judge(s) assigned to this case, and the attorneys of record in this case. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

45.   This action is properly brought as a class action for the following reasons:

a.   The members in the proposed class, which contains no less than one thousand members and based on good information and belief is comprised of several thousands of individuals, are so numerous that individual joinder of all members is impracticable and disposition of the class members' claims in a single class action will provide substantial benefits to the parties and Court, and is in the best interests of the parties and judicial economy;

b.   Plaintiffs stand on equal footing with and can fairly and adequately protect the interests of all members of the proposed class. All marketing and packaging of units of the Tuna Products bear the misleading tuna labeling and are falsely advertised as being "tuna" and "100% tuna" when, in fact, the Tuna Products contain no detectable sequences of tuna DNA and contain detectable sequences of chicken DNA, pork DNA, and cattle DNA. Defendants' false statements, labeling, and marketing occur on the in-store menus at Defendants' restaurants as well as Defendants' website, and thus every individual consumer who purchases the Tuna Products (either online or in store) are exposed to the false advertising.

c.     Defendants have, or have access to, address information for the Class Members, which may be used for the purpose of providing notice of the pendency of this class action. Further, the class definition itself describes a set of common characteristics sufficient to allow a prospective plaintiff or class member to identify herself or himself as having a right to recover based on the description;

d.     Plaintiffs will fairly and adequately represent and protect the interests of the class, have no interest incompatible with the interests of the class, and have retained counsel competent and experienced in class actions, consumer protection, and false advertising litigation, including within the context of food and the food industry. Plaintiffs' attorneys have the experience, knowledge, and resources to adequately and properly represent the interests of the proposed class. Plaintiffs have no interests antagonistic to those of other proposed class members, and they have retained attorneys experienced in consumer class actions and complex litigation as counsel;

e.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each class member is so small, that, absent representative litigation, it would be infeasible for class members to redress the wrongs done to them. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudications with respect to individual members of the class and thus establish incompatible standards of conduct for the party or parties opposing the class. Further, individual cases would be so numerous as to inefficiently exhaust judicial resources. Plaintiffs seek damages and equitable relief on behalf of the proposed class on grounds generally applicable to the entire proposed class;

f.     Questions of law and fact common to the class predominate over any questions affecting only individual class members. There are questions of law and fact common to the proposed class which predominate over any questions that may affect particular class members. Such questions of law and fact common to Plaintiffs and the class include, without limitation:

   i.   Whether Defendants were unjustly enriched by their conduct;

   ii.  Whether Class Members suffered an ascertainable loss as a result of Defendants' misrepresentations;

iii.  Whether, as a result of Defendants' misconduct as alleged herein, Plaintiffs and the Class Members are entitled to restitution, injunctive relieve and/or monetary relief, and if so, the amount and natural of such relief;

iv.  Whether Defendants made any statement they knew or should have known were false or misleading;

v.  Whether Defendants maintained a longstanding marketing policy, practice and strategy of labeling, advertising, and selling the Tuna Products as being "tuna" and "100% tuna" when, in fact, the Tuna Products contain no detectable sequences of tuna DNA and contain detectable sequences of chicken DNA, pork DNA, and cattle DNA;

vi.  Whether the utility of Defendants' practices, if any, outweighed the gravity of the harm to their victims;

vii.  Whether Defendants' conduct violated public policy, included as declared by specific constitutional, statutory, or regulatory provisions;

viii.  Whether Defendants' conduct or any of their practices violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.,* the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.,* The Federal Food, Drug and Cosmetics Act, 28 U.S.C. §§ 301 *et seq.* and its implementing regulations, 21 C.F.R. §§ 101 *et seq.,* the Cal. Health & Safety Code §§ 109875 et seq., or any other regulation, statute or law;

ix.  Whether Defendants passed off the Tuna Products as that of another, within the meaning of Cal. Civ. Code § 1770(a)(1);

x.  Whether Defendants misrepresented the source, sponsorship, approval or certification of the Tuna Products, within the meaning of Cal. Civ. Code § 1770(a)(2);

xi.  Whether Defendants misrepresented the Tuna Products' affiliation, connection or association with, or certification by another, within the meaning of Cal. Civ. Code § 1770(a)(3);

