Mark C. Goodman (State Bar No. 154692)
  mark.goodman@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111
Telephone:   +1 415 576 3000
Facsimile: +1 415 576 3099

Alexander G. Davis (State Bar No. 287840)
  alexander.davis@bakermckenzie.com
Anne Kelts Assayag (State Bar No. 298710)
  anne.assayag@bakermckenzie.com
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA  94304-1044
Telephone:   +1 650 856 2400
Facsimile: +1 650 856 9299

Attorneys for Defendants
SUBWAY RESTAURANTS, INC.,
FRANCHISE WORLD HEADQUARTERS, LLC and
SUBWAY FRANCHISEE ADVERTISING TRUST FUND LTD.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN DHANOWA and NILIMA AMIN, on behalf of themselves and all others,<br><br>        Plaintiffs,<br><br>        vs.<br><br>SUBWAY RESTAURANTS, INC., a Delaware Corporation; FRANCHISE WORLD HEADQUARTERS, LLC., a Connecticut Limited Liability Corporation; SUBWAY FRANCHISEE ADVERTISING TRUST FUND LTD., a Connecticut Corporation; and DOES 1 through 50, Inclusive,<br><br>        Defendants. | Case No.  4:21-cv-00498-JST<br><br>**MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:   February 3, 2022<br>Time:   2:00 p.m.<br>Ctrm:   Courtroom 6 – 2nd Floor<br>Judge:  Hon. Jon S. Tigar<br>Oakland Courthouse<br><br>Complaint Filed: January 21, 2021<br>Amended Complaint Filed: June 8, 2021<br>Second Amended Complaint Filed:<br>             November 8, 2021 |

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ............................................................................ 1

I.      INTRODUCTION ............................................................................................................ 2

II.     RELEVANT FACTUAL BACKGROUND..................................................................... 5

     A.      Plaintiffs' Unexplained And Speculative Fraud Allegations........................................ 5

     B.      Subway's Actual Menus, Labeling And Advertising Practices.................................... 6

     C.      Plaintiffs' Alleged Testing Fails To Show No Tuna In The Products.......................... 6

     D.      Plaintiffs Do Not Allege Facts Showing Why Subway's Statements Are False .......... 8

III.    PROCEDURAL HISTORY............................................................................................. 9

IV.     DISCUSSION ................................................................................................................ 10

     A.      The Applicable Pleading Standards ........................................................................... 10

     B.      Plaintiffs Cannot Meet The Federal Pleading Standard............................................. 11

           1.      Plaintiffs Offer no Facts to Support their Misrepresentation
                  Allegations ........................................................................................................ 11

                  a.      Plaintiffs' Alleged Testing does not Establish a False Statement....... 14

           2.      Plaintiffs' Allegations are Completely Speculative........................................ 16

           3.      Plaintiffs Still do not Allege Reasonable Reliance ........................................ 17

     C.      The SAC Should Be Dismissed With Prejudice ........................................................ 19

V.      CONCLUSION.............................................................................................................. 19

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................16

5

6

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   No. C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ...........................10

7

8

*Brazil v. Dole Food Co.*,
   935 F.Supp.2d 947 (N.D. Cal. 2013) ....................................................................11, 12

9

10

*Cafasso v. Gen. Dynamics C4 Sys.*,
   637 F.3d 1047 (9th Cir. 2011) .....................................................................................14

11

*Chevron Prods. Co. v. Advanced Corrosion Techs. & Training, LLC*,
   No. 20-cv-09095-CRB, 2021 WL 2156467 (N.D. Cal. May 27, 2021) .......................12

12

13

*Colgate v. JUUL Labs, Inc.*,
   345 F.Supp.3d 1178 (N.D. Cal. 2018) .............................................................13, 17, 18

14

15

*Cooper v. Curallux LLC*,
   No. 20-cv-02455-PJH, 2020 WL 4732193 (N.D. Cal. Aug. 14, 2020) .......................13

16

*Cox v. Richland Holdings, Inc.*,
   No. 2:16-cv-02914-APG-VCF, 2018 WL 2014061 (D. Nev. Apr. 30, 2018) .............19

17

18

*In re Ferrero Litig.*,
   794 F.Supp.2d 1107 (S.D. Cal. 2011) ....................................................................10, 17

19

20

*Ham v. Hain Celestial Grp., Inc.*,
   70 F.Supp.3d 1188 (N.D. Cal. 2014) ..........................................................................13

21

*In re Harmonic Inc. Sec. Litig.*,
   163 F.Supp.2d 1079 (N.D. Cal. 2001) .........................................................................13

22

23

*In re Invision Techs., Inc. Sec. Litig.*,
   No. C04-03181 MJJ, 2006 WL 538752 (N.D. Cal. Jan. 24, 2006) ............................13

24

*IUE AFL-CIO Pension Fund v. Herrmann*,
   9 F.3d 1049 (2d Cir. 1993)...........................................................................................11

25

26

*Jones v. Conagra Foods, Inc.*,
   912 F.Supp.2d 889 (N.D. Cal. 2012) ...........................................................................11

27

28

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .....................................................................................12

*Love v. FYI MC, LLC*,
    No. 21-cv-02845-EMC, 2021 WL 2913654 (N.D. Cal. July 12, 2021) ...................................6

*Moore v. Trader Joe's Co.*,
    No. 4:18-cv-04418-KAW, 2019 WL 2579219 (N.D. Cal. June 24, 2019)................................10

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ...................................................................................................10

*Reddy v. Litton Indus.*,
    912 F.2d 291 (9th Cir. 1990) ...................................................................................................19

*Romero v. Flowers Bakeries, LLC*,
    No. 14-cv-05189-BLF, 2015 WL 2125004 (N.D. Cal. May 6, 2015) ...............................10, 12

*Sherwin-Williams Co. v. JB Collision Servs.*,
    No. 13-CV-1946-LAB-WVG, 2014 WL 5112057 (S.D. Cal. Oct. 9, 2014)...........................17

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) .................................................................................................10

*Song Fi, Inc. v. Google, Inc.*,
    Case No. C 14-5080 CW, 2016 WL 3479078 (N.D. Cal. June 27, 2016).................................19

*Tompkins v. Emc Mortg. Corp.*,
    No. CV 10-608-PHX-SRB, 2010 WL 11629510 (D. Ariz. Oct. 28, 2010)..............................14

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) ...........................................................................................11, 20

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .................................................................................................17

**Statutes / Other Authorities**

21 CFR § 161.190 ..........................................................................................................................15

CACI § 1900 ..................................................................................................................................17

Fed. R. Civ. P. 8 ...............................................................................................................................1

Fed. R. Civ. P. 9(b) ............................................................................................................... *passim*

Fed. R. Civ. P. 11 .......................................................................................................................9, 20

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1, 6, 10

<u>**NOTICE OF MOTION AND RELIEF REQUESTED**</u>

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

Please take notice that, on February 3, 2022, at 2:00 p.m. or as soon thereafter as the matter can be heard in Courtroom 6, 2nd Floor, of the United States District Court, Oakland Courthouse, located at 1301 Clay Street, Oakland, CA 94612, Defendants Subway Restaurants, Inc., Franchise World Headquarters, LLC and Subway Franchisee Advertising Trust Fund Ltd. (collectively, "Subway") will move the Court for an order dismissing the plaintiffs' Second Amended Complaint (the "SAC").

