PATRICK MCNICHOLAS, SBN 125868
*pmc@mcnicholaslaw.com*
JEFFREY LAMB, SBN 257648
*jrl@mcnicholaslaw.com*
EMILY PINCIN, SBN 334566
*erp@mcnicholaslaw.com*
**McNICHOLAS & McNICHOLAS, LLP**
10866 Wilshire Blvd., Ste. 1400
Los Angeles, California 90024
Tel: (310) 474-1582
Fax: (310) 475-7871

MARK LANIER, (Admitted *Pro Hac Vice*)
*wml@lanierlawfirm.com*
ALEX BROWN, (Admitted *Pro Hac Vice*)
*alex.brown@lanierlawfirm.com*
JONATHAN WILKERSON, (Admitted *Pro Hac Vice*)
*jonathan.wilkerson@lanierlawfirm.com*
**THE LANIER LAW FIRM, PC**
10940 W. Sam Houston Pkwy N, Ste. 100
Houston, TX 77064
Tel: (713) 659-5200
Fax: (713) 659-2204

SHALINI DOGRA, SBN 309024
*shalini@dogralawgroup.com*
**DOGRA LAW GROUP PC**
2219 Main Street, Unit 239
Santa Monica, CA 90405
Tel: (747) 234-6673
Fax: (310) 868-0170

Attorneys for Named Plaintiffs KAREN DHANOWA and NILIMA AMIN and Proposed Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN DHANOWA and NILIMA AMIN, on behalf of themselves and all others similarly situated; <br><br> Plaintiff, <br><br> v. <br><br> SUBWAY RESTAURANTS, INC., a Delaware Corporation; FRANCHISE WORLD HEADQUARTERS, LLC., a Connecticut Limited Liability Corporation; SUBWAY FRANCHISEE ADVERTISING TRUST FUND LTD., a Connecticut Corporation; and DOES 1 through 50, Inclusive, <br><br> Defendants. | Case No: 4:21-CV-00498-JST <br> [*Assigned for all purposes to Hon. Judge Jon S. Tigar*] <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> Date:  February 3, 2022 <br> Time: 2:00 p.m. <br> Ctrm: Courtroom 6 – 2nd Floor <br> Judge:  Hon. Jon S. Tigar <br><br> Complaint Filed:   January 21, 2021 <br> FAC Filed:              June 7, 2021 <br> SAC Filed:              November 8, 2021 |

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..................................................................................................2

TABLE OF AUTHORITIES ............................................................................................3

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................5

I. INTRODUCTION .....................................................................................................5

II. STATEMENT OF ISSUES PURSUANT TO
    LOCAL RULE 7-4 ..................................................................................................6

III. RELEVANT FACTUAL BACKGROUND ............................................................6

IV. PROCEDURAL BACKGROUN AND PREVIOUS
    MOTION TO DISMISS ..........................................................................................9

V. LEGAL STANDARD ..............................................................................................10

VI. LEGAL DISCUSSION ...........................................................................................11

   A. A Rule 56 Motion Disguised as a Motion
      to Dismiss Under Rule 12(b)(6) ......................................................................11

   B. Plaintiffs More Than Sufficiently Plead Facts
      to Support Their Causes of Action ..................................................................12

      1. Plaintiffs Allege Why and How Subway's
         Statements Are False .................................................................................12

      2. Plaintiff Amin Alleges That She Relied
         Upon Subway's Statements ......................................................................15

      3. Plaintiff Amin Alleges How She Was
         Damages ....................................................................................................16

   C. In the Alternative, Leave to Amend Should be Granted .............................17

VII. CONCLUSION .....................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                       **Page**

*Alvarez v. Chevron Corp*
    (9th Cir. 2011) 656 F.3d 925, 930–31 …………………………………………………………...9

*Ashcroft v. Iqbal*
    (2009) 556 U.S. 662, 678 ……..………………………………………………………………… 9

*De La Cruz v. Tormey*
    (9th Cir. 1978) 582 F.2d 45,48 ………………………………………………………………...9

*E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*
    (4th Cir. 2011) 637 F.3d 435, 448–49……………………………………………………………11

*Ham v. Hain Celestial Grp., Inc*
    (N.D. Cal. 2014) 70 F. Supp.3d 1188, 1192……………………………………………..13,14,15

