Mark C. Goodman (State Bar No. 154692)
mark.goodman@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111
Telephone:   +1 415 576 3000
Facsimile: +1 415 576 3099

Alexander G. Davis (State Bar No. 287840)
alexander.davis@bakermckenzie.com
Anne Kelts Assayag (State Bar No. 298710)
anne.assayag@bakermckenzie.com
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA  94304-1044
Telephone:   +1 650 856 2400
Facsimile: +1 650 856 9299

Attorneys for Defendants
SUBWAY RESTAURANTS, INC.,
FRANCHISE WORLD HEADQUARTERS, LLC and
SUBWAY FRANCHISEE ADVERTISING TRUST FUND LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAREN DHANOWA and NILIMA AMIN, on behalf of themselves and all others,<br><br>Plaintiffs,<br><br>vs.<br><br>SUBWAY RESTAURANTS, INC., a Delaware Corporation; FRANCHISE WORLD HEADQUARTERS, LLC., a Connecticut Limited Liability Corporation; SUBWAY FRANCHISEE ADVERTISING TRUST FUND LTD., a Connecticut Corporation; and DOES 1 through 50, Inclusive,<br><br>Defendants. | Case No.  4:21-cv-00498-JST<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:    February 3, 2022<br>Time:   2:00 p.m.<br>Ctrm:   Courtroom 6 – 2nd Floor<br>Judge:  Hon. Jon S. Tigar<br>Oakland Courthouse<br><br>Complaint Filed: January 21, 2021<br>Amended Complaint Filed: June 8, 2021 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. DISCUSSION ................................................................................................................. 3

    A. Plaintiffs Allege No Facts Explaining Why Subway's Representations Are False ................................................................................................................... 3

    B. Plaintiffs Have Not Alleged Reasonable Reliance And Cannot Fix That Defect ......... 6

    C. Plaintiffs' Fraudulent Concealment Theory Still Fails ................................... 9

    D. Subway's Request For Judicial Notice Remains Appropriate .................................... 10

    E. Dismissal With Prejudice Is Proper .......................................................................... 12

III. CONCLUSION .............................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. ConAgra Foods, Inc.*,
  No. 13-cv-01279-JST, 2013 WL 4737421 (N.D. Cal. Sept. 2, 2013) ......................................... 11

*Anderson v. Jamba Juice Co.*,
  888 F.Supp.2d 1000 (N.D. Cal. Aug. 24, 2012) ........................................................................ 11

*Augustine v. Talking Rain Bev. Co.*,
  386 F.Supp.3d 1317 (S.D. Cal. 2019) ......................................................................................... 9

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) .................................................................................................... 8

*Branca v. Bai Brands, Ltd. Liab. Co.*,
  No. 3:18-cv-00757-BEN-KSC, 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) .......................... 10

*Brazil v. Dole Food Co.*,
  935 F.Supp.2d 947 (N.D. Cal. 2013) .................................................................................... 6, 11

*Bronson v. Johnson & Johnson, Inc.*,
  No. C 12–04184 CRB, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ..................................... 12

*Fahey v. Whole Foods Mkt.*,
  No. 20-cv-06737-JST, 2021 WL 2816919 (N.D. Cal. June 30, 2021) ....................................... 8

*Hadley v. Kellogg Sales Co.*,
  243 F.Supp.3d 1074 (N.D. Cal. March 21, 2017) .................................................................... 11

*Ham v. Hain Celestial Grp., Inc.*,
  70 F.Supp.3d 1188 (N.D. Cal. 2014) .......................................................................................... 8

*Hawyuan Yu v. Dr. Pepper Snapple Grp., Inc.*,
  No. 18-cv-06664-BLF, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ......................................... 8

*Johnson v. Little Orchard Bus. Park Owners Ass'n*,
  No. 20-cv-06584-SVK, 2021 WL 3471178 (N.D. Cal. Aug. 6, 2021) ....................................... 5

*Maple v. Costco Wholesale Corp.*,
  No. 12-CV-5166, 2013 WL 11842009 (E.D. Wash. Aug. 1, 2013) .......................................... 12

*Masimo Corp. v. Apple Inc.*,
  No. SACV 20-48 JVS (JDEx), 2021 WL 925885 (C.D. Cal. Jan. 6, 2021) .............................. 11

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) ...................................................................................................... 9

*Romero v. Flowers Bakeries, LLC*,
 No. 14-cv-05189-BLF, 2015 WL 2125004 (N.D. Cal. May 6, 2015) ........................................ 12

