UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NILIMA AMIN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SUBWAY RESTAURANTS, INC., et al.,<br><br>　　　　Defendants. | Case No. 21-cv-00498-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 57 |

Before the Court is a motion to dismiss filed by Defendants Subway Restaurants, Inc., Franchise World Headquarters LLC, and Subway Franchisee Advertising Trust Fund LTD ("Subway"). ECF No. 57. The Court will grant the motion in part and deny it in part.

I.   **BACKGROUND**

Plaintiffs Karen Dhanowa and Nilima Amin filed their original complaint against Subway on January 21, 2021. ECF No. 4. In that complaint, Plaintiffs alleged that Subway's tuna products "do not contain tuna nor have any ingredient that constitutes tuna." *Id.* at 2. Before Subway could respond, Plaintiffs filed an amended complaint. ECF No. 33. The amended complaint alleged that Subway misrepresents its products as "100% tuna" and claims that its tuna products "do not contain tuna species that come from anything less than healthy stocks, for example Albacore and Tongol" when, in reality, the tuna products "do not contain 100% skipjack and yellowtail tuna, and/or do not consist of 100% tuna." *Id.* at 2-3. The Court granted Subway's motion to dismiss without prejudice, finding that Plaintiffs' fraud claim failed to satisfy Rule 9(b) because the complaint did not "describe the specific statements they saw and relied upon, when they saw the statements, and where the statements appeared." ECF No. 51 at 5.

Plaintiffs then filed a second amended complaint. ECF No. 54. The complaint now

1    alleges that "the Tuna Products partially or wholly lack[] tuna as an ingredient," and that "they

2    contain other fish species, animal products, or miscellaneous products aside from tuna." *Id.* at 3.

3    Subway filed this motion to dismiss the second amended complaint, ECF No. 57, which Plaintiffs

4    oppose, ECF No. 58.

## II.     REQUESTS FOR JUDICIAL NOTICE

Subway asks the Court to take judicial notice of 24 exhibits. ECF No. 57-1. Plaintiffs oppose the request. ECF No. 59.

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." On a motion to dismiss, the court may also "consider materials incorporated into the complaint" when "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). This is true even if "the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). However, courts "cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed." *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017).

The Court takes judicial notice of Exhibits A-C and H-M as exemplars of the menus and website pages that Plaintiffs identify as containing the allegedly false statements that form the basis of their complaint. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Court also takes judicial notice of Exhibits R and S, which are FDA guidance documents available on the FDA website. "Courts routinely take judicial notice of . . . FDA

2

guidance documents, many of which also appear on the FDA's public website." *Wilson v. Frito-Lay N. Am. Inc.*, 260 F. Supp. 3d 1202, 1206 (N.D. Cal. May 26, 2017) (citing cases).

The balance of Subway's requests for judicial notice pertain to disputed matters of fact and are denied.

### III. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

### IV. LEGAL STANDARD

A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). In determining whether a plaintiff has met this standard, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel*, 393 F.3d at 1072.

Any claims that are "grounded in fraud . . . must satisfy the traditional plausibility standards of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks, alterations, and citations omitted).

## V. DISCUSSION

### A. Plaintiff Karen Dhanowa

Under Rule 8, allegations must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. As Subway correctly notes, the amended complaint contains no facts pertaining to Dhanowa; it "does not allege that she purchased any Subway products, does not allege that she relied on any statements that Subway made and does not allege that she suffered any harm." ECF No. 57 at 9. Plaintiffs do not respond to this argument. The Court therefore grants Subway's motion to dismiss Dhanowa's claims.[1] Because Plaintiff Dhanowa does not identify how this defect could be cured, and because the second amended complaint does not cure the defects the Court identified in its prior order, dismissal is with prejudice. *Gallagher v. Capella Educ. Co.*, No. 3:19-CV-01342-JR, 2020 WL 8173023, at *6 (D. Or. July 1, 2020), *report and recommendation adopted*, 2021 WL 785133 (D. Or. Mar. 1, 2021), *aff'd*, No. 21-35188, 2021 WL 6067015 (9th Cir. Dec. 20, 2021); *Cox v. Oregon*, No. 3:20-CV-00235-JR, 2020 WL 5267565, at *3 (D. Or. Aug. 10, 2020), *report and recommendation adopted*, 2020 WL 5260380 (D. Or. Sept. 3, 2020).