xii.  Whether Defendants represented that the Tuna Products have characteristics, uses, or benefits which they does not have, within the meaning of Cal. Civ. Code § 1770(a)(5);

xiii.   Whether Defendants represented that the Tuna Products are of a particular standard, quality, or grade, when they were really of another, within the meaning of Cal. Civ. Code § 1770(a)(7);

xiv.   Whether Defendants advertised the Tuna Products with the intent not to sell them as advertised, within the meaning of Cal. Civ. Code § 1770(a)(9);

xv.   Whether Defendants represented that the Tuna Products have been supplied in accordance with a previous representation when they have not, within the meaning of Cal. Civ. Code § 1770(a)(16);

xvi.   The proper equitable and injunctive relief;

xvii.   The proper amount of restitution or disgorgement;

xviii.   The proper amount of reasonable litigation expenses and attorneys' fees;

g.   Plaintiffs' claims are typical of the claims of the members of the proposed class. Plaintiffs and all class members have been injured by the same practices of Defendants. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all class members and are based on the same legal theories. Plaintiffs' claims are typical of class members' claims, as they are based on the same underlying facts, events and circumstances relating to Defendants' conduct.;

h.   As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3), and may be appropriate for certification "with respect to particular issues" under Rule 23(b)(4).

## FIRST CAUSE OF ACTION

### Common Law Fraud

46.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

47.   Plaintiffs bring this claim individually and on behalf of the members of their proposed Class.

48.   As discussed above, Defendants provided Plaintiffs and the Class Members with false or misleading material information and failed to disclose material facts about the Tuna Products,

1   including but not limited to the fact that they were not comprised of only tuna. These

2   misrepresentations and omissions were made with knowledge of their falsehood.

3       49.   The misrepresentations and omissions made by Defendants, upon which Plaintiffs the

4   Class Members reasonably and justifiably relied, were intended to induce, and actually induced

5   Plaintiffs and Class Members to purchase the Tuna Products.

6       50.   The fraudulent actions of Defendants caused damage to Plaintiffs and Class Members,

7   who are entitled to damages and other legal and equitable relief as a result.

8                                   **SECOND CAUSE OF ACTION**

9                                   **Intentional Misrepresentation**

10      51.   Plaintiffs re-allege and incorporate herein by reference each and every allegation set

11  forth above.

12      52.   Defendants represented to Plaintiffs and other class members that important facts were

13  true. More specifically, Defendants represented to Plaintiffs and the other class members through

14  their advertising and labeling scheme for the Tuna Products, including in-store menus, that the Tuna

15  Products were "tuna."

16      53.   Defendants' representations were false. Defendants made material misrepresentations

17  and/or omissions of fact by marketing, labeling, and advertising its Tuna Products as being "tuna"

18  and "100% tuna." Defendants made these claims with respect to the Tuna Products even though the

19  Tuna Products contain no detectable tuna DNA sequences. Additionally, Defendants' Tuna

20  Products contain detectable sequences of chicken DNA, pork DNA, and cattle DNA. Defendants

21  knew that the misrepresentations were false when they made them, or Defendants made the

22  representations recklessly  and without regard for their truth. Defendants intended that Plaintiffs and

23  other class members rely on the representations.

24      54.  Plaintiffs  and  the  other  class  members  reasonably  relied  on  Defendants'

25  representations. When ordering a menu item identified as being "tuna," reasonable consumers,

26  including Plaintiffs, reasonably believe that the product they are ordering and purchasing will

27  contain *only* tuna and no other fish species, animal species, or miscellaneous products not otherwise

28  identified in the menu item.

55.  Plaintiffs and the other class members were financially harmed and suffered other damages, including but not limited to, emotional distress. Defendants' misrepresentations  and/or nondisclosure were the immediate cause of Plaintiffs and the other class members purchasing the Tuna Products. Plaintiffs' and the other class members' reliance on Defendants' representations was the immediate cause of the financial loss and emotional distress (of the type that would naturally result from being led to believe that the food product you are purchasing and consuming is "tuna" and no other fish species, animal species, or miscellaneous products not otherwise identified in the menu item) and contains sustained by Plaintiffs and the other class members.

56.  In absence of Defendants' misrepresentations and/or nondisclosure, as described above, Plaintiffs and the other class members, in all reasonable probability, would not have purchased the Tuna Products.