Subway's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, the declarations of Anne Kelts Assayag and Jennifer Myers, the Proposed Order, any oral argument that may be presented at the hearing, on all other papers, records and pleadings on file in this action and on such additional evidence and argument as the Court may allow prior to and during the hearing on this motion.

***Relief Requested***:  Subway respectfully requests that the Court (1) grant its request for judicial notice and (2) issue an order dismissing with prejudice the SAC in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state any claim on which relief may be granted and terminating the action.

<u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

1.      Whether the SAC must be dismissed under Federal Rules of Civil Procedure 8 and 9(b) because it fails to allege facts demonstrating that alleged representations by Subway about its tuna products are false or misleading to a reasonable consumer of tuna products.

2.      Whether the SAC must be dismissed under Federal Rules of Civil Procedure 8 and 9(b) because it fails to allege facts supporting a plausible inference that the plaintiffs relied on actually misleading statements before purchasing tuna products from Subway restaurant locations in California between 2013 and 2019 or were actually damaged as a result of purchasing such products.

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

The history -- and constant shifting -- of the plaintiffs' claims tells the Court all it needs to

4

know to evaluate whether those claims should be dismissed for good.  As the Court will recall, the

5

plaintiffs filed their original complaint in this action with much media fanfare, accusing Subway's

6

tuna of not being actual tuna.  Those claims were false and, after the plaintiffs were warned

7

repeatedly by Subway to withdraw their unsupportable claims and were provided facts

8

demonstrating that the claims were false because all Subway tuna is, of course, tuna, the plaintiffs

9

quickly withdrew their complaint.  However, rather than just admit they were wrong, the plaintiffs

10

and their lawyers filed an amended complaint, alleging that tuna purchased from a Subway

11

restaurant in California may not have been "100% sustainably caught skipjack and yellowfin tuna"

12

and/or might have contained "tuna species that come from anything less than healthy stocks, for

13

example Albacore and Tongol."  (Dkt. No. 33, First Amended Complaint ("FAC") at ¶¶2, 4-6; *see*

14

*also* Dkt. No. 51 (Order Granting Defendants' Motion to Dismiss) (the "Order") at 1.)  Subway

15

demanded that the plaintiffs withdraw those claims, too, but the plaintiffs refused.  Subway was,

16

therefore, forced to bring a motion to dismiss the FAC.  In granting that motion to dismiss, the Court

17

found that the plaintiffs failed to plead reliance on any Subway statement because they did not

18

identify any specific representation that Subway supposedly made and did not allege that they relied

19

on any such representation in purchasing a Subway product.  (*See* Order at 5-8; Transcript of

20

October 7, 2021 Hearing ("Transcript") at 4:4-18.)  Over Subway's objection, the Court granted the

21

plaintiffs leave to amend following their insistence at oral argument that they could "simply amend

22

the complaint to adequately plead the reliance."  (Transcript at 5:11-14.)

23

Rather than amend their complaint to plead reliance on the representations identified in the

24

FAC, as the Court permitted them to do, the plaintiffs' third attempt to state a claim against Subway

25

abandons those representations entirely and reverts to the plaintiffs' original, baseless theory that

26

Subway tuna products do not contain tuna -- or, now, do not contain "only tuna" -- asserting the

27

same consumer fraud claims they previously withdrew as unsupportable.  Unfortunately for the

28

plaintiffs, the claims in the SAC -- in addition to having no basis in law or fact -- suffer from the

1  fundamental deficiencies that plagued their prior pleadings, as the allegations that Subway tuna

2  either is not tuna or fails to contain "only tuna" are fatally vague, speculative and unsupported.

3       Consistent with their improper tactics to date in this litigation, the plaintiffs try to hide that

4  their claims lack a scintilla of factual support by alleging that they conducted testing of the finished

5  tuna products.  This "new" fact cannot save their claims, as the plaintiffs still do not allege facts

6  demonstrating that Subway made any misstatements.  The SAC alleges that Subway claims that its

7  tuna is tuna but the plaintiffs do not allege any facts showing that the tuna is ***not*** tuna.  Instead the

8  SAC alleges that testing failed to reveal any tuna DNA.  All that means is that the tests -- of ***fully***

9  ***assembled*** Subway wraps, sandwiches and/or salads (not the actual tuna that is used as an ingredient

10 in those menu items), under undisclosed conditions and based on undisclosed, but surely

11 questionable, methodologies -- did not detect tuna DNA.  It does not mean that Subway made a

12 misrepresentation.  ***Critically, the SAC does not allege that the tuna products actually contain no***

13 ***tuna and do not allege what the tuna products are if they are not tuna.***

14      As has been explained to the plaintiffs repeatedly, it is widely accepted in the scientific

15 community that DNA testing is not an appropriate or scientifically valid method by which to test

16 processed tuna protein, considering the high pressure and heat used to process such products.  The

17 tuna needs to be cooked to such extreme temperatures that the protein is frequently completely

18 denatured as a result and, thus, is not detectable as tuna DNA.  Moreover, it should be obvious to

19 and understood by a reasonable consumer that tuna wraps, sandwiches and salads prepared on the

20 same counter and with the same utensils as various other menu items and ingredients would have

21 some evidence of cross-contact with those ingredients.  Plaintiffs do not cite any alleged assurances

22 on Subway's menus or website or in its advertisements that the tuna products would be free from

23 the risk of such cross-contact or that contact with other menu items makes Subway's tuna not tuna.