*Kearns v. Ford Motor Co.*
    (9th Cir. 2009) 567 F.3d 1120, 1124 …………………………………………………………...11

*Khoja v. Province, Inc.*
    (9th Cir. Aug. 13, 2018) No. 16-56069, 2018 WL 3826298……………………………………10

*Laster v. T-Mobile USA, Inc.,*
    (S.D. Cal. 2005) 407 F. Supp. 2d 1181, 1192……………………………………………………9

*Lopez v. Smith*
    (9th Cir. 2000) 203 F.3d 1122, 1130 …………………………………………………………10

*PAE Government Services, Inc. v. MPRI, Inc.*
    (9th Cir. 2007) 414 F.2d 856, 860……………………………………………………………16

*Reid v. Johnson & Johnson*
    (9th Cir. 2015) 780 F.3d 952, 958 …………………………………………………………....15

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc*
    (9th Cir. 1986) 806 F.2d 1393, 1401…………………………………………………………...9

*Semegen v. Weidner*
    (9th Cir. 1985) 780 F.2d 727, 731 …………………………………………………………..9

*Tellabs, Inc. v. Makor Issus & Rights, Ltd.*
    (2007) 551 U.S. 308, 322 ……..…………………………………………………………………10

*Williams v. County of Alameda*
    (N.D. Cal. 2014) 26 F. Supp. 3d 925, 936………………………………………………..10,15

**Statutes**

Fed. R. Civ. P.9 9(b) ................................................................................................................9,13,14

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................9

Fed. R. Civ. P. 15(a) ......................................................................................................................16

Fed. R. Civ. P. 56(e) ......................................................................................................................11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion") fails to demonstrate how the Second Amended Complaint ("SAC") is legally deficient on its face. As provided by Defendants' Statement of the Issues, there are only two issues to resolve with respect to the instant Motion to Dismiss. First, Defendants (collectively referred to as "Subway") allege that Plaintiffs' SAC must be dismissed because Plaintiffs failed to allege facts demonstrating that Subway's representation about its tuna products are false or misleading to a reasonable consumer. Second, Defendants allege that the SAC must be dismissed because Plaintiffs failed to allege that Plaintiffs relied on the misleading statements or were damaged in any way by the misleading statements.

Rather than read the SAC as a whole, Subway elected to cherry pick certain factual allegations in an effort to diminish Plaintiffs' claims that (1) Subway's representations are false or misleading; (2) Plaintiffs reasonably relied on such representations; and, (3) as a result, Plaintiffs were harmed. Subway refuses to accept Plaintiffs' well-pleaded factual allegations as true—which, at this point, it must—and instead attempts to convert its Motion to Dismiss into a motion for summary adjudication by presenting dozens of irrelevant documents which do nothing more than raise triable issues of material fact, none of which can be adjudicated as a matter of law at this stage of the litigation. Subway blatantly ignores the factual allegations which explain *why* its representations and/or omissions are false or misleading, and instead resorts to ad hominem personal attacks on Plaintiffs' counsel and their ethical duties to the Court and their adversaries, which is not well taken.

Based on the well-pled factual allegations in Plaintiffs' SAC, and based on the information and argument set forth herein, Plaintiffs respectfully request that the Court deny Subway's Motion in its entirety.

///

///

///

...

## II. STATEMENT OF ISSUES PURSUANT TO LOCAL RULE 7-4

**A.** Whether the SAC sufficiently demonstrates that Subway misrepresents and/or conceals the contents of their "tuna" product sold to consumers?

**B.** Whether the SAC provides sufficient facts supporting a plausible inference that Plaintiffs relied upon representations by Defendants concerning their products or, alternatively, whether Defendants concealed from consumers facts that were material to Subway's "tuna products" that should have been disclosed and, as such, consumers were damaged?

## III. RELEVANT FACTUAL BACKGROUND

Plaintiffs bring this class action on behalf of themselves and all other similarly situated individuals statewide in California. Specifically, Plaintiffs seek to represent a class comprised of all persons in California who, between January 21, 2017 and the present, have purchased Defendants' tuna salad products from a Subway store in California. (SAC ¶ 43.)