*United States ex rel. Modglin v. DJO Global Inc.*,
 48 F.Supp.3d 1362 (C.D. Cal. 2014) ..................................................................................... 11

*Werbel v. Pepsico, Inc.*,
 No. C 09–04456 SBA, 2010 WL 2673860 (N.D. Cal. July, 2 2010) ......................................... 8

*Williams v. Apple, Inc.*,
 449 F.Supp.3d 892 (N.D. Cal. 2020) ....................................................................................... 6

*Williams v. Gerber Prods. Co.*,
 552 F.3d 934 (9th Cir. 2008) ................................................................................................... 8

*Wilson v. Hewlett-Packard Co.*,
 668 F.3d 1136 (9th Cir. 2012) ............................................................................................... 10

**Other Authorities**

Fed. R. Civ. P. 9(b) .................................................................................................................. 3, 6

Fed. R. Civ. P. 11 ........................................................................................................................ 12

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1, 3, 5, 12

## I. INTRODUCTION

Plaintiffs' Opposition does not meaningfully address the core pleading defects in their Second Amended Complaint (the "SAC"), defects that require dismissal under Rule 12(b)(6).

Recognizing that the evidence demonstrates that Subway's tuna products do, in fact, contain tuna, the plaintiffs carefully skirt the unsupportable theories of their prior two pleadings. Indeed, the plaintiffs no longer try to claim that Subway's tuna products contain no tuna or that Subway misrepresented the species of tuna in its tuna products because those claims and the pleadings in which they were made failed. Notwithstanding the Court's generosity in allowing them yet another chance to allege facts to support those claims, the plaintiffs simply cannot do so. As a result, all the plaintiffs are left with is yet another specious theory based on their alleged sandwich purchases, this time that they thought Subway's tuna products -- products that the plaintiffs admit are *fully assembled* sandwiches, wraps or salads containing tuna salad *mixed with mayonnaise* -- were "only tuna" or -- now, according to their Opposition -- "just tuna." (*See* Opp. at 6, 7, 13 and 16.) But these 11th hour arguments ignore the fact that no reasonable consumer could believe that a tuna sandwich (or other tuna menu item) consists of only tuna fish and no other ingredients or items, including as a result of cross-contact with other Subway food items, and *the SAC does not cite to any allegedly false or misleading statement by Subway* to support the plaintiffs' latest theory.

Tellingly, the plaintiffs cannot cite to a single representation to support their remaining argument -- not pled in the SAC, by the way -- that consumers who purchased and ate Subway tuna products thought they were buying products that *would reveal tuna DNA* if subjected to a DNA test. (*See* Opp. at 16 ("Subway's labeling and advertising of its tuna salad products as being 'tuna' and '100% tuna' *suggests* (falsely) that the product will be *scientifically identifiable as consisting of tuna and no other species*") (emphasis added).) Such vague allegations fall far short of what is required to properly allege fraud, much less in the context of a putative consumer class action in which all consumers must have understood the "suggestion" the same way that the plaintiffs did. The problem for the plaintiffs is that nothing in the SAC or the Opposition supports their claims that Subway made some misstatement about its tuna products and they certainly do not allege facts demonstrating reasonable reliance or damages.

First, notwithstanding the fact that the plaintiffs do not allege (or argue) that they reviewed or relied on any assurance by Subway that the tuna products contain "100% tuna" in making a purchase, their theory of misrepresentation necessarily depends on reading "100%" into Subway's statement that the tuna products are "tuna." (*See* SAC at ¶¶ 37, 42; Opp. at 7, 8.) "Only tuna" is just another way of saying that the plaintiffs thought the tuna products were "100% tuna" but the plaintiffs do not allege that the tuna in Subway's tuna products was not tuna. This failure is fatal to the SAC.

Second, the plaintiffs admit that plaintiff Dhanowa never purchased Subway tuna products and that she did not rely on any statements by Subway at all. (*See, e.g.*, Opp. at 8:4-5, 9:12, 13:15, 14:19, 15:2.) These facts demonstrate a lack of standing to bring the claims alleged. Accordingly, Ms. Dhanowa's claims must be dismissed with prejudice.