### B. Failure to State a Claim

#### 1. Reasonable Consumer Standard

Under the UCL, FAL, and CLRA, conduct is considered deceptive or misleading if it is likely to deceive a "reasonable consumer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506–07 (2003) ("[U]nless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer."). This standard is higher than a "mere possibility" that the statement at issue "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie*, 105 Cal. App. 4th at 508. Rather, the standard requires a likelihood "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* Generally, the question of whether a

---

[1] Because Plaintiff Dhanowa's claims are dismissed, the Court refers to "Plaintiff" or "Amin" throughout the rest of the order.

4

business practice is deceptive is a question of fact and dismissal on this basis is granted only in "rare situation[s]." *Williams*, 552 F.3d at 939*; Hitt v. Arizona Beverage Co., LLC*, No. 08cv809 WQH (POR), 2009 WL 449190, at *7 (S.D. Cal. Feb. 4, 2009) ("[P]arties should be able to submit evidence to demonstrate whether a reasonable consumer would find the labeling on the subject beverages to be deceptive.").

The complaint states that a reasonable consumer ordering a product described as "Tuna," reasonably "believe[s] . . . that the product they are paying for contains *only* tuna and no other fish species, animal products, or miscellaneous products." ECF No. 54 ¶ 4. Subway disagrees, arguing that a reasonable consumer would understand that a tuna salad, sandwich, or wrap contains ingredients other than tuna, such as mayonnaise and bread. ECF No. 57 at 22. Subway further argues that a reasonable consumer "observing a sandwich artist prepare an order in a Subway restaurant" would expect cross-contact between various Subway ingredient because they "would see that those sandwich artists may use the same gloves, utensils and cutting boards to prepare various menu items." *Id.*

Courts have granted dismissals where the complaints allege "that a consumer will read a true statement on a package and will then disregard 'well-known facts of life' and assume things about the products *other than* what the statement actually says." *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGRx), 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (citing cases). For example, in *Williamson v. Apple*, the court found that a reasonable consumer would not believe that "the glass housing on the iPhone 4 was indestructible or drop-proof because . . . it is a well-known fact of life that glass can break under impact, even glass that has been reinforced." No. 11-cv-00377 EJD, 2012 WL 3835104, at *6 (N.D. Cal. Sep. 4, 2012). Consumers regularly encounter "[t]he shattered window of a storefront, the cracked windshield of a car, and the chipped smartphone screen" and it would be a "suspension of logic" to "erase these images from the collective experience." *Id.* Similarly, in *Red*, the court found that a reasonable consumer would not believe that the phrase "Made with Real Vegetables" on a box of crackers "suggests that the product is *healthy* and contains a *significant amount* of vegetables." 2012 WL 5504011, at *3. The court noted that "[t]he fact remains that the product is a box of crackers, and a reasonable

5

1    consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh
2    vegetables." *Id.*

3    On the other hand, in *Williams*, the Ninth Circuit reversed the district court's granting of a
4    motion to dismiss. 552 F.3d at 940. The appellants in that case challenged five features of the
5    packaging used to sell Gerber's fruit juice snacks, including the use of the words "Fruit Juice"
6    alongside images of oranges, peaches, strawberries, and cherries. *Id.* at 936. This representation
7    was deceptive, according to the appellants, because the product contained only white grape juice
8    from concentrate and no fruit juice from any of the fruits on the packaging. *Id.* The Ninth Circuit
9    concluded that a reasonable consumer could be deceived by this packaging and think "that those
10   fruits or their juices are contained in the product." *Id.* at 939. An important feature of *Williams*
11   was that it "involved a challenge to an affirmative misrepresentation"—namely, the product did
12   not contain *any* juice from the fruits pictured on the packaging. *Red*, 2012 WL 5504011, at *3
13   (distinguishing *Williams* on this basis). This is distinguishable from *Red*, where the statement
14   "Made with Real Vegetables" was true, and the court refused to find that a reasonable consumer
15   would assume, without any affirmative misrepresentation, that "a box of crackers is healthful or
16   contains huge amounts of vegetables." *Id.* at *4.