## THIRD CAUSE OF ACTION

### Negligent Misrepresentation

57.  Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

58.  Plaintiffs bring this claim individually and on behalf of the proposed Class against Defendants.

59.  As discussed above, Defendants represented the Tuna Products were in fact "tuna" and "100% tuna" but failed to disclose that these representations were false and inaccurate. Defendants had a duty to disclose this information.

60.  At the time Defendants made these misrepresentations, Defendants knew or should have known that these misrepresentations were false or made them without knowledge of their truth or veracity. At an absolute minimum, Defendants negligently misrepresented or negligently omitted material facts about the Tuna Products.

61.  The negligent misrepresentations and omissions made by Defendants, upon which Plaintiffs and Class Members reasonably and justifiably relied, were intended to induce, and actually induced, Plaintiffs and Class Members to purchase the Tuna Products.

62.  Plaintiffs and Class Members would not have bought the Tuna Products if they had known the true facts.

63.  The negligent actions of Defendants caused damage to Plaintiffs and Class Members, who are entitled to damages and other legal and equitable relief as a result.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

64.  Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

65.  Plaintiffs bring this claim individually and on behalf of the proposed Class against Defendants.

66.  Plaintiffs and Class Members conferred benefit on Defendants by purchasing the Tuna Products.

67.  Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Tuna Products. Retention of those moneys under these circumstances is unjust and inequitable because the Tuna Products are not in fact salads, sandwiches or tuna wraps containing the product as represented and advertised by Defendants as being "tuna" and "100% tuna." As a result, purchasers including Plaintiffs and putative class members have been denied the full benefit of their purchase.

68.  Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and Class Members for their unjust enrichment, as ordered by the Court.

## FIFTH CAUSE OF ACTION

### Violation of Cal. Civ. Code §§1750, *et seq.*

69.  Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

70.  This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA"). The CLRA prohibits any unfair, deceptive, and/or

unlawful practices, as well as unconscionable commercial practices in connection with the sales of any goods or services to consumers. *See* Cal. Civ. Code §1770.

71. The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient economical procedures to secure such protection." Cal. Civ. Code § 1760.

72. Defendants are each a "person" under the CLRA. Cal. Civ. Code §1761 (c).

73. Plaintiffs and the putative Class Members are "consumers" under the CLRA. Cal. Civ. Code §1761 (d).

74. The Tuna Products constitute a "good" under the CLRA. Cal. Civ. Code §1761 (a).

75. Plaintiffs and the putative Class Members' purchases of the Tuna Products within the Class Period constitute "transactions'" under the CLRA. Cal. Civ. Code §1761 (e).

76. Defendants' actions and conduct described herein reflect transactions that have resulted in the sale of goods to consumers.

77. Defendants' failure to label the Tuna Products in accordance with California labeling requirements constitutes an unfair, deceptive, unlawful, and unconscionable commercial practice.

78. Defendants' actions have violated at least seven provisions of the CLRA, including §§ 1770(a)(1), 1770 (a)(2), 1770 (a)(3), 1770(a)(5), 1770(a)(7), 1770 (a)(9) and 1770(a)(16).

79. As a result of Defendants' violations, Plaintiffs and the Class suffered, and continue to suffer, ascertainable losses in the form of the purchase price they paid for the unlawfully labeled and marketed Tuna Products, which they would not have paid had the Tuna Products been labeled correctly, or in the form of the reduced value of the Tuna Products relative to the Tuna Products as advertised and the retail price they paid.

80. Pursuant to § 1782 of the CLRA Plaintiffs notified Defendants in writing of the particular violations of § 1770 of the CLRA, and demanded Defendants rectify the actions described above by providing monetary relief, agreeing to be bound by their legal obligations, and to give notice to all affected consumers of their intent to do so. On or about April 16, 2020, Plaintiffs' counsel sent Defendants a notice and demand letter, notifying Defendants of their violations of the CLRA and demanding that within 30 days, Defendants remedy the unlawful, unfair, false, and/or

1   deceptive practices complained of herein. Plaintiffs' counsel advised Defendants that if they refused

2   the demand, monetary damages would be sought, as well as injunctive relief, restitution, and any

3   other relief the Court may deem just and proper. Defendants have failed to comply with the letter.