24 To the contrary, Subway's allergen statement -- publicly available on its website -- fully discloses

25 to all consumers, including the plaintiffs here, that "[i]ndividual food items may come in contact

26 with one another during food preparation."  (*See* Request for Judicial Notice ("RJN"), Exs. P and

27 Q.)

28

Against this backdrop, the SAC only further confirms that the plaintiffs and their counsel failed to conduct due diligence before filing claims in this Court and, as a direct result, still cannot plead fraud "with particularity" as required by Federal Rule of Civil Procedure 9(b).  While they obviously do not feel constrained by the truth, the plaintiffs -- on their third try to state a claim -- still do not set forth facts sufficient to explain *what* false statements they supposedly saw, *where* and *when* they saw those statements and *why and how* any statements made by Subway are false.  Plaintiffs also still fail to plausibly allege actual reliance on any alleged representations.  Plaintiff Dhanowa does not allege *anything* about her purported experience in purchasing Subway products (if she purchased any), and certainly does not allege that she relied on any alleged statement by Subway.  Plaintiff Amin alleges in conclusory fashion that she relied on general statements that Subway's tuna products are "tuna" but does not support her theory with *facts* demonstrating why it was reasonable for her to believe that a sandwich containing tuna salad -- which she admits consisted of tuna *mixed with mayonnaise* -- and other ingredients or toppings, contains "only tuna."  (*See* SAC at ¶¶22, 37.)  To the extent the plaintiffs' theory is that the *tuna* in Subway's products is not "only tuna," this is not supported by any well-pled allegations in the SAC.  Plaintiffs consistently conflate their theory that Subway's tuna products were not "only tuna" with references to alleged statements that the tuna products contain "100% tuna," but the plaintiffs concede that any "100% tuna" statements only appear on Subway's website (*id.*) and they do not allege that they ever consulted that website before they purchased any Subway tuna products or that they incurred any actual damages as a result of purchasing Subway's tuna products.

Plaintiffs' tactics of making unsupportable claims and then shifting to different, still baseless, theories of liability whenever they are proven wrong -- and then returning to the prior failed theories -- cannot be allowed.  It should be clear by now that the plaintiffs could not plead a viable claim against Subway if given yet another (*fourth*) chance to do so.  Given the allegations in the SAC and the circumstances to date -- including the fact that the plaintiffs cannot allege that they purchased Subway tuna products after reasonably relying on any false statement by Subway -- the Court should dismiss the plaintiffs' complaint yet again, this time without leave to amend.

1

2

## II.   RELEVANT FACTUAL BACKGROUND

### A.   Plaintiffs' Unexplained And Speculative Fraud Allegations

3

Plaintiffs' prior, failed pleading alleged that Subway's tuna products **do** contain tuna but

4

not "100% sustainably caught skipjack and yellowfin tuna" or "tuna species that comes from

5

anything less than healthy stocks, for example Albacore and Tongol." (*See* Dkt. No. 33 at ¶¶4-6.)

6

Plaintiffs no longer challenge those statements. (*See generally* SAC.)  Instead, the plaintiffs raise

7

two entirely different alleged misrepresentations:  (1) the tuna products were "tuna" and (2) the

8

tuna products contained "100% Tuna." (SAC at ¶20.)  Plaintiffs allege that Subway's in-store

9

menus identify tuna products as "tuna" and that Subway's website states that Subway tuna salad is

10

"100% wild caught tuna blended with creamy mayo." (SAC at ¶22; *see also* RJN, Exs. A-C, H-

11

M.)

12

Plaintiffs are alleged to be residents of Alameda County, California.  (SAC at ¶¶13-14.)

13

While the SAC names plaintiff Dhanowa as a party, it sets forth no allegations about her, does not

14

allege that she purchased any Subway products, does not allege that she relied on any statements

15

that Subway made and does not allege that she suffered any harm. (*See generally* SAC.)  As for

16

plaintiff Amin, the SAC alleges that, on unidentified dates "[i]n each year beginning in 2013 and

17

continuing until 2019," Ms. Amin ordered, purchased and consumed Subway tuna products sold at

18

a single Subway restaurant in Palo Alto, California.  (SAC at ¶36.)  Plaintiff Amin alleges that,

19

each time she visited that Subway restaurant, she "looked at the menu, acknowledged the food

20

option identified as being 'tuna,' ordered a sandwich or wrap because it was identified as being

21

'tuna,' and consumed the Tuna Products, all with the understanding and belief that what she was

22

eating was, in fact, '**only** tuna.'" (SAC at ¶37 (bold emphasis added).)  Plaintiff Amin does not

23

allege that she reviewed or relied on any statement by Subway that the tuna products contained

24

"100% Tuna" in making a purchase, that a Subway tuna sandwich consisted only of tuna and no

25

other ingredients or items, including as a result of cross-contact with other Subway food items, or

26

that Subway tuna salad would reveal tuna DNA if subjected to a DNA test.  (*See id.*)

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B.      **Subway's Actual Menus, Labeling And Advertising Practices**

Consistent with the plaintiffs' allegations, the menus at every Subway restaurant in California and on the internet simply describe Subway's tuna products as "Tuna" or "Classic Tuna."  (RJN, Exs. A-D, H-M.)[1]  Subway tuna sandwiches and wraps are served in nonspecific paper packaging and "To-Go" bags that make no representations about tuna or any other aspect of the product.  (RJN, Exs. E and G.)  Subway salads likewise are served in packaging bearing no statements regarding the products.  (RJN, Ex. F.)

The "US Product Ingredient Guide" -- available for download on the Subway website and available in paper copy at Subway restaurant locations -- describes Subway "Tuna Salad" as "Tuna (tuna, water, salt), mayonnaise."  (RJN, Exs. N and O.)  Subway tuna sandwiches and wraps are Subway tuna salad placed on bread or a flour tortilla with a variety of toppings of the customer's choosing:  For the time period during which the plaintiffs claim they purchased Subway tuna products, the ordering portal on the Subway website stated that the "Classic Tuna" sandwich included "[f]laked tuna, mixed with mayo, and your choice of fresh vegetables."  (RJN, Exs. H and I.)  The website ordering page similarly described tuna wraps and salads as "flaked tuna mixed with mayo."  (RJN, Exs. J-M.)  Subway tuna sandwiches are made to order at Subway restaurants using the same counter and utensils used to make other Subway sandwiches and food products with other Subway ingredients, like chicken, ham, bacon and roast beef.  (RJN, Exs. N-Q.)