Plaintiffs allege that Defendants made material misrepresentations and/or omissions of fact in the marketing and sale of its tuna salad product. (SAC ¶ 42.) Specifically, Plaintiffs allege that Defendants market, label, and advertise its tuna salad as being "tuna," and that consumers of "tuna" products (including the Plaintiffs) reasonably believe that when they order a product identified as "tuna," that product does not contain any other fish species, animal species, or miscellaneous products not otherwise identified in the item on the menu. (SAC ¶¶ 20, 21, 31, 37, 38, 42.) However, Defendants' tuna salad is not *just* "tuna," as it is expected to be by a reasonable consumer ordering a product containing "tuna" salad.

Plaintiffs allege, and Defendants do not dispute, that the menus at every Subway restaurant in California advertise Subway's tuna products as being "tuna." (SAC ¶¶ 2, 20; *see* Defendants' Motion to Dismiss Second Amended Complaint ("Mot.") at 6:2–4.) Defendants also do not dispute Plaintiffs' test results showing the presence of chicken, pork, and cattle DNA sequences. (*See e.g.,* Mot. at 18:18–22 ("[C]ross-contact of various Subway ingredients is to be expected.").). However, Plaintiffs allege that when ordering "tuna" at a restaurant, a reasonable consumer (including Plaintiffs) reasonably believes that the product they are paying for contains only tuna and no other fish species, animal products, or miscellaneous products (SAC ¶¶ 4-6, 37-38, 42.) It

1  is also reasonable to assume that if testing were to be performed on the product, a reasonable

2  consumer would expect that product to be identifiable as the product they purchased—in this case,

3  tuna.

4        Plaintiffs have specifically set forth in the Second Amended Complaint the findings of their

5  DNA testing, which leads to a plausible inference that Subway's tuna is not *just* "tuna" as a

6  reasonable consumer would expect.  Plaintiffs' allegations detail that Paul Barber, Ph.D. of

7  Integrative Biology, assisted in performing DNA barcoding testing on twenty samples of

8  Defendants' tuna salad products.  (SAC ¶ 23.)  Custom sequencing was used to try and identify

9  the type of genetic information that was present in each of the twenty samples, and the samples

10  were tested against vertebrate primers, tuna primers, COI (cytochrome c oxidase I) primers, and

11  plant primers.  (SAC ¶ 24.)

12        Of the twenty samples tested, nineteen of them had *no detectable tuna DNA sequences*

13  *whatsoever*.  (SAC ¶ 25.)  Additionally, the test results indicate that <u>all</u> twenty of the samples

14  contained detectable sequences of chicken DNA; most of the samples (eleven out of twenty)

15  contained detectable sequences of pork DNA; and some of the samples (seven out of twenty)

16  contained detectable sequences of cattle DNA.  (SAC ¶ 25.)  As such, the Tuna Products are not

17  being sold as advertised; that is, the Tuna Products are not "tuna" or "100% tuna," but are

18  contaminated or otherwise adulterated such that consumers are not receiving the product they

19  reasonably expect to be purchasing.  (SAC ¶ 26.)

20        In ruling on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, the Court

21  found that Plaintiffs already adequately plead the "who" and "what" of the alleged fraud.  (*See*

22  Order at 5 [Dkt. No. 51].)  Here, Plaintiffs have again adequately alleged the who and the what of

23  the alleged fraud, and also clearly alleged the when, where, and how of the misconduct alleged:

24      – Who: Defendants Subway (SAC ¶ 42);

25      – What: Defendants' made material misrepresentations and/or omissions of fact by

26         marketing, labeling, and advertising its tuna salad products as being "tuna," despite

27         those products not containing any detectable tuna DNA sequences, and despite the fact

28         that those products contain chicken DNA, pork DNA, and cattle DNA.  (SAC ¶ 42.)