Third, the plaintiffs admit that their entire theory of liability hinges on their testing allegations but it is clear on the face of the SAC that those allegations do not state a plausible claim for relief. Plaintiffs do not dispute that they tested ***the assembled tuna sandwiches, wraps and/or salads*** -- not the tuna by itself -- and that those products unsurprisingly contain mayonnaise and other ingredients along with the tuna. (*See* SAC at ¶24; Opp. at 16.) Plaintiffs do not even attempt to address, much less dispute, any of the significant issues Subway has identified with the plaintiffs' testing methods as pled on the face of the SAC; instead they merely argue that they should not have to "disclose the full extent of their expert's testing methods and analysis at this stage in the litigation." (Opp. at 12.) But the deficiencies in the plaintiffs' product testing are not expert issues; they are apparent from the face of the SAC and, thus, do not allow a plausible inference that the tuna products do not contain "tuna."

At the end of the day, the SAC only alleges that the plaintiffs conducted fundamentally flawed testing of fully assembled Subway tuna sandwiches, wraps and/or salads and that testing (predictably) failed to detect tuna DNA but did detect traces of other Subway menu items and ingredients. The problem for the plaintiffs is that they cannot tie these allegations to any purported misstatement by Subway. Because the plaintiffs still do not allege any facts supporting their claim that the tuna products are not "tuna" as advertised, cannot point to any statement by Subway that

the tuna products were "only tuna" and do not explain how they plausibly could have incurred any damages as a result of purchasing any tuna products from Subway, the claims in the SAC -- and the plaintiffs' class action as a whole -- must be dismissed with prejudice.

## II. DISCUSSION

While Subway primarily relies on the arguments and authorities presented in its opening papers, it addresses the following issues raised in the Opposition, none of which is sufficient to withstand dismissal under Rule 12(b)(6) and Rule 9(b).

### A. Plaintiffs Allege No Facts Explaining Why Subway's Representations Are False

Plaintiffs' Opposition concedes, as it must, that Rule 9(b) requires pleading specific facts demonstrating *why* the statements at issue are supposedly false. (Opp. at 12.) Plaintiffs try to get around this by arguing that their theory of fraud is somehow "self-evident." (*See id.* at 13.) Of course, the plaintiffs do not allege facts to support that argument or demonstrate why Subway's challenged statements -- referring to its tuna menu items as "tuna" -- are untrue or misleading or caused the plaintiffs or any other consumer to buy the tuna products at a premium price, as Rule 9(b) requires. Plaintiffs likewise make no effort to respond to the fact that the SAC's allegations about "adulteration risks" are fatally vague and speculative. (*See id.* at 16-17.) They simply cite back to the paragraphs as purported support for their claims, without further explanation. (*See* Opp. at 7:16-19, 8:21-23, 13:12-14 (citing SAC at ¶26).) As Subway already explained in its opening papers on this motion, the plaintiffs' allegations offer only conclusions and circular logic: Subway's representations are false because, "[i]n reality," the representations are false. (*See* Dkt. No. 57, Subway's Motion to Dismiss SAC ("Motion") at 13.) Subway's explanation remains unrebutted and the plaintiffs still do not come close to satisfying federal requirements for pleading fraud.

Interestingly, the Opposition essentially concedes that the plaintiffs cannot point to misstatements by Subway to support what they claim. The most the plaintiffs argue (without any facts) is that advertising tuna products as "tuna" "*suggests* (falsely) that the product[s] will be *scientifically identifiable*" as tuna. (*See* Opp. at 16 (emphasis added).) What the plaintiffs fail to grasp is that, even if the plaintiffs' suggestion were true, it does not reflect *a misstatement by Subway.* This alleged "suggestion" would be, at most, what the plaintiffs understood, as

demonstrated by the fact that such a suggestion **by Subway** is not alleged anywhere in the SAC. Even if the plaintiffs had alleged that Subway "suggested" that its tuna would be scientifically identifiable as tuna, those allegations would have to be fabricated, as there are no facts that (1) any statement attributable to Subway included such a suggestion or (2) any reasonable consumer would understand such a suggestion to be implied by any statement that Subway made.