17   It is important to differentiate the three theories in the complaint. The first theory is that a
18   reasonable consumer could understand the phrase "tuna" on the menu to mean that the tuna salad,
19   sandwich, or wrap contains 100% tuna *and nothing else*. *See, e.g.*, ECF No. 54 ¶¶ 2, 4, 5. As in
20   *Red*, a reasonable consumer will not disregard the "well-known facts of life" that a tuna sandwich,
21   salad, or wrap likely contains ingredients other than tuna. *Red*, 2012 WL 5504011, at *3.
22   Consumers understand that tuna salad is usually mixed with mayonnaise and that a tuna sandwich
23   will contain bread. Indeed, even the operative complaint acknowledges that Subway advertises
24   that its tuna salad consists of tuna "blended with creamy mayo." ECF No. 54 ¶ 22. Without an
25   affirmative misrepresentation, the Court will not suspend logic and find that a reasonable
26   consumer would be misled by the mere fact that Subway's tuna products include *any* ingredients
27   beyond tuna. The Court grants Subway's motion to dismiss as to this theory.
28   However, the Court will not dismiss the allegation that the tuna products contain "other

fish species, animal species, or miscellaneous products." ECF No. 54 ¶ 4. Subway argues that any non-tuna DNA discovered when testing its tuna products must come from the eggs in mayonnaise or from cross-contact with other Subway ingredients. *See* ECF No. 57 at 22. Although it is possible that Subway's explanations are the correct ones, it is also possible that these allegations refer to ingredients that a reasonable consumer would not reasonably expect to find in a tuna product. Because the Court "construe[s] the pleadings in the light most favorable to the nonmoving party," *Manzarek v. Saint Paul Fire & Marine Insurance Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), it cannot adopt Subway's explanations at this stage of the litigation. Moreover, even if the Court accepted Subway's statement that all non-tuna DNA must be caused by cross-contact with other Subway ingredients, it still would not dismiss the complaint on this basis. Whether, and to what extent, a reasonable consumer expects cross-contact between various Subway ingredients is a question of fact.

Finally, the complaint alleges that the products "wholly lack[] tuna as an ingredient." ECF No. 54 ¶ 6. Because a reasonable consumer would expect that a product advertised as "tuna" to contain at least some tuna as an ingredient, the Court also denies the motion to dismiss this theory.[2]

### 2.  Rule 9(b)

"Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation and quotation omitted). Subway argues that Plaintiff fails to meet these requirements.

The Court disagrees. The SAC states that the "who" is Subway; the "what" are misrepresentations and/or omissions by Subway through marketing, labeling, and advertising its tuna salad products as "tuna;" the "when" is since 2013 and throughout the Class Period; and the "where" is Subway's in-store and online menus. ECF No. 54 ¶ 42. These allegations satisfy the

---

[2] The Court will also not dismiss allegations regarding the "100% Tuna" statement at this stage of the litigation because it is sufficiently similar to the statement that Amin saw and relied upon. *See Kosta v. Del Monte Corp.*, No. 12-cv-01722-YGR, 2013 WL 2147413, at *15 (N.D. Cal. May 15, 2013) ("[I]n the Court's view, these products and representations are sufficiently similar to those purchased and seen by Plaintiffs, and any concerns regarding the differences among products at issue are better resolved at the class certification stage.").