4   Consequently, pursuant to California Civil Code §1782, Plaintiffs, on behalf of themselves and all

5   other members of the Class, seeks compensatory damages and restitution of any ill-gotten gains due

6   to Defendants' acts and practices that violate the CLRA.

7       81.  Defendants have failed to rectify or agree to rectify at least some of the violations

8   associated with actions detailed above and give notice to all affected consumers within 30 days of

9   receipt of the Cal. Civ. Code § 1782 notice. Thus, Plaintiffs seek actual damages and punitive

10  damages for violations of the Act.

11      82.  In addition, pursuant to Cal. Civ. Code §1780(a)(2), Plaintiffs are entitled to, and

12  therefore seek, a Court order enjoining the above-described wrongful acts and practices that violate

13  Cal. Civ. Code §1770.

14      83.  Plaintiffs and Class Members are also entitled to recover attorneys' fees, costs,

15  expenses, disbursements, and punitive damages pursuant to Cal. Civ. Code §§ 1780 and 1781.

16                           **SIXTH CAUSE OF ACTION**

17           **Violation of California Business & Professions Code §§ 17500, *et seq*.**

18      84.  Plaintiffs re-allege and incorporate by reference the allegations contained in the

19  paragraphs above as if fully set forth herein.

20      85.  Defendants engaged in unfair and deceptive acts and practices, in violation of the

21  California Business and Professions Code § 17500 *et seq*., by marketing and/or selling the Tuna

22  Products as "tuna" and "100% tuna" without disclosure of the material fact that the Tuna Products

23  contain other fish species, animal species, and/or miscellaneous products not otherwise identified

24  on Defendants' menus. These acts and practices, as described above, have deceived Plaintiffs and

25  other class members, causing them to lose money as herein alleged and have deceived and are likely

26  to deceive the consuming public, in violation of those sections. Accordingly, Defendants' business

27  acts and practices, as alleged herein, have caused injury to Plaintiffs and the other class members.

28

86.   Defendants had a duty to disclose that the Tuna Products contain other fish species, animal species, and/or miscellaneous products not otherwise identified on Defendants' menus, because this information was a material fact of which Defendants had exclusive knowledge, Defendants actively concealed this material fact, and Defendants made partial representations about the Tuna Products but suppressed some material facts.

87.   Defendants' misrepresentation and/or nondisclosure of the fact that the Tuna Products did not contain other fish species, animal species, and/or miscellaneous products not otherwise identified on Defendants' menus was the immediate cause of Plaintiffs and the other class members purchasing the Tuna Products.

88.   In the absence of Defendants' misrepresentation and/or nondisclosure of facts, as described above, Plaintiffs and other class members would not have purchased the Tuna Products.

89.   Plaintiffs and the other class members are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such business acts or practices, and enjoining Defendants to cease and desist from engaging in the practices described herein.

## SEVENTH CAUSE OF ACTION

### Violation of Business & Professions Code § 17200, *et seq*.

90.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

91.   Plaintiffs seek to represent a Class consisting of "All persons who purchased the Tuna Products in the State of California for personal use and not for resale during the time period January 21, 2017, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Tuna Products."

92.   The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

**A.     "Unfair" Prong**

93.   Pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*., a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid," *or* "the utility of the defendant's conduct is outweighed by the gravity of the harm to the alleged victim.

94.   Defendants' actions of engaging in false and deceptive advertising, marketing, and labeling of the Tuna Products do not confer any benefit to consumers.

95.   Defendants' actions of advertising, marketing, and labeling the Tuna Products in a false, deceptive, and misleading manner cause injuries to consumers because the consumers do not receive a quality of food product commensurate with their reasonable expectation.

96.   Defendants' actions of advertising, marketing, and labeling the Tuna Products in a false, deceptive, and misleading manner cause injuries to consumers because the consumers do not receive the benefits that they reasonably expect from the Tuna Products.

97.   Defendants' actions of advertising, marketing, and labeling the Tuna Products in a false, deceptive, and misleading manner cause injuries to consumers because the consumers end up consuming a food product that is of a lower quality than what they reasonably were expecting and sought.

98.   Defendants' actions of advertising, marketing, and labeling the Tuna Products in a false, deceptive, and misleading manner cause injuries to consumers because the consumers end up overpaying for the Tuna Products and receiving a quality of food item that is less than what they expected to receive.