C.      **Plaintiffs' Alleged Testing Fails To Show No Tuna In The Products**

According to the SAC, on some undisclosed date(s), Southern California marine biologist Dr. Paul Barber, and/or researchers at his lab, performed "DNA barcoding" testing on twenty samples of tuna products collected from twenty different Subway restaurants "in the greater

---

[1] The Court can consider these matters on a motion to dismiss:  "When ruling on a Rule 12(b)(6) motion to dismiss, a court may, without converting the motion to one for summary judgment, consider 'documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice[.]'"  *Love v. FYI MC, LLC*, No. 21-cv-02845-EMC, 2021 WL 2913654, at *3 (N.D. Cal. July 12, 2021) (quoting *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003)).  The Court already took judicial notice of these documents in ruling on Subway's motion to dismiss the FAC.  (Order at 3.)

1   Southern California region." (SAC at ¶23.)  Plaintiffs allege on information and belief that "all

2   California-based Subway restaurants receive their Tuna Products from the same supply chain" but

3   do not allege that Dr. Barber or his team tested any tuna products from the only store from which

4   plaintiff Amin alleges to have purchased tuna products and do not explain whether Dr. Barber's

5   testing was performed on tuna products sold during the 2013 to 2019 date range when plaintiff

6   Amin alleges to have purchased Subway tuna products.  (*See* SAC at ¶¶23, 27, 36.)  Plaintiffs also

7   do not allege that Dr. Barber and/or his researchers tested the actual tuna that Subway allegedly

8   receives through its supply chain; to the contrary, the plaintiffs admit that Dr. Barber and/or his

9   researchers only tested assembled tuna wraps, sandwiches or salads containing tuna salad

10  combined with bread, condiments such as vegetables, cheese and sauces and/or other wrap,

11  sandwich or salad ingredients.  (*See* SAC at ¶¶23-24.)  Plaintiffs do not specify what, if any,

12  toppings or condiments were included on the tuna products that they purchased and/or tested.

13  Plaintiffs further do not allege when the testing was conducted, how long it occurred after the tuna

14  products were purchased or under what conditions the tuna products were stored until they were

15  tested.

16          The SAC does not describe the chain of custody or precise testing methodology but does

17  allege that Dr. Barber and his researchers used unspecified "custom sequencing" methods to test

18  the samples against four different "primers," including primers for unidentified tuna species.

19  (SAC at ¶24.)  Based on this unspecified methodology, Dr. Barber's testing allegedly failed to

20  detect tuna DNA sequences in some but not all of the samples but did detect undisclosed amounts

21  of chicken, pork and "cattle" DNA in certain samples.  (SAC at ¶25.)  Based on these test results,

22  the plaintiffs allege that the tuna products are not "tuna" or "100% tuna" but instead are

23  "contaminated or otherwise adulterated such that consumers are not receiving the product they

24  reasonably expect to be purchasing."  (SAC at ¶26.)

25          Following the plaintiffs' filing of their initial complaint, certain news outlets tested

26  Subway tuna products to evaluate the allegations about Subway tuna not being tuna.  (*See* RJN,

27  Exs. T-V.)  Inside Edition's investigative unit bought tuna from three Subway locations, sent

28  samples of that tuna to a lab that specializes in conducting DNA testing of fish and confirmed that

1    all three samples that were tested indicated tuna DNA.  (*See* RJN, Ex. T.)  A reporter for the New

2    York Times purchased other tuna products, removed and froze the tuna and shipped it to a

3    commercial food testing lab.  (*See* RJN, Ex. U.)  The testing conducted by the New York Times

4    detected "no amplifiable tuna DNA" in the samples and, thus, could not identify the species of fish

5    in the product, noting that these inconclusive results could be attributed to the fact that the tuna is

6    highly processed.  (*Id.*)  Following the New York Times report, Inside Edition again

7    commissioned testing of Subway tuna products and again confirmed the presence of tuna DNA in

8    all of the products that it tested.  (*See* RJN, Ex. V.)

9         **D.    Plaintiffs Do Not Allege Facts Showing Why Subway's Statements Are False**

10        The SAC concedes that plaintiff Amin "did not take steps to verify the Tuna Products'

11   components, or to verify whether the Tuna Products contained tuna as the sole ingredient."  (SAC

12   at ¶40.)  However, this lack of facts did not stop the plaintiffs from claiming that the Subway tuna

13   products they allegedly purchased do not contain tuna or 100% tuna.  (*See, e.g.*, *id.* at ¶¶3-4.)  The

14   SAC does not allege facts supporting the conclusion that the tuna in Subway's tuna products is not

15   tuna or 100% tuna.  Indeed, the SAC does not even allege what the tuna products are if they are

16   not tuna.  Nor does the SAC set forth any subjective facts -- *e.g.,* that the product smelled, tasted

17   or looked like something other than tuna -- but instead proclaims that Subway's representations

18   about its tuna are false, without further explanation or supporting facts.

19        Plaintiffs next allege that Subway does not take "sufficient measures to control or prevent

20   the known risks of adulteration to its Tuna Products."  (SAC at ¶26.)  However, the SAC does not

21   allege what the "known risks of adulteration" are, what adulteration might have befallen the tuna

22   products that plaintiff Amin allegedly purchased and consumed or what measures would be

23   sufficient to prevent adulteration and why.  Plaintiffs charge Subway with "actively perpetuat[ing]

24   actions and steps that encourage mixing or allowing non-tuna ingredients to make their way into

25   the Tuna Products" but they provide no facts showing what these "actions and steps" are, what

26   "non-tuna ingredients" might actually be in the products or how the plaintiffs made any

27   determination that the products are adulterated.  (SAC at ¶26.)

28

The SAC asserts a variety of statutory and common law claims, all of which sound in fraud and are based on the same theory; *i.e.,* for reasons the plaintiffs still fail to explain, Subway's representations about the content of its tuna products are somehow inaccurate or misleading.  (*See* SAC at ¶¶46-125.)  All of these claims must be dismissed.

## III.  PROCEDURAL HISTORY

It would be bad enough if the SAC were the plaintiffs' first -- or even second -- stab at claims against Subway.  But it is truly telling (and damning) that this lawsuit was initiated by the plaintiffs and their lawyers filing a complaint alleging that Subway's tuna products contain ***no tuna at all***.  (*See* Complaint, ECF No. 5 at ¶2 ("The Products lack tuna and are completely bereft of tuna as an ingredient").)  Plaintiffs and their attorneys appear to have reasoned that filing such sensational public charges would maximize media attention and result in a quick settlement, thereby excusing their lack of a reasonable basis on which to make such claims.