When ordering "tuna" at a restaurant, a reasonable consumer (including Plaintiffs) can reasonably believe that the product they are paying for contains only tuna and no other fish species, animal products, or miscellaneous products (SAC ¶¶ 4-6, 37-38, 42);

– When: Plaintiff Amin purchased at least one hundred tuna products from Subway eateries between 2013 and 2019 (SAC ¶¶ 36, 42);

– Where: Defendants' misrepresentations and/or omissions of material fact were made on the in-store menus at Defendants' restaurants, which are typically located behind the sandwich bar on the back wall of the restaurant. The menus in Defendants' in-store restaurants clearly identify the tuna products as being "tuna." Every time she ordered a tuna salad product at one of Defendants' restaurants, Plaintiff Amin first looked at the in-store menu behind the sandwich bar, acknowledged the food option identified as being "tuna," ordered the product because she reasonably believed the product was "tuna" and did not contain any other animal species or miscellaneous products, and paid for the product under that belief (SAC ¶¶ 37, 42);

– How/Why it is False: Defendants have consistently advertised their tuna salad products as being "tuna." It is self-evident that a food item labeled as being "tuna" should be just that: only tuna. Such food item should contain no other fish species, animal species, or miscellaneous products not otherwise identified or marketed as being including in the "tuna" food item. (SAC ¶ 2.) However, Plaintiffs' testing of twenty samples of tuna salad products from twenty different Subway restaurants show that the Tuna Products are not being sold as advertised; that is, the Tuna Products are not "tuna" or "100% tuna" but are contaminated or otherwise adulterated such that consumers are not receiving the product they reasonably expect to be purchasing. (SAC ¶ 26.) Indeed, Plaintiffs' DNA testing of the tuna salad products evidence that, of the twenty samples tested, nineteen of them had *no detectable tuna DNA sequences whatsoever.* (SAC ¶ 25.) Additionally, the test results indicate that all twenty of the samples contained detectable sequences of chicken DNA; most of the samples (eleven out of twenty) contained detectable sequences of pork DNA; and some of the samples (seven

out of twenty) contained detectable sequences of cattle DNA.  (SAC ¶ 25.)

Subway promises consumers that its tuna salad is "tuna" and is "100% tuna."  Plaintiffs have specifically and plausibly alleged that this promise is false, misleading, or otherwise deceptive, and have sufficiently described Subway's role in rendering it as such.  The SAC explains who is responsible (Subway); what was deceptive, fraudulent, or misleading (that Subway's tuna is "tuna" and "100% tuna"); when the deception occurred (between at least 2013 and the present, including when Plaintiff Amin purchased tuna product between 2013 and 2019); where it occurred (on Subway's sandwich menu board behind the sandwich bar on the back wall of the restaurant); and how the statement was deceptive (because Subway's tuna salad products are not only tuna, contain no detectable tuna DNA sequences, and in fact contain detectible DNA sequences of other animals).

Additionally, Plaintiff Amin alleges that she relied on Subway's statement: Plaintiff Amin ordered Tuna based on the representations and/or omissions of material fact(s) identified on Subway's in-restaurant menus, which are typically located behind the sandwich bar on the back wall of the restaurant.  Each time Plaintiff Amin visited a Subway restaurant to order a sandwich, she looked at the menu, acknowledged the food option identified as being "tuna," ordered a sandwich or wrap *because* it was identified as being "tuna," and consumed the Tuna Products, all with the understanding and belief that what she was eating was, in fact, *only* tuna.  (SAC ¶ 37 (emphasis added).)

Finally, Plaintiff alleges that she was harmed by Defendants' conduct; specifically, had Plaintiff Amin known that the tuna salad products actually contained ingredients other than tuna, they would not have bought the product, *or* they would have paid substantially less for the product.  (SAC ¶ 41.)  No more is required at the pleading stage.

### IV. PROCEDURAL BACKGROUND AND PREVIOUS MOTION TO DISMISS

Plaintiffs filed their First Amended Complaint [Dkt. No. 33] on June 8, 2021.  Defendants filed a Motion to Dismiss the First Amended Complaint.  In ruling on Defendants' motion to dismiss the FAC, the Court found that by identifying Subway and its sandwiches, wraps, and salads containing tuna products, Plaintiffs adequately plead the "who" and "what" of the alleged

fraud.  (*See* Order at 5:6–8 [Dkt. No. 51]).  However, the Court found that Plaintiffs needed to describe the specific statements they saw and relied upon, when they saw the statements, and where the statements appeared.  (*Id.* at 5:17–19.)

The Court granted Plaintiffs leave to amend the FAC to add additional factual allegations to support Plaintiffs' theory of misrepresentation and/or omission and to plead additional facts regarding reliance and damages.  Plaintiffs accordingly filed their SAC on November 8, 2021.  [Dkt. No. 54.]  Defendants filed the instant Motion on December 8, 2021.  [Dkt. No. 57.]