Plaintiffs' conclusory argument that their alleged DNA testing "gives rise to a plausible inference" that Subway's tuna products do not consist of "100% tuna" is not enough to state a claim for relief, either. (Opp. at 12.)[1] Notably, the plaintiffs do not challenge *any* of Subway's arguments identifying the flaws in the plaintiffs' DNA testing as pled on the face of the SAC. As Subway already showed, the SAC makes clear that the plaintiffs did not collect sterile samples of tuna to test. (*See* Motion at 14-15, SAC at ¶¶23-24.) Plaintiffs do not allege or argue that their testing identified more than a merely detectable, trace amount of any other ingredient. (*See* SAC at ¶25 (alleging "detectable sequences" of other DNA); Opp. at 6-7 (citing same).) The allegations in the SAC are also devoid of any factual support for the test methods and primers the plaintiffs used to test the tuna products and when and how the products were stored and shipped prior to testing, all of which would be required to plausibly allege support for an argument that the tuna products they purchased did not contain tuna. (*See* Motion at 7; SAC at ¶24.) Moreover, the plaintiffs do not allege that they tested tuna products sold between 2013 and 2019, the dates during which plaintiff Amin alleges she purchased Subway tuna products, and the plaintiffs appear to admit that they tested samples of the tuna products from stores in an entirely different region from the one store where plaintiff Amin alleges to have purchased the products. (*See* Motion at 7; SAC at ¶¶23, 27, 36.)

While the plaintiffs do not divulge in their pleading or even in their Opposition which toppings or condiments were included in the tuna sandwiches they tested, they do not dispute that other ingredients are served with Subway's tuna, ingredients that could show up on a DNA test, acknowledging that Subway's tuna salad contains mayonnaise but baldly (and incorrectly) arguing

---

[1] This argument also cannot support the plaintiffs' claims where neither plaintiff alleges to have reviewed or relied on any statement that Subway's tuna products were "100% tuna." (Opp. at 9:12-15; SAC at ¶37.)

that the presence of chicken eggs in the mayonnaise is "irrelevant." (*See* Opp. at 16; SAC at ¶¶23-24.) Plaintiffs likewise incorrectly conclude that referencing testing in the SAC is enough under the Federal Rules to support a claim that the tuna products "are not being sold as advertised." (Opp. at 7.) Plaintiffs try to claim that Subway "do[es] not dispute Plaintiffs' test results showing the presence of chicken, pork, and cattle DNA sequences" (Opp. at 6) but this is untrue. Subway clearly pointed out on its motion that the testing was invalid and flawed on the face of the SAC. (*See, e.g.*, Motion at 14.) And even if one were to accept the plaintiffs' allegations, the results of DNA testing revealing other protein DNA do not support the plaintiffs' fraud and mislabeling claims.

Unable to cite to anything in their pleading that can avoid dismissal, the plaintiffs resort to a statement on Subway's website that is not included in the SAC. Such extrinsic information cannot be considered on a Rule 12(b)(6) motion. *See Johnson v. Little Orchard Bus. Park Owners Ass'n*, No. 20-cv-06584-SVK, 2021 WL 3471178, at *2 (N.D. Cal. Aug. 6, 2021) ("In ruling on a motion to dismiss, the court may consider only 'the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice'") (quoting *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008)). Moreover, the statement to which the plaintiffs point was not made during the time that the plaintiffs allegedly purchased Subway tuna products. Finally, and in any event, Subway stating that legitimate questions could have been raised if testing revealed that Subway's tuna consisted of an entirely different protein (and not tuna at all) does not help the plaintiffs because the plaintiffs have merely alleged that their testing of finished sandwiches unsurprisingly picked up traces of other proteins used in Subway products. Plaintiffs' allegations do not come close to the scenario that Subway posited in a statement made after the plaintiffs filed this action.

Because the plaintiffs' fraud and misrepresentation claims depend on purported DNA test results and because it is clear from the SAC that the plaintiffs' testing was fundamentally deficient and does not reveal any false statement by Subway in any event, the SAC fails as a matter of law and must be dismissed with prejudice.

### B. Plaintiffs Have Not Alleged Reasonable Reliance And Cannot Fix That Defect

Plaintiffs' Opposition recites two alleged statements by Subway that supposedly support their claims: That Subway tuna products were "tuna" and that they were "100% tuna." (*See, e.g.*, Opp. at 7-8 (citing SAC at ¶26).) But the plaintiffs do not address the fatal defects in their allegations relating to these two statements.

The Opposition does not even ***mention*** plaintiff Dhanowa, probably because her claims fail to meet any of the who, what, when, where, why and how required by Rule 9(b)'s heightened pleading standard. Ms. Dhanowa simply cannot proceed as a plaintiff in this lawsuit because there are no facts showing that she ever relied on any statement that Subway made in purchasing Subway tuna products, if she purchased any. *See, e.g.*, *Williams v. Apple, Inc.*, 449 F.Supp.3d 892, 913 (N.D. Cal. 2020); *Brazil v. Dole Food Co.*, 935 F.Supp.2d 947, 964 (N.D. Cal. 2013).