"who, what, when, and where" of Rule 9(b).  *See, e.g.*, *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 576 (N.D. Cal. 2013) (finding Rule 9(b) satisfied where "the 'who' is Bromley Tea Company and other defendants; the 'what' is nine discrete types of unlawful and deceptive claims by Defendants on the labeling and packaging of its products, including Pure Green Tea and 100% Organic Pure Black Tea, as well as on its website; the 'when' is since 2008 and throughout the class period; the 'where' is Bromley's package labels and website"); *Robinson v. J.M. Smucker Co.*, No. 18-cv-04654-HSG, 2019 WL 2029069, at *3 (N.D. Cal. May 8, 2019) (finding the plaintiff satisfied Rule 9(b) by alleging "that she purchased Crisco EVOO from a Wal-Mart in Antioch multiple times in 2017 and 2018 in reliance on the packaging's purportedly false claim that it was entirely extra virgin olive oil"); *Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. C 10-4387 PJH, C 10-4937 PJH, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011) (finding Rule 9(b) satisfied where the plaintiffs state that "the 'who' is Ben & Jerry's, Breyers, and Unilever.  The 'what' is the statement that ice cream containing alkalized cocoa is 'all natural.'  The 'when' is alleged as 'since at least 2006,' and 'throughout the class period.'  The 'where' is on the ice cream package labels.").

Subway further argues that the complaint fails under Rule 9(b) because it does not explain why Subway's statements are false.  ECF No. 57 at 18.  In making this argument, Subway points to the fact that Amin explains why Subway engaged in the alleged misrepresentations/omissions (to induce consumers to purchase and/or pay a premium for tuna products), ECF No. 54 at 11, when she should have explained "why the statement is actually false," ECF No. 57 at 18 (emphasis omitted).

The Court finds that the complaint "as a whole" is sufficiently specific about what is false and why.[3]  *Embry v. Acer Am. Corp.*, NO. C 09-01808 JW, 2009 WL 10695706, at *8 (N.D. Cal. July 15, 2009) ("[T]he Court finds that Plaintiff's complaint as a whole satisfied the heightened

---

[3] For purposes of this analysis, "how" and "why" are used interchangeably.  *See Zakinov v. Ripple Labs, Inc.*, No. 18-cv-06753-PJH, 2020 WL 922815, at *19 (N.D. Cal. Feb. 26, 2020) (finding the allegations fail under Rule 9(b) where "plaintiff fails to explain how or why the . . . statement is false"); *DotStrategy Co. v. Facebook Inc.*, No. C 20-00170 WHA, 2020 WL 6591366, at *8 (N.D. Cal. Nov. 11, 2020) (finding "plaintiff has failed to allege with the requisite particularity required by Rule 9(b) how and why the . . . representations are false or misleading").

pleading requirements of Rule 9(b)."). It states that the "tuna" description is false either because there is *no* tuna in the products and/or because there are ingredients that a reasonable person would not expect to find in an item described as "tuna." ECF No. 54 ¶ 6. That is enough. *See Phan v. Sargento Foods, Inc.*, No. 20-cv-09251-EMC, 2021 WL 2224260 (N.D. Cal. June 2, 2021) (finding complaint sufficiently specific under Rule 9(b) where the plaintiff alleged that "the 'No Antibiotics*' label [wa]s false because at least some of the Products actually contain[ed] antibiotics").

In addition, Subway claims that the allegations are "completely speculative," in that there is no identification of *how* Subway "engaged in economic adulteration," "substituted" part of the products, or what measures Subway should have taken "to control or prevent the known risks of adulteration." ECF No. 57 at 20-21. But Subway has not provided, and the Court has not located, any case supporting the proposition that Rule 9(b) requires this level of detail in the complaint.

Finally, Subway argues that the complaint fails because there is not enough information about the laboratory testing to make it reliable. But "[n]othing about Rule 9(b) suggests that [Amin] must provide specifics about the means by which the falsity was revealed." *Phan*, 2021 WL 2224260, at *3. Therefore, the Court will not grant the motion on this basis. *Id.*; *see also Robinson*, 2019 WL 2029069, at *3 (finding that the plaintiff was not required under Rule 9(b) "to disclose the test results upon which her allegations are based" at the motion to dismiss stage).

## CONCLUSION

For the foregoing reasons, Subway's motion to dismiss is granted in part and denied in part. Amin may file an amended complaint within 21 days of the date of this order solely to correct the deficiencies identified in this order. Plaintiff Dhanowa's claims are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: July 8, 2022

JON S. TIGAR
United States District Judge

9