99.   Consumers cannot avoid any of the injuries caused by Defendants' false, misleading, and deceptive labeling, advertising, and marketing of the Tuna Products.

100. Accordingly, the injuries caused by Defendants' activity of advertising, marketing, and labeling, the Tuna Products in a false, deceptive, and misleading manner outweigh any benefits.

101. Here, Defendants' conduct of advertising, labeling  and marketing the Tuna Products in a false, deceptive, and misleading manner has no utility and financially harms purchasers.  Thus, the utility of Defendants' conduct is vastly outweighed by the gravity of harm.

102. Defendants' labeling, marketing, and advertising of the Tuna Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

103. Defendants knew or should have known of their unfair conduct.

104. As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute an unfair business practice within the meaning of California Business and Professions Code § 17200.

105. There were reasonable available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have marketed, labeled, and advertised the Tuna Products truthfully, without any dishonest claims about the Tuna Products' ingredients, composition, and identity.

106. All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

107. Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiffs and the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising, labeling, and marketing the Tuna Products in an untruthful manner. Likewise, Plaintiffs and the Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiffs restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial. Plaintiffs and the Class Members also seek full restitution of all monies paid to Defendants as a result of their deceptive practices, interest at the highest rate allowable by law and the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Civil Code Procedure §1021.5.

108. As a direct and proximate result of these acts, consumers have been and continue to be harmed. Plaintiffs and the Class Members have suffered injury and actual out-of-pocket losses as a result of Defendants' violation of the unfair prong of the UCL because Plaintiffs and the Class would not have bought the Tuna Products if they had known the truth regarding the ingredients,

composition and identity of the Tuna Products. Plaintiffs and the Class paid an increased price due to the misrepresentations about the Tuna Products and the Tuna Products did not have the promised quality, effective, or value.

### B.    "Fraudulent" Prong

109. California Business and Professions Code § 17200, *et seq.,* considers conduct fraudulent and therefore prohibits said conduct if it is likely to deceive members of the public.

110. Defendants' marketing, labeling, and advertising of the Tuna Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes fraudulent conduct. As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute a fraudulent business practice in violation of California Business & Professions Code § 17200 because they are likely to, and did indeed, deceive members of the public.

111. Defendants knew or should have known of their fraudulent conduct.

112. There were reasonable available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have labeled, advertised, and marketed the Tuna Products accurately.

113. All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

114. Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiffs and the Class seek an order of this Court requiring Defendants to cease the acts of fraudulent competition alleged herein. Likewise, Plaintiffs and the Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiffs restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial. Plaintiffs and the Class Members also seek full restitution of all monies paid to Defendants as a result of their deceptive practices, interest at the highest rate allowable by law and the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Civil Code Procedure §1021.5.

115. As a direct and proximate result of these acts, consumers have been and continue to be harmed. Plaintiffs and the Class Members have suffered injury and actual out-of-pocket losses as a result of Defendants' violation of the fraudulent prong of the UCL because Plaintiffs and the Class would not have bought the Tuna Products if they had known the truth regarding the ingredients and composition of the Tuna Products. Plaintiffs and the Class paid an increased price due to the misrepresentations about the Tuna Products and the Tuna Products did not have the promised quality, effectiveness, or value.

### C.    "Unlawful" Prong

116. California Business and Professions Code § 17200, *et seq.,* identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable."

117. Defendants' labeling and marketing of the Tuna Products, as alleged in the preceding paragraphs, violates California Civil Code § 1750, *et. seq.,* California Business and Professions Code § 17500, *et. seq.,* California's Sherman Law, and the FDCA.

118. Under 21 U.S.C §343 (a), the FDCA expressly defines food as misbranded if "its labeling is false or misleading in any particular." Similarly, California's Sherman Law, Cal. Health & Safety Code § 110660,  states "any food is misbranded if its labeling is false or misleading in any particular." Additionally, § 402(b) of the FDCA and Article 5, § 110585 of California's Sherman Law both state that a food product, including tuna, is adulterated "if any valuable constituent has been in whole or in part omitted or abstracted therefrom; or if any substance has been substituted, wholly or in part therefor; or if damage or inferiority has been concealed in any manner; or if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight or reduce its quality or strength or make it appear better or of greater value than it is."