After Subway provided the plaintiffs' lawyers with evidence demonstrating the quality and sourcing of Subway's tuna products, and ***the fact that the tuna was in fact tuna***, the plaintiffs quickly abandoned their "no tuna at all" theory, effectively conceding that their original claims were meritless.  However, rather than do the right thing and dismiss the suit and publicly apologize for the harm that they caused to Subway's franchisees, the plaintiffs came up with a new theory that consumers were somehow misled by claims that the tuna is 100% sustainably caught skipjack and yellowfin.  (*See generally* FAC.)  After the Court concluded that those claims failed for lack of reliance -- and impliedly admitting that, contrary to their counsel's representations at oral argument, they never relied on any such statements -- the plaintiffs have now abandoned ***those*** claims and reverted back to the allegations of their first complaint.  (*See* Order at 5-8; Transcript at 4:4-18, 5:11-14.)  The decision of the plaintiffs and their counsel to continue to press forward with ever-changing allegations that uniformly fail to state plausible (much less believable) claims against Subway violates the most basic requirements of federal pleading standards, the policies underlying Rule 9(b) and the strictures of Rule 11 and is something for which the plaintiffs and their attorneys should ultimately be held accountable.

## IV.    DISCUSSION

### A.    The Applicable Pleading Standards

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on such a motion, the Court ignores "legally conclusory statements" in the pleadings not supported by actual factual allegations. *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796, at *2 (N.D. Cal. May 26, 2011) (internal quotations and citations omitted).  The Court must further disregard "allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2015 WL 2125004, at *3 (N.D. Cal. May 6, 2015) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)) (internal quotations omitted).

What the Court **can consider** on a motion to dismiss are any well-pled allegations of fact to determine whether those allegations state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).  Plausible claims set forth sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Moore v. Trader Joe's Co.*, No. 4:18-cv-04418-KAW, 2019 WL 2579219, at *2 (N.D. Cal. June 24, 2019) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).  This means that the plaintiffs' factual allegations must create more than a "sheer possibility that a defendant has acted unlawfully . . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).  Stated another way, the plaintiffs' factual pleading in this case "must be enough to raise a right to relief above the speculative level." *Astiana*, 2011 WL 2111796, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted).  Plaintiffs' complaint here falls far short of this mark because it simply "tenders naked assertion[s] devoid of further factual enhancement." *See In re Ferrero Litig.*, 794

F.Supp.2d 1107, 1111 (S.D. Cal. 2011) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).

In addition, where, as here, claims sound in fraud, the plaintiffs must allege facts with particularity to satisfy the heightened pleading requirements of Rule 9(b).  *Jones v. Conagra Foods, Inc.*, 912 F.Supp.2d 889, 894 (N.D. Cal. 2012) (citing Rule 9(b)).  This rule exists "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal citations and quotations omitted).  Rule 9(b) further safeguards a "defendant's reputation and goodwill from improvident charges of wrongdoing" and "inhibit[s] the institution of strike suits." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993).

In light of these strongly-held policies, the core requirement of this heightened pleading burden -- and the most glaring omission in the case before this Court -- is to "set forth what is false or misleading about a statement, ***and why it is false***." *Brazil v. Dole Food Co.*, 935 F.Supp.2d 947, 953 (N.D. Cal. 2013) (quoting *Decker v. Glenfed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297, 1309 (C.D. Cal. 1996)) (internal quotations omitted) (emphasis added).  In addition, the complaint must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Id.* (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)).  Here, the plaintiffs fail to satisfy both plausibility ***and*** the heightened pleading standards for fraud.  As a result, the Court should dismiss the SAC in its entirety.

**B.    Plaintiffs Cannot Meet The Federal Pleading Standard**

**1.    Plaintiffs Offer no Facts to Support their Misrepresentation Allegations**

As the Court already recognized in dismissing the same claims asserted in the FAC, the SAC's causes of action all sound in fraud.  (*See* Order at 5.)  As before, the First Cause of Action is titled "Common Law Fraud" and alleges that Subway provided the plaintiffs "with false or

misleading material information and failed to disclose material facts." (SAC at ¶48.)  The Second

Cause of Action, entitled "Intentional Misrepresentation," is also the same and alleges that

Subway knowingly made false representations.  (*Id.* at ¶53.)  The Third Cause of Action for

"Negligent Misrepresentation" similarly alleges that Subway "knew or should have known" that

certain of its representations were false.  (*Id.* at ¶60.)  *See generally Chevron Prods. Co. v.*

*Advanced Corrosion Techs. & Training, LLC*, No. 20-cv-09095-CRB, 2021 WL 2156467, at *3

(N.D. Cal. May 27, 2021) (noting differing approaches to assessing whether negligent

misrepresentation claims trigger Rule 9(b) and ultimately applying a "case-by-case" approach so

that "if plaintiffs are alleging conduct 'grounded in fraud . . . the pleading of that claim *as a whole*

must satisfy the particularity requirement of Rule 9(b).'") (quoting *Kearns v. Ford Motor Co.*, 567

F.3d 1120, 1125 (9th Cir. 2009)) (emphasis added).  While the SAC's Fourth Cause of Action is

for "Unjust Enrichment," it again demands recovery based on the premise that Subway has

misrepresented the content of its tuna products and so, like the other claims in the SAC, requires

detailed pleading.  (SAC at ¶67.)  Finally, as before, all three of the plaintiffs' California statutory

claims -- under the Consumer Legal Remedies Act, False Advertising Law and Unfair

Competition Law (*id.* at ¶¶69-125) -- arise from the core allegation that Subway made false

statements of fact about its tuna products and so must be pled with particularity.  *See Brazil*, 935

F.Supp.2d at 963 (UCL, FAL and CLRA claims based on food mislabeling were "all subject to the

heightened pleading requirement of Rule 9(b)"); *Romero*, 2015 WL 2125004, at *3 ("This Court --

along with other courts in this District -- has rejected the notion that 'misbranding' under the

'unlawful' prong of the UCL excuses a plaintiff's obligation to plead fraud with particularity");

*see generally Kearns*, 567 F.3d at 1125 ("we have specifically ruled that Rule 9(b)'s heightened

pleading standards apply to claims for violations of the CLRA and UCL").