**V.   LEGAL STANDARD**

A motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") tests the legal sufficiency of a complaint.  De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir.1978).  Accordingly, any defect must appear on the complaint's face.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, *accepted as true*, to state a claim for relief that is plausible on its face.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

To satisfy Rule 9(b)'s pleading requirements, a complaint must "state with particularity the circumstances constituting fraud or mistake," and allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged[.]"  Fed. R. Civ. P. 9(b); Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).  Plaintiffs' allegations, presumed to be true, must "plausibly give rise to an entitlement to relief."  Alvarez v. Chevron Corp., 656 F.3d 925, 930–31 (9th Cir. 2011).  No more is required at the pleading stage, as "[t]he question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim."  Laster v. T-Mobile USA, Inc., 407 F. Supp. 2d 1181, 1192 (S.D. Cal. 2005).

As demonstrated throughout the instant Opposition, the facts asserted in Plaintiffs' SAC, accepted as true, are sufficient to support—at a minimum—a plausible claim for relief against Defendants on all theories asserted.  If, for some reason, this Court determines that Plaintiffs'

pleading is ambiguous in any regard, Plaintiffs respectfully request that this Court allow them to amend their pleading to conform with the Court's ruling. When dismissing a complaint, the court *must* grant leave to amend unless it is clear that the complaint's deficiencies cannot be cured by amendment. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*).

## VI. LEGAL DISCUSSION

### A. A Rule 56 Motion Disguised as a Motion to Dismiss Under Rule 12(b)(6)

Subway submitted twenty four (24) documents and two declarations in support of its Motion to Dismiss. If a Rule 12(b)(6) motion presents matters outside the pleadings, and such evidence is considered by the court, "the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Williams v. County of Alameda, 26 F. Supp. 3d 925, 936 (N.D. Cal. 2014). Neither party to this action has suggested that the factual record is sufficiently developed such that a motion for summary judgment is appropriate at this stage of the proceedings.

In reviewing a motion to dismiss, a court may consider only the complaint, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. Tellabs, Inc. v. Makor Issus & Rights, Ltd., 551 U.S. 308, 322 (2007). The Ninth Circuit has observed that "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid," adding that, "if defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." Khoja v. Province, Inc., No. 16-56069, 2018 WL 3826298, *6 (9th Cir. Aug. 13, 2018).

Further, while judicial notice of a document may be proper, it may not be proper to take judicial notice of the contents of each document for the purpose for which it is offered. Plaintiffs object to Defendants' request for judicial notice for the twenty-four documents submitted in support of their Motion.

///

///

Should the court rely in substantial part on any of the evidence submitted by Defendants, Plaintiffs respectfully request that they be granted additional time to counter with their own evidence. As with a motion for summary judgment, courts have discretion to defer ruling on a motion to dismiss if discovery is shown to be necessary to respond to the other parties' factual showing. See F.R.C.P. 56(e); E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc., 637 F.3d 435, 448–49 (4th Cir. 2011) (finding that conversion of motion to dismiss to motion for summary judgment not appropriate where parties have not had 'opportunity for reasonable discovery'").

### B. Plaintiffs More Than Sufficiently Plead Facts to Support Their Causes of Action

#### 1. Plaintiffs Allege Why and How Subway's Statements Are False

"Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009). Subway's entire Motion is premised on the argument that the DNA testing performed by Plaintiffs is deficient and is an unreliable means for testing tuna products. (*See* Mot. at 14:21–22, 15:20–21.) Just because Subway disagrees with Plaintiffs' test results does not mean that Plaintiffs failed as a matter of law to allege facts sufficient to give rise to an entitlement to relief. Defendants proffer no case law suggesting that Plaintiffs must disclose the full extent of their expert's testing methods and analysis at this stage in the litigation; regardless, Plaintiffs did allege specific facts regarding their DNA testing, which gives rise to a plausible inference that Subway's tuna does not contain 100% tuna and/or contains ingredients other than tuna. All that is required at this juncture is that Plaintiffs allege the who, what, when, where, and how of the misconduct charged, which Plaintiff has done. The factual allegations in the SAC **must** be accepted as true—regardless of if Subway disagrees with them or provides its own counter evidence (which, as discussed above and in Plaintiffs' opposition to Defendant's request for judicial notice, is entirely improper at this stage).