With respect to plaintiff Amin, she supposedly reviewed a statement on a menu posted in a Subway restaurant that the tuna products were "tuna" but she never reviewed any "100% tuna" representation on Subway's website prior to making a purchase. (Opp. at 9; *see also* SAC at ¶¶22, 37.) As demonstrated in Subway's opening papers on this motion, Ms. Amin cannot maintain a claim for relief based on a statement that the tuna products were "tuna" because she has not alleged facts demonstrating that statement was false. Plaintiffs' Opposition advances a new theory, not pled in the SAC, that plaintiff Amin somehow believed that, when Subway advertised a tuna sandwich as "tuna," Subway was ***actually*** saying that sandwich was comprised of "only tuna" or would reveal tuna DNA if subjected to a DNA test. Neither of those theories is viable because (1) Subway did not say its sandwiches are entirely comprised of only tuna or that its tuna sandwiches would reveal tuna DNA if tested, (2) the meaning that plaintiff Amin claims to have discerned from Subway's labeling of its tuna products as "tuna" is not supported by anything that Subway ***actually said***, let alone anything false or misleading, and (3) no reasonable consumer could have reached the conclusions that plaintiff Amin claims to have reached as a result of viewing the statements alleged in the SAC. As before, the plaintiffs do not claim that the ***tuna*** in Subway's tuna products was something other than "only tuna"; they merely claim that ***the final, assembled sandwiches, wraps and salads were not "only tuna."*** Accepting the plaintiffs' theory would require the Court to find

that a reasonable consumer believes, for example, that a roast beef sandwich is made of "only roast beef" and no other ingredients, a chicken wrap is made of "only chicken" meat (and no tortilla or condiments) or a turkey salad is comprised of "only turkey" with no mayonnaise, vegetables or other toppings. No reasonable consumer of Subway food products would agree with that theory.

Plaintiffs also claim that "it is reasonable to assume that testing a product identified as 'tuna' will return results indicating that there are at least some identifiable tuna DNA sequences" (Opp. at 15) but they cite no authority -- and certainly plead no facts -- to explain how this can be true as a matter of law or science. Plaintiffs argue that Subway must have "surveyed a statistically significant population of its customers" to determine what the reasonable consumer would have believed about the tuna products (*see* Opp. at 16) but this argument is illogical (what a reasonable consumer believes about Subway's tuna has nothing to do with DNA testing, as there are many ways to confirm the quality of the tuna in Subway's products) and misses the point (the allegations in the SAC about supposed DNA testing do not "lead[] to a plausible inference that Subway's tuna is not *just* 'tuna' as a reasonable consumer would expect"). (Opp. at 7; *see supra* § II.A.)

Nor do the plaintiffs dispute that "egg is an ingredient in Subway's mayonnaise (which is included in its tuna salad products)" or that "FDA recognizes the potential for cross-contamination in restaurants." (Opp. at 16.) Plaintiffs attempt to ignore these facts as "irrelevant" (Opp. at 16) but the truth is they could not be more relevant: The ubiquitous use of mayonnaise (containing chicken eggs) in tuna salad means that no reasonable consumer could believe that Subway tuna products are "only tuna" and contain no other ingredients. The generally-accepted potential for cross-contact in food preparation -- especially in a Subway restaurant where the sandwiches are made to order right in front of the customer on the same board and with the same utensils used to make any other sandwich on Subway's menu -- equally undermines the plaintiffs' theories. Critically, the plaintiffs point to no statement or assurance by Subway that its tuna products will be free from contact with other Subway menu items, ingredients or condiments. Thus, not only are the plaintiffs unable to tie their theory about other animal DNA to any misstatement by Subway, they have not pled facts to support a plausible claim that they reasonably relied on anything that Subway said or did in

supposedly concluding -- without Subway saying it -- that the tuna products would not reveal traces of any other protein on a DNA test.[2]