119. Defendants' labeling, advertising, and marketing of the Tuna Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct. Defendants have violated the "unlawful prong" by violating, the FDCA, California's Sherman Law, as well as the State's FAL (Cal. Bus. & Prof. Code § 17500 *et seq.)* and CLRA (Cal. Civ. Code §1770 *et. seq.*).

120. Defendants knew or should have known of their unlawful conduct.

1    121. As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed

2    above constitute an unlawful business practice within the meaning of California Business and

3    Professions Code § 17200.

4    122. There were reasonable available alternatives to further Defendants' legitimate

5    business interests, other than the conduct described herein. Defendants could have refrained from

6    displaying untruthful claims on its menus and in its advertising that the Tuna Product are "tuna."

7    Similarly, Defendants could have abstained from misrepresenting the Tuna Products' ingredients,

8    composition, and identity.

9    123. All of the conduct alleged herein occurred and continues to occur in Defendants'

10   business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct

11   repeated on thousands of occasions daily.

12   124. As a direct and proximate result of these acts, consumers have been and continue to

13   be harmed. Plaintiffs and the Class Members have suffered injury and actual out-of-pocket losses

14   as a result of Defendants' violation of the unlawful prong of the UCL because Plaintiffs and the

15   Class would not have bought the Tuna Products if they had known the truth regarding the ingredients

16   of the Tuna Products. Plaintiffs and the Class paid an increased price due to the misrepresentations

17   about the Tuna Products and the Tuna Products did not have the promised quality, effectiveness, or

18   value.

19   125. Pursuant to Bus. & Prof. Code §§ 17203 and 17535, Plaintiffs and the Class are

20   therefore entitled to an order requiring Defendants to cease the acts of unfair competition alleged

21   herein, full restitution of all monies paid to Defendants as a result of their deceptive practices,

22   interest at the highest rate allowable by law and the payment of Plaintiffs' attorneys' fees and costs

23   pursuant to, *inter alia*, California Civil Code Procedure §1021.5.

24   ///

25   ///

26   ///

27   ///

28   ///

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

1.   This action be certified and maintained as a class action and certify the proposed class as defined, appointing Plaintiffs as representatives of the Class, and appointing the attorneys and law firms representing Plaintiffs as counsel for the Class;

2.   For an order declaring the Defendants' conduct violates the statutes referenced herein;

3.   That the Court awards compensatory, statutory and/or punitive damages as to all Causes of Action where such relief is permitted;

4.   That the Court awards Plaintiffs and proposed class members the costs of this action, including reasonable attorneys' fees and expenses;

5.   For an order enjoining Defendants from continuing to engage in the unlawful conduct and practices described herein;

6.   That the Court awards equitable monetary relief, including restitution and disgorgement of all ill-gotten gains, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of Defendants' ill-gotten gains, to ensure that Plaintiffs and proposed class members have an effective remedy;

7.   That the Court awards pre-judgment and post-judgment interest at the legal rate;

8.   That the Court orders appropriate declaratory relief; and

9.   That the Court grants such other and further as may be just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated:      November 8, 2021                          Respectfully Submitted,
                                                     McNICHOLAS & McNICHOLAS LLP,

                              By:      /s/ *Patrick McNicholas*
                                     Patrick McNicholas, Esq.
                                     Jeffrey R. Lamb, Esq.
                                     Emily R. Pincin, Esq.
                                     Attorneys for Plaintiffs


Dated:      November 8, 2021                          Respectfully Submitted,
                                                     THE LANIER LAW FIRM,

                              By:      /s/ *Jonathan Wilkerson*
                                     Jonathan Wilkerson, Esq.
                                     Attorneys for Plaintiffs


Dated:      November 8, 2021                          Respectfully Submitted,
                                                     DOGRA LAW GROUP, PC

                              By:      /s/ *Shalini Dogra, Esq.*
                                     Shalini Dogra, Esq.
                                     Attorneys for Plaintiffs


## <u>Attestation of Holographic Signatures</u>

"I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document."

Dated:      November 8, 2021                          Respectfully Submitted,
                                                     DOGRA LAW GROUP, PC

                              By:      /s/ *Shalini Dogra, Esq.*
                                     Shalini Dogra, Esq.
                                     Attorneys for Plaintiffs

SECOND AMENDED CLASS ACTION COMPLAINT