   Plaintiffs cannot satisfy this heightened pleading burden with respect to any of their

claims.  The SAC recites two alleged statements -- that Subway's tuna products (1) are not "tuna"

(or "only tuna") and (2) do not contain "100% tuna" -- and claims these statements are false or

misleading.  (SAC at ¶¶2-7, 20-22, 26, 29, 31, 37-38, 42, 48, 53-54, 59, 67, 85.)  But the SAC

offers no facts demonstrating that the statements *are actually false* or explaining why any

reasonable consumer would believe these statements ***are false or how the statements caused***

***damages to the plaintiffs***.  As the Court agreed in dismissing the FAC, any claim of false

representation about consumer products must supply such foundational information to survive a

motion to dismiss.  *See, e.g.*, *Colgate v. JUUL Labs, Inc.*, 345 F.Supp.3d 1178, 1183 (N.D. Cal.

2018) (defendant misrepresented the amount of nicotine in its products ***because "they contain***

***6.2% nicotine salt, rather than the 5% nicotine advertised"***) (emphasis added); *Ham v. Hain*

*Celestial Grp., Inc.*, 70 F.Supp.3d 1188, 1191 (N.D. Cal. 2014) ("All Natural" label is false

"***because one of the ingredients is a nonorganic synthetic substance***") (emphasis added); *Cooper*

*v. Curallux LLC*, No. 20-cv-02455-PJH, 2020 WL 4732193, at *1 (N.D. Cal. Aug. 14, 2020)

(defendants' claim of "no side effects" for its low level laser hair loss therapy was false ***because***

***"scientific studies and experts in the field of hair restoration state that there are several side***

***effects"*** associated with that treatment) (emphasis added).

      In stark contrast to the well-established authority requiring facts demonstrating a

misrepresentation, the plaintiffs here do not allege any such facts.  Instead, the plaintiffs conclude

that the statements are false based on a tautology:  "Because we have alleged Subway's statements

are false, they are false."  (*See, e.g.*, SAC at ¶¶2-4 ("Defendants have consistently advertised the

Tuna Products as being 'tuna' and '100% tuna' . . . .  In reality, the Tuna Products do not contain

100% tuna").)  Plaintiffs made this same fatal error in their prior, now-dismissed pleadings.

Indeed, the plaintiffs confirm that they made no effort to ascertain the contents of the Subway tuna

products at the time they purchased and consumed those products, meaning that there is no means

alleged by which the plaintiffs could have reasonably determined what was in their tuna

sandwiches, salads or wraps and whether those products contained "only tuna."  (*Id.* at ¶40.)

      The result is a fundamentally deficient theory of fraud that requires jumping to conclusions

about what the plaintiffs are claiming and how they might prove their case.  Such circumstances

require the Court to dismiss the SAC in its entirety.  *See, e.g.*, *In re Harmonic Inc. Sec. Litig.*, 163

F.Supp.2d 1079, 1097 (N.D. Cal. 2001) (dismissing securities fraud claims "for failure to allege

falsity with particularity" where the "plaintiffs highlight certain phrases or passages in some of the

analysts' reports, but do not explain why the highlighted passages were false"); *In re Invision*

1    *Techs., Inc. Sec. Litig.*, No. C04-03181 MJJ, 2006 WL 538752, at *4 (N.D. Cal. Jan. 24, 2006)

2    (dismissing PSLRA claim where the "plaintiffs did not explain why that statement in particular

3    was false or misleading"); *Tompkins v. Emc Mortg. Corp.*, No. CV 10-608-PHX-SRB, 2010 WL

4    11629510, at *4 (D. Ariz. Oct. 28, 2010) (fraud-based claims must be dismissed when they "do

5    not explain why the alleged omissions were false or misleading").

6         Although the SAC includes a section purporting to satisfy Rule 9(b) requirements (SAC at

7    ¶42), on the linchpin issue of "why," the plaintiffs still answer the wrong question in the same way

8    they did in their last unsuccessful complaint:  Plaintiffs allege that Subway supposedly made the

9    alleged representations because it wanted to induce consumers to detrimentally rely on those

10   representations, which is merely a legal conclusion.  (*See id.*)  As before, the inquiry cannot be

11   about the defendants' motives -- *i.e.*, why they would supposedly make a false statement -- but

12   must show why ***the statement is actually false***.  *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d

13   1047, 1055 (9th Cir. 2011).  The SAC does not do that and the plaintiffs cannot survive 12(b)(6)

14   scrutiny by paying lip service to Rule 9(b) requirements while failing to allege the facts required

15   under federal procedure and Ninth Circuit case law.

16              a.       **Plaintiffs' Alleged Testing does not Establish a False Statement**

17        Plaintiffs' current re-packaging of their original, abandoned fraud claims is premised

18   entirely on allegations that they tested the tuna products and that testing failed to reveal "tuna

19   DNA" in most of the products.  But the SAC does not allege that Subway made any representation

20   that DNA testing its tuna salad would result in tuna DNA detection.  Thus, the lack of DNA

21   results from a DNA test is not proof of a misstatement by Subway.  In any event, the SAC makes

22   clear that the plaintiffs' alleged testing is fundamentally deficient.

23        Plaintiffs allegedly tested twenty different samples of "tuna products" using "DNA

24   barcoding," which the SAC identifies as "a method for identifying an unknown sample to a

25   particular specie(s) based on a diagnostic DNA sequence."  (SAC at ¶23.)  Such testing is not

26   consistent with FDA's Standard Operating Protocol for DNA barcoding.  (*See* RJN, Ex. R.)  First,

27   it is clear from the SAC that the samples were not collected in a sterile manner, as they were

28   allegedly retrieved from the finished tuna sandwiches, salads and/or wraps, which contain various

1    different toppings and ingredients, and not from a fish, as required.  (*See id.* at 2 (instructing that

2    valid testing should "[s]ample unknown fish tissues in a manner that prevents cross-contamination

3    between samples, or the introduction of foreign DNA"); *see also* SAC at ¶¶23-24.)  Second, the

4    FDA protocol identifies which specific tissues from the fish are suitable for DNA extraction.  (*See*

5    RJN, Ex. R at 3.)  That tissue must be taken directly from an individual fish, not processed fish

6    mixed with other condiments and toppings that would be found in a Subway sandwich.  (*Id.*)

7    Third, the protocol calls for freezing or refrigerating the tissue (not tuna salad) until DNA is

8    extracted.  (*Id.*)  The SAC does not allege that the plaintiffs followed this procedure, or even

9    allege any facts as to what tuna products were purchased, when they were purchased, how they

10   were stored and/or shipped and when they were tested.  (*See, e.g.*, SAC at ¶¶23-24.)