Here, Plaintiffs clearly and sufficiently allege how Subway's statements that its tuna is "tuna" and "100% tuna" is false, deceptive, or otherwise misleading. Plaintiffs retained expert Dr. Paul Barber, Ph.D. of Marine Biology, to analyze test results of twenty tuna salad samples that were taken from twenty different Subway eateries. (SAC ¶ 23.) Dr. Barber performed DNA

barcoding testing on twenty samples of Subway's tuna salad product. (SAC ¶ 23.) Custom sequencing was used to try and identify the kind of genetic information that was present in each of the twenty samples, which were tested against the following primers: vertebrate primers, tuna primers, COI primers, and plant primers. (SAC ¶ 24.)

Of the twenty samples tested, nineteen of them had **no detectable tuna DNA sequences whatsoever.** (SAC ¶ 25.) All twenty of the samples contained detectable sequences of chicken DNA; 11 out of 20 samples contained detectable sequences of pork DNA; and 7 out of 20 contained detectable sequences of cattle DNA. (SAC ¶ 25.)

Defendants have consistently advertised its tuna salad products as being "tuna." It is self-evident that a food item labeled as being "tuna" should be just that: only tuna. (SAC ¶ 2.) However, Plaintiffs' testing gives rise to a plausible inference that Subway's tuna salad products are not being sold as advertised; that is, the tuna salad products are not just "tuna" or "100% tuna," but are contaminated or otherwise adulterated such that consumers are not receiving the product they reasonably expect to be purchasing. (SAC ¶ 26.) Additionally, Plaintiffs allege that when reading a menu item identified as being "tuna," reasonable consumers, including Plaintiff Amin, reasonably believe that the product they are ordering and purchasing will contain *only* tuna and no other fish species, animal species, or miscellaneous products not otherwise identified in the menu item. (SAC ¶ 38.)

Subway spends a lot of time in its Motion talking about the *New York Times* and *Inside Edition* articles discussing Subway's tuna products. Indeed, Subway dedicated an entire page on its website, entitled "Subway Tuna is Real Tuna," to address the alleged "misinformation generated in the media" about its tuna salad products. Notably, Subway disputed the *New York Times*' test results and stated, "If the test had confirmed the existence of a protein other than tuna, **questions could have been raised**."[1] Now, Subway is presented with test results confirming the existence of a protein other than tuna in its tuna salad products, and still Subway threatens "Rule 11 consequences" (*see* Mot. 20:15–17) as against Plaintiffs and Plaintiffs' counsel.

---

[1] https://www.subway.com/en-us/tunafacts

Regardless, the veracity of the testing performed by outside sources (*e.g.,* the *New York Times*, *Inside Edition*, and/or Subway itself) is **irrelevant**. The Second Amended Complaint does not contain facts or allegations about the *New York Times* or *Inside Edition* materials relative to these issues. For purposes of this Motion, Plaintiffs' tests results, and all reasonable inferences that can be drawn therefrom, must be accepted as true. In pleading such test results, Plaintiffs adequately allege facts supporting a plausible and reasonable inference that Subway's tuna salad products are not only "tuna" or "100% tuna."

Defendants cite to Ham v. Hain Celestial Grp., Inc., 70 F. Supp.3d 1188 (N.D. Cal. 2014) for the proposition that claims of misrepresentation must supply foundational information to survive a motion to dismiss—specifically, information about why the statement is false, why a reasonable consumer would believe the statements are false, or how the statements caused damages to the plaintiffs. (*See* Mot. at 12:28–13:8.) In Ham, the plaintiff alleged that she purchased two varieties of Hain's allegedly "all natural" and "organic" waffles. Ham alleged that the waffles are, in fact, not "all natural" because one of the ingredients is a nonorganic synthetic substance, SAPP. Additionally, the plaintiff there alleged that she saw the labeling each time she purchased the products and "'would not have purchased and consumed the products had it not been for [Hain's] misrepresentations.'" Ham, 70 F. Supp.3d at 1192. There, the Court held that the complaint satisfied Rule 9(b). Id. at 1194–95.