In a last-ditch attempt to save their claims, the plaintiffs insist that whether a reasonable consumer would be deceived "generally" cannot be decided on a motion to dismiss. (*See* Opp. at 16.) But, as the Court well knows, consumer fraud claims in food labeling cases are regularly dismissed at the pleadings stage where a complaint does not plausibly allege that a reasonable consumer would rely on the misrepresentations alleged. *See, e.g.*, *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) (affirming dismissal because the plaintiff failed to sufficiently allege that reasonable consumers would read the word "diet" in a soft drink name to promise weight loss, healthy weight management or other health benefits); *Fahey v. Whole Foods Mkt.*, No. 20-cv-06737-JST, 2021 WL 2816919, at *3 (N.D. Cal. June 30, 2021) (dismissing consumer deception claims for failure to plausibly allege that a reasonable consumer would expect vanilla almond milk to derive vanilla flavor from vanilla beans); *Hawyuan Yu v. Dr. Pepper Snapple Grp., Inc.*, No. 18-cv-06664-BLF, 2020 WL 5910071, at *7 (N.D. Cal. Oct. 6, 2020) (granting motion to dismiss with prejudice where the plaintiff failed to plausibly allege that a reasonable consumer would believe "natural" products were free from traces of pesticides); *Werbel v. Pepsico, Inc.*, No. C 09–04456 SBA, 2010 WL 2673860, at *3, *5 (N.D. Cal. July, 2 2010) (granting motion to dismiss without leave to amend because a reasonable consumer would not believe that "Crunch Berries" cereal derived significant nutritional value from fruit).

Unlike the foregoing authority, the plaintiffs' cited precedents are distinguishable from this case because those cases identified statements that were actually alleged to be false. For instance, *Ham v. Hain Celestial Grp., Inc.*, 70 F.Supp.3d 1188 (N.D. Cal. 2014) found that a reasonable

---

[2] *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) does not support the plaintiffs' reliance argument. The court in that case concluded that, on the specific facts of that case, consumers should not be expected to read an ingredient list to clarify representations and statements on the front of the product packaging. *Id.* at 939-40. That holding has no application here, where there is no "front of the package" labeling. In fact, a reasonable consumer purchasing and consuming a Subway sandwich would not need to look at Subway's ingredient statement to know that Subway "tuna" products do not consist of "only tuna" but are tuna salad (tuna mixed with mayonnaise) and other ingredients added to the sandwich because those facts are evident from simply looking at the sandwich.

consumer could be deceived by "All Natural" labeling because the defendant admitted that the products contained a synthetic ingredient. *Id.* at 1194. Similarly, *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015) involved "No Trans Fat" labeling on a product that contained trans fats. *Id.* at 955. Plaintiffs do not allege that Subway "tuna" contained no tuna.

Dispositively, plaintiff Amin (and certainly plaintiff Dhanowa) does not try to claim that she could truthfully make any further allegations or plead any additional facts to demonstrate that she reasonably relied on any misstatement by Subway in purchasing tuna products. Because the plaintiffs fail to plead facts in the SAC to support reasonable reliance on any false statement by Subway, and because they cannot show that they could remedy this issue if given a ***fourth*** chance to plead their claims, the Court must dismiss this suit with prejudice.

### C. Plaintiffs' Fraudulent Concealment Theory Still Fails

To the extent the plaintiffs try to argue that they are actually relying on a fraudulent ***non***disclosure theory, this is just another weak attempt to save claims that cannot survive based on an affirmative fraud theory. As Subway explained on the last motion to dismiss, which the Court granted, nondisclosure claims arise only in specific, limited situations: "Under California law, an allegedly fraudulent omission is actionable only if the omission is 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Augustine v. Talking Rain Bev. Co.*, 386 F.Supp.3d 1317, 1330 (S.D. Cal. 2019) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824, 835 (2006)).

Plaintiffs do not allege that Subway failed to disclose information that was contrary to any representation on which they actually relied in purchasing Subway's tuna products. *Cf. Augustine*, 386 F.Supp.3d at 1330 (describing fraudulent omission theory as defendants "deliberately intend[ing] to give consumers the false impression that the Products are composed only of natural flavors and contain no artificial colors or flavors ***by including pictures of fruit*** on the front label of its Products and ***including the words 'Naturally Flavored Sparkling Water*** with Antioxidants and Vitamins'") (emphasis added). At most, plaintiff Amin (but not plaintiff Dhanowa) alleges that she saw the word "tuna" in deciding to purchase tuna products at Subway restaurants in California.

Seeing the word tuna is not contrary to the plaintiffs having received a tuna salad sandwich. In other words, they ordered, paid for and got exactly what was described on the Subway menu.