11   The SAC leaves many other important questions unanswered with respect to the alleged

12   testing.  For instance, the allegations in the SAC do not suggest that the plaintiffs' analyses were

13   conducted in a way that would allow for highly processed, denatured tuna DNA to be detected.

14   Plaintiffs claim that they tested the tuna products against "tuna primers" but do not allege how

15   they even define "tuna," whether they tested for any particular species of tuna DNA, as opposed to

16   others, and whether their DNA analyses were conducted in a way that would permit speciation of

17   tuna.  (*See* SAC at ¶24.)  Notably, FDA's standard of identity for canned tuna identifies fourteen

18   different tuna species that are permitted to be sold as "tuna" and the SAC does not allege that

19   Subway's tuna consists of any other species.  *See* 21 CFR § 161.190.

20   Moreover, Subway's tuna is cooked at high temperatures that render it difficult to identify

21   any DNA, which is precisely why DNA testing of such protein is not reliable.  (*See* RJN, Exs. W

22   and X.)  It is clear from the scientific literature that the high pressure and heat that canned or

23   processed tuna undergoes during processing degrades the DNA, shearing it into small fragments.

24   (*See id.*)  To detect the DNA of such denatured proteins, DNA testing would need to test the tuna

25   against small primers, which still would not guarantee species identification due to variability of

26   processing and DNA degradation.  (*See id.*)

27   The SAC generally alleges that the tuna products were tested against "vertebrate" primers

28   but the plaintiffs again do not allege what those primers consisted of to allow one to discern the

1    likelihood of any accuracy.  (*See* SAC at ¶24.)  Nor do the plaintiffs specify what techniques were

2    used to determine that chicken, pork and "cattle" DNA were present in the tuna products, or in

3    what amounts, to support any reasonable inference about the purported test results.  (*See id.* at

4    ¶25.)  It therefore remains unclear whether the alleged results of "cattle" DNA could be explained

5    by dairy ingredients -- such as cheese, bread, ranch dressing or another source of dairy -- that may

6    have been present in the tuna products that the plaintiffs tested or that the chicken DNA was from

7    mayonnaise.[2]  In any event, the SAC does not allege that there was anything more than detectable

8    amounts of other protein DNA, which would not render the tuna salad "adulterated."  There is no

9    way for the Court or Subway to discern any of this from the SAC because the plaintiffs do not

10   allege any specific facts as to the contents of the tuna products that they tested, such as what

11   toppings or condiments were included and what bread or wrap was used (if any) or the amount or

12   source of "foreign" DNA they detected.

13        Because the plaintiffs' misrepresentation claims depend on their purported DNA test

14   results and it is clear from the SAC that testing was fundamentally deficient and does not prove

15   what the plaintiffs suggest it might prove, the claims in the SAC fail as a matter of law and should

16   be dismissed with prejudice.

17               **2.        Plaintiffs' Allegations are Completely Speculative**

18        Plaintiffs' allegations do not offer any explanation for their fraud claims but, instead,

19   dabble in the sort of speculation, "sheer possibilities" and unwarranted inferences that federal

20   pleading standards do not tolerate.  *See Iqbal*, 556 U.S. at 678.

21        First, the plaintiffs speculate that Subway "engaged in economic adulteration by selling a

22   food product that partially or wholly lacked the valuable constituents of tuna . . . and that had been

23   substituted in part or whole."  (SAC at ¶35.)  However, the plaintiffs do not identify ***how*** Subway

24   supposedly "engaged in economic adulteration" or "substituted" some unknown part of the

25   products, what the alleged substitution was and how this supports their baseless and conclusory

26

27   ───────────────

     [2] Subway's publicly available allergen chart confirms that "Milk/Lactose" is present in its
28   Flatbread and Italian Herbs and Cheese bread, and of course all types of cheese that Subway
     offers.  (*See* RJN, Exs. P and Q.)

1    allegation that the products did not contain any tuna.  (*Id.*)  Second, the plaintiffs baldly claim that

2    Subway "do[es] not take sufficient measures to control or prevent the known risks of adulteration

3    to its Tuna Products" and somehow "actively perpetuate[s] actions and steps that encourage

4    mixing non-tuna ingredients into the Tuna Products." (SAC at ¶¶26, 35.)  This is sheer fantasy.

5    Plaintiffs included virtually identical allegations in their now-dismissed complaint and, despite

6    being given yet another chance to come up with actual facts, they still do not identify any

7    "measures," "actions" or "steps," much less explain how such measures bear on adulteration risks.

8    And still missing from the plaintiffs' pleading are facts revealing what these supposed "practices

9    of adulteration" might be or what "non-tuna ingredients" are mixed into the product, if any are.

10        Because the plaintiffs plead only legal conclusions with no supporting, well-pled facts, the

11   Court should again dismiss their complaint, this time with prejudice.

12        **3.    Plaintiffs Still do not Allege Reasonable Reliance**

13        As is evident from the face of the SAC, the plaintiffs have not fixed the issues that the

14   Court identified with their last complaint because they still fail to allege facts giving rise to a

15   plausible inference of reasonable reliance.  As the Court has acknowledged, these allegations are

16   required to maintain the UCL, CLRA and FAL claims that the plaintiffs assert in the SAC.  (*See*

17   Order at 5; *see also In re Ferrero Litig.*, 794 F.Supp.2d at 1111.)  The same is true for the

18   plaintiffs' fraud and misrepresentation claims.  (*See* Order at 5; *see also Vess v. Ciba-Geigy Corp.*

19   *USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (describing "indispensable elements of a fraud claim"

20   under California law); *Colgate*, 345 F.Supp.3d at 1195 (citing elements of claim for negligence

21   misrepresentation under California law) (citing *Fox v. Pollack*, 181 Cal.App.3d 954, 962

22   (1986)).)[3]  This means that the plaintiffs must allege facts demonstrating that they actually read

23   the two statements at issue (*i.e.,* what they read and where they read it) and reasonably relied on

24

25   _____

26   [3] Plaintiffs' "Common Law Fraud" and "Intentional Misrepresentation" causes of action remain
     duplicative because, "[u]nder California law, intentional misrepresentation is [simply] a species of

27   fraud." *Sherwin-Williams Co. v. JB Collision Servs.*, No. 13-CV-1946-LAB-WVG, 2014 WL
     5112057, at *4 (S.D. Cal. Oct. 9, 2014).  The California Civil Jury Instructions do not include a

28   separate cause of action for "Common Law Fraud," only "Intentional Misrepresentation." *See*
     CACI § 1900.

each statement *before* purchasing tuna products from Subway (*i.e.,* when they read it, why it mattered to them and why their interpretation was reasonable).  Plaintiffs have not done any of this.