Similarly, here, Plaintiff Amin alleges (i) the who: Subway; (ii) the what: "tuna" labeling on tuna salad products; (iii) the when: purchases made between 2013 and 2019; (iv) the where: on Subway's in-restaurant menus, which are typically located behind the sandwich bar on the back wall of the restaurant; and (v) the how: "tuna" labeling on a product that contains various other animal species and contains no detectable tuna DNA sequences, which caused Plaintiffs and other consumers to reasonably rely on the statement. Additionally, similar to the plaintiff in Ham, Plaintiff Amin alleges that she would not have bought the tuna salad products or would have paid substantially less for them had she known that they actually contained no detectable tuna DNA sequences and contained various other animal species. (SAC ¶ 41.) The lack of identifiable tuna DNA from Plaintiffs' test results leads to—*at a minimum*—a plausible inference of a misstatement

by Subway.  Accordingly, the SAC satisfies Rule 9(b).

### 2. Plaintiff Amin Alleges That She Relied Upon Subway's Statements

Defendants still contend that Plaintiff Amin fails to allege facts demonstrating that she read the statement at issue and relied on that statement before purchasing a tuna salad product. (Mot. at 18:22–19:3.)  Defendant is incorrect.

The menus in Defendants' in-store restaurants clearly identify the tuna products as being "tuna."  Plaintiff Amin alleges that every time she ordered a tuna salad product at one of Defendants' restaurants, she first looked at the in-store menu behind the sandwich bar, acknowledged the food option identified as being "tuna," ordered the product because she reasonably believed the product was "tuna" and did not contain any other animal species or miscellaneous products, and paid for the product under that belief.  (SAC ¶¶ 37, 42.)  Further, had Plaintiff Amin known that Subway's tuna salad contained ingredients other than tuna (*e.g.,* other fish species, animal species, or unexpected miscellaneous products), she would not have bought the product or would have paid substantially less money for it.  (SAC ¶ 41.)  These allegations are more than sufficient to satisfy Rule 9(b)'s pleading standard.  See Ham, 70 F. Supp.3d at 1192 (holding that Rule 9(b) was satisfied where the plaintiff alleged that she saw the labeling each time she purchased the products and "'would not have purchased and consumed the products had it not been for [Hain's] misrepresentations.'".)

Additionally, Plaintiffs alleged that reasonable consumers, including Plaintiffs, reasonably believe that when they order a product identified as "tuna" or "100% tuna", that product will contain *only* tuna and no other fish species, animal species, or miscellaneous products.  (SAC ¶ 5, 38, 42.)  Additionally, it is reasonable to assume that testing a product identified as "tuna" will return results indicating that there are at least some identifiable tuna DNA sequences.  Subway argues that no reasonable consumer would be misled into believing that Subway's tuna salad products actually contain 100% tuna.  (*See* Mot. At 18:14–22.)  Specifically, Subway contends that any reasonable consumer of its tuna salad products would expect to find chicken DNA in its tuna product and would expect other "cross contact" of various Subway ingredients.  That argument is not appropriate for purposes of the instant motion.  Reasonable minds certainly will

differ and, as such, that issue would only be appropriate for a motion for summary judgment. Unless Subway has some evidence that they have surveyed a statistically significant population of its customers and produce that evidence to show that a reasonable consumer actually expects products such as chicken to be contained within their tuna sandwich (something Subway has likely not done), then they would not be able to prevail on that issue even on a motion for summary judgment.

Generally, "whether a reasonable consumer would be deceived . . . [is] a question of fact not amenable to determination on a motion to dismiss." Ham, 70 F. Supp. 3dat 1193; see also Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015) (finding that application of the reasonable consumer standard involves "questions of fact that are appropriate for resolution on a motion to dismiss only in rare situations.".)  The facts in this case do not amount to the rare situation in which granting a motion to dismiss for failure to allege reasonable reliance is appropriate.  The question here is not whether Subway adequately warned its consumers that preparation of its products would result in cross contamination, but whether a reasonable consumer would expect that testing of Subway's "100% tuna" would reveal no detectable tuna DNA sequences and detectable amounts of chicken, pork, and cattle DNA.