As before, the plaintiffs do not allege facts that give rise to a duty to disclose by Subway, either. Plaintiffs do not claim, for instance, that Subway had any affirmative obligation under the law to disclose to consumers that DNA testing of highly processed, denatured tuna protein may not detect tuna DNA. *Cf. Branca v. Bai Brands, Ltd. Liab. Co.*, No. 3:18-cv-00757-BEN-KSC, 2019 WL 1082562, at *19 (S.D. Cal. Mar. 7, 2019) (denying motion to dismiss fraudulent omission claim where defendant was required under FDA regulations to make certain disclosures about its food products). Nor do the plaintiffs plausibly allege that Subway failed to disclose material facts within its exclusive knowledge or "actively concealed" any facts that would actually matter to the purchase of Subway tuna products. Again, consumers can see that tuna salad contains mayonnaise and that a tuna sandwich contains other ingredients and items by simply looking at those items and watching a Subway sandwich artist prepare their sandwich.

Plaintiffs essentially charge Subway with failing to disclose that (1) a DNA test on processed tuna would fail to detect tuna DNA, (2) Subway tuna salad sandwiches also included other ingredients and items, such as mayonnaise and/or (3) Subway menu items may have contact with other Subway menu items. No rational consumer would expect such disclosures. Indeed, why would customers care how their food would fare in a DNA test? Unsurprisingly, the plaintiffs cite no case in which a court has allowed a fraudulent concealment claim to proceed on the bases the plaintiffs cite, as the plaintiffs' position would require a virtually ***limitless*** obligation to disclose. Such a position cannot be squared with California's policy of "reject[ing] a broad obligation to disclose." *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). Because the plaintiffs' strained theory of omission liability remains unsupported by any competent authority, the Court must again dismiss the complaint, this time with prejudice.

### D. Subway's Request For Judicial Notice Remains Appropriate

As the Court already recognized in granting in part Subway's request for judicial notice on Subway's last motion to dismiss, taking judicial notice of product packaging, advertising and related materials is standard practice in consumer claims involving food products. (*See* Dkt. No. 51 at 3;

*see also, e.g.*, *Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d 1074, 1087 (N.D. Cal. 2017) (taking judicial notice of food packaging and noting that "courts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging"); *Brazil*, 935 F.Supp.2d at 963 (taking judicial notice of food packaging labels); *Anderson v. Jamba Juice Co.*, 888 F.Supp.2d 1000, 1003 (N.D. Cal. Aug. 24, 2012) (taking judicial notice of the defendant's food product labels); *Allen v. ConAgra Foods, Inc.*, No. 13-cv-01279-JST, 2013 WL 4737421, at *2 (N.D. Cal. Sept. 2, 2013) (taking judicial notice of the defendant's product labels and webpage). Even the plaintiffs are forced to acknowledge that "the Court may take judicial notice of the existence of the documents" attached to Subway's Request for Judicial Notice, apparently conceding that the Court should grant the request. (*See* Dkt. No. 59 at 2.)

Plaintiffs complain that Subway "seek[s] to introduce evidence of certain facts" (*id.*) but, as Subway explained in its Request for Judicial Notice, none of the exhibits to that request are offered for the truth of matters asserted. They instead reflect the menus, advertising and packaging of Subway's tuna products and relevant pages from Subway's website during the time period when plaintiff Amin alleges she purchased the tuna products and publicly available government agency documents and news and journal articles. (*See generally* Dkt. No. 57-1 ("RJN").) As explained in the RJN, the plaintiffs' misrepresentation claims necessarily rely on the content of Subway's menus and website, and the existence of the other publicly available documents that Subway submitted are likewise relevant to the Court's determination of the plaintiffs' claims. (*See* RJN at 3.)

Taking judicial notice of these exhibits, or deeming them incorporated by reference based on the plaintiffs' allegations, does not convert Subway's motion to dismiss into a motion for summary judgment, as the plaintiffs urge. *See, e.g.*, *United States ex rel. Modglin v. DJO Global Inc.*, 48 F.Supp.3d 1362, 1379-81 (C.D. Cal. 2014) (taking judicial notice of FDA documents without converting a motion to dismiss to a summary judgment motion); *Anderson*, 888 F.Supp.2d at 1002 (taking judicial notice of the packaging at issue and noting that "the Court may also consider a matter that is properly the subject of judicial notice without converting the motion to dismiss into a motion for summary judgment"); *Masimo Corp. v. Apple Inc.*, No. SACV 20-48 JVS (JDEx), 2021 WL 925885, at *2 (C.D. Cal. Jan. 6, 2021) (taking judicial notice of scientific journal materials