First, as explained *supra*, the SAC does not allege anything with respect to Plaintiff Dhanowa and certainly does not allege that Ms. Dhanowa relied on any statements that Subway made.  (*See generally* SAC.)  Second, neither of the plaintiffs alleges that she relied on a "100% tuna" statement on Subway's website.  (*See* SAC at ¶37.)  Third, while plaintiff Amin claims that she viewed Subway's menus in deciding to purchase the tuna products, she pleads no facts to support the conclusion that she reasonably relied on the representation that the products were "tuna" products in concluding that they contained "*only* tuna."  (*See id.* (bold emphasis added).) Contrary to any conclusions plaintiff Amin may claim to have reached, any reasonable consumer would understand -- and the plaintiffs admit in the SAC -- that tuna sandwiches, wraps and salads do not contain only tuna, as tuna salad is made by *mixing tuna with mayonnaise*.  (*See* SAC at ¶22; *see also* RJN, Exs. N and O.)  It is also commonly understood that mayonnaise is made with chicken eggs, meaning it could contain chicken DNA.  The allergen statement available on Subway's website confirms that egg is an ingredient in Subway's light and regular mayonnaise condiments.  (*See* RJN Exs. P and Q.)

Additionally, because Subway menu items are made on an single counter, any reasonable consumer observing a sandwich artist prepare an order in a Subway restaurant would see that those sandwich artists may use the same gloves, utensils and cutting boards to prepare various menu items, or touch containers of different sandwich or wrap fillings or salad toppings in preparing an order, meaning that cross-contact of various Subway ingredients is to be expected. The potential for such cross-contact in food production environments such as restaurants and delis is commonly understood and recognized by FDA, as evidenced by its policy on advisory allergen labeling.  (*See* RJN, Ex. S at 5.)  For example, FDA guidance on the Food Allergen Labeling and Consumer Protection Act ("FALCPA") makes clear that advisory statements warning consumers of potential cross-contact with allergens or other foods are optional.  (*See id.*)

1    Because the plaintiffs still fail to plead actual reliance, just as they did on the complaint the

2    Court already dismissed, the SAC must be dismissed.  And because the plaintiffs have already

3    been afforded three chances to plead actual reliance and have not done so, they should not be

4    afforded any more opportunities to amend their complaint.

5    **C.    The SAC Should Be Dismissed With Prejudice**

6    In granting Subway's last motion to dismiss, the Court concluded that the plaintiffs had

7    failed to allege reliance but, based on representations by the plaintiffs' counsel that they could

8    allege facts demonstrating reliance, afforded them leave to amend to allege reliance on the alleged

9    statements at issue in the FAC.  Not only does the SAC still fail to allege such reliance, the SAC is

10   an entirely different complaint based on an entirely different set of alleged misrepresentations and,

11   thus, violates the Court's instructions in providing leave to amend.  This is not the purpose of

12   leave to amend.  *See, e.g.*, *Song Fi, Inc. v. Google, Inc.,* Case No. C 14-5080 CW, 2016 WL

13   3479078, *4 (N.D. Cal. June 27, 2016) (granting motion to dismiss plaintiffs' fraud claim because

14   leave to amend did not allow for new claims and the new theories' allegations were insufficient as

15   a matter of law); *see also Cox v. Richland Holdings, Inc.,* No. 2:16-cv-02914-APG-VCF, 2018

16   WL 2014061, at *2, *4 (D. Nev. Apr. 30, 2018) (granting motion to strike plaintiff's amended

17   complaint where plaintiff added factual allegations and claims not contemplated in the court's

18   order granting leave to amend).  "Although leave to amend should be liberally granted, the

19   amended complaint may only allege other facts consistent with the challenged pleading."  *Reddy*

20   *v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990) (affirming dismissal without leave to amend

21   where the plaintiff could not amend the complaint without "contradicting any of the allegations of

22   his original complaint").  The SAC should be dismissed with prejudice because it is not a simple

23   amendment of the FAC but is based on an entirely new theory.  Given that the plaintiffs simply do

24   not have the facts to plead reasonable reliance on the various statements they have targeted in their

25   multiple attempts to state a claim in this case, the Court should grant the motion with prejudice.

26   **V.    CONCLUSION**

27   Plaintiffs' latest claims, which abandon entirely the claims they told the Court they could

28   support with more facts, amount to the allegation that they cannot detect tuna DNA in Subway's

tuna products but did detect chicken, pork and bovine DNA.  So what?  None of this means that Subway's tuna is not tuna.  Moreover, the plaintiffs do not even allege that Subway promised consumers that they would be able to detect tuna DNA by testing a Subway sandwich or that traces of other products sold at Subway restaurants would not show up in that sandwich.  Without such allegations, the plaintiffs' claims fail as a matter of law.

A consumer cannot come to this Court, charge a business with highly-publicized accusations of fraud, oscillate between various unsupported theories of wrongdoing and consistently fail to plead any ***facts*** to explain exactly ***what*** the alleged misstatements are, ***why*** those particular alleged misstatements were misleading and ***how*** those statements caused any actual damages to the consumer.  Plaintiffs and their attorneys have "unilaterally impos[ed] upon the [C]ourt, the parties and society" -- including the thousands of independent Subway restaurant franchisees who have suffered real injury as a result of this irresponsible and cynical lawsuit -- "enormous social and economic costs" without any factual basis on which to do so.  *See United Healthcare*, 848 F.3d at 1180.

The Court should grant the motion to dismiss with prejudice so that Subway and its franchisees can begin to put this unfortunate matter behind them and the plaintiffs and their counsel can face the consequences of their actions under Rule 11.

Dated:  December 8, 2021                    **BAKER & McKENZIE LLP**


By:    /s/ Mark C. Goodman
           Mark C. Goodman
Attorneys for Defendants
SUBWAY RESTAURANTS, INC.,
FRANCHISE WORLD HEADQUARTERS,
LLC, and SUBWAY FRANCHISEE
ADVERTISING TRUST FUND LTD.