Subway's labeling and advertising of its tuna salad products as being "tuna" and "100% tuna" suggests (falsely) that the product will be scientifically identifiable as consisting of tuna and no other species.  The fact that no tuna DNA can be identified in Subway's tuna salad products gives rise to a plausible inference that its tuna products do not consist of "100% tuna" as advertised by Subway.  Additionally, the fact that Subway's website confirms that egg is an ingredient in Subway's mayonnaise (which is included in its tuna salad products) and that the FDA recognizes the potential for cross-contamination in restaurants is irrelevant.  In Williams, the Ninth Circuit disagreed with the district court that a reasonable consumer should be expected to look beyond misleading representations to discover the truth.  Williams, 552 F.3d at 939. Additionally, like the defendant in Williams, Subway has not made any argument as to how compliance with certain FDA regulations would automatically shield it from liability.  Id. At 940.

### 3. Plaintiff Amin Alleges How She Was Damaged

Plaintiff Amin clearly alleges how she was damaged by Subway's misrepresentations. Plaintiff Amin purchased over 100 tuna salad products from Subway over the course of at least 5 to 6 years. (SAC ¶ 36.) Had Plaintiff known that Subway's tuna salad did not contain 100% tuna and/or contained ingredients other than tuna, she would not have bought the product or would have paid substantially less money for it. (SAC ¶ 41.) These allegations alone are sufficient to satisfy Rule 9(b). See Ham, 70 F. Supp.3d at 1192 (holding that Rule 9(b) was satisfied where the plaintiff alleged that she saw the labeling each time she purchased the products and "'would not have purchased and consumed the products had it not been for [Hain's] misrepresentations.'".)

### C. In the Alternative, Leave to Amend Should Be Granted

As a preliminary matter, Plaintiffs' SAC is entirely proper. Nothing in the SAC contradicts or is otherwise inconsistent with the factual allegations contained in the FAC. Regardless, the Ninth Circuit and other courts have held that nothing in the Federal Rules prevents a party from filing successive pleadings with inconsistent or even contradictory allegations. "Unless there is a showing that the party acted in bad faith…inconsistent allegations are simply not a basis for striking the pleading." PAE Government Services, Inc. v. MPRI, Inc., 414 F.2d 856, 860. Accordingly, consideration of Subway's Motion is limited to the content of the operative complaint. Additionally, Plaintiffs' SAC does not raise new claims, but instead reiterates the same causes of action contained in the FAC.

Should the Court grant Subway's Motion in any respect, Plaintiffs respectfully request that leave to amend be permitted. Rule 15(a) advises courts that "leave to amend shall be freely given when justice so requires." Fed. R. Civ. P. 15. Leave to amend should be denied only if the court determines that "allegation[s] of other facts consistent with the challenged pleading could not possible cure the defect." Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).

///

///

///

## VII. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss Plaintiffs' SAC in its entirety. In the alternative, Plaintiffs respectfully request that the Court grant leave to amend.

Dated:  December 22, 2021  McNICHOLAS & McNICHOLAS, LLP,


By:  /s/ Patrick McNicholas
      Patrick McNicholas, Esq.
      Jeffrey R. Lamb, Esq.
      Emily R. Pincin, Esq.
      Attorneys for Plaintiffs

Additional Counsel:

THE LANIER LAW FIRM, PC
Mark Lanier, (Admitted *Pro Hac Vice*)
Alex Brown (Admitted *Pro Hac Vice*)
Mark Lanier, (Admitted *Pro Hac Vice*)
Jonathan Wilkerson (Admitted *Pro Hac Vice*)
10940 W. Sam Houston Pkwy N, Ste. 100
Houston, TX 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204

DOGRA LAW GROUP PC
Shalini Dogra, SBN 309024
2219 Main Street, Unit 239
Santa Monica, CA 90405
Telephone: (747) 234-6673
Facsimile: (310) 868-0170

**FILER'S ATTESTATION OF CONCURRENCE**

I, Emily Pincin, attest that I am one of the attorneys for Plaintiffs Nilima Amin and Karen Dhanowa.  As the ECF user and filer of this document, I attest that concurrence with the filing of this document has been obtained from its signatories.  I also hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document.


Dated:  December 22, 2021                                    By:   /s/  *Emily Pincin*
                                                                                    Emily Pincin