without converting 12(b)(6) motion into one for summary judgment); *Bronson v. Johnson & Johnson, Inc.*, No. C 12–04184 CRB, 2013 WL 1629191, at *1 n.1 (N.D. Cal. Apr. 16, 2013) (judicial notice of food product labels relied on in the complaint does not convert a motion to dismiss into one for summary judgment); *Maple v. Costco Wholesale Corp.*, No. 12-CV-5166, 2013 WL 11842009, at *3 (E.D. Wash. Aug. 1, 2013) (taking judicial notice of labels without converting the motion to dismiss into a motion for summary judgment). Moreover, the plaintiffs do not claim that any of the exhibits offered by Subway are misleading or inaccurate or otherwise subject to any reasonable dispute; they simply ignore them or claim they are "irrelevant." (*See* Opp. at 11; Dkt. No. 59.) This is for good reason, as acknowledging the existence of these documents would require the plaintiffs to admit that the SAC does not allege a viable claim for relief as a matter of law.

The Court must disregard "allegations that contradict matters properly subject to judicial notice." *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2015 WL 2125004, at *3 (N.D. Cal. May 6, 2015) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)) (internal quotations omitted). Much to their chagrin, the plaintiffs cannot avoid dismissal of their lawsuit by attacking Subway's RJN.

### E.   Dismissal With Prejudice Is Proper

The SAC fails to comply with the Court's prior instructions -- and counsel's prior representations -- that the plaintiffs could amend the FAC to plead reliance on the alleged statements challenged in that complaint. (*See* Order at 5-8; Transcript of October 7, 2021 Hearing at 4:4-18.) In their Opposition, the plaintiffs first argue that the allegations of the SAC are consistent with those in the FAC, which simply is not true. (*See* Motion at 2, 19.) Perhaps recognizing the extreme weakness of that position, the plaintiffs then claim that courts in the Ninth Circuit permit inconsistent allegations in amended pleadings, but the cases they cite are distinguishable; if anything, those cases support Rule 11 sanctions against the plaintiffs and their counsel in this case. (*See* Opp. at 17 (citing *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 414 F.2d 856, 860 (9th Cir. 2007) (amended pleading alleging that parties entered into different contract from the one alleged in the first complaint was not a sham absent evidence of bad faith under Rule 11).) Plaintiffs do not address the case law in the motion supporting dismissal where an amended complaint exceeds the

Court's order affording leave to amend, which is what the plaintiffs did in filing the SAC. (*See* Motion at 19.)

The Opposition only confirms that the plaintiffs still have not pled a viable theory of liability that would allow their claims against Subway to proceed. While the plaintiffs again request leave to amend, nothing in the Opposition or the SAC suggests that the plaintiffs could fix the deficiencies with their current pleading, or how they would do so, and nothing about their conduct in this case gives comfort that they would actually amend their claims to state sufficient facts. For all of these reasons, the SAC should be dismissed with prejudice.

### III. CONCLUSION

Plaintiffs cannot overcome the fundamental pleading defects that doom their SAC like they doomed the prior pleadings. Plaintiffs began this lawsuit with patently false accusations that they ultimately withdrew. In a desperate effort to amend their pleading to allege *something* they thought could avoid sanctions, the plaintiffs and their lawyers manufactured new, equally false claims as to which they could not allege even the most basic elements of fraud. The Court recognized this and gave the plaintiffs yet another chance to allege reasonable reliance on supposed representations. Rather than do what the Court instructed, the plaintiffs reverted to a theory that Subway tuna products do not contain "only tuna" or "just tuna". Plaintiffs cannot adequately allege reasonable reliance to proceed on those claims, either.

Despite *three* opportunities to do so, the plaintiffs have not pled facts to demonstrate that Subway made any false statement and they do not allege how or why a reasonable consumer could possibly have concluded that a tuna salad sandwich, wrap or salad was made of "only tuna" or "just tuna." Accordingly, the Court must put an end to this litigation and grant the motion to dismiss with prejudice.

//

//

//

//

//

Dated: December 29, 2021

**BAKER & McKENZIE LLP**

By: /s/ Mark C. Goodman
     Mark C. Goodman
Attorneys for Defendants
SUBWAY RESTAURANTS, INC.,
FRANCHISE WORLD HEADQUARTERS,
LLC, and SUBWAY FRANCHISEE
ADVERTISING TRUST FUND LTD.