| | |
|---|---|
| PATRICK MCNICHOLAS (SBN 125868)<br>pmc@mcnicholaslaw.com<br>JEFFREY LAMB (SBN 257648)<br>jrl@mcnicholaslaw.com<br>EMILY PINCIN (SBN 334566)<br>erp@mcnicholaslaw.com<br>**McNICHOLAS & McNICHOLAS, LLP**<br>10866 Wilshire Blvd., Ste. 1400<br>Los Angeles, California 90024<br>Telephone: 310 474 1582<br>Facsimile:  310 475 7871 | Mark C. Goodman (SBN 154692)<br>mark.goodman@bakermckenzie.com<br>Christina M. Wong (SBN 288171)<br>christina.wong@bakermckenzie.com<br>**BAKER & McKENZIE LLP**<br>Two Embarcadero Center, 11th Floor<br>San Francisco, CA  94111<br>Telephone:  415 576 3000<br>Facsimile:   415 576 3099 |
| MARK LANIER (*Pro Hac Vice*)<br>wml@lanierlawfirm.com<br>ALEX BROWN (*Pro Hac Vice*)<br>alex.brown@lanierlawfirm.com<br>JONATHAN WILKERSON (*Pro Hac Vice*)<br>jonathan.wilkerson@lanierlawfirm.com<br>**THE LANIER LAW FIRM, PC**<br>10940 W. Sam Houston Pkwy N, Ste. 100<br>Houston, TX 77064<br>Telephone: 713 659 5200<br>Facsimile:  713 659 2204 | Attorneys for Defendants<br>SUBWAY RESTAURANTS, LLC,<br>FRANCHISE WORLD HEADQUARTERS, LLC and SUBWAY FRANCHISEE ADVERTISING FUND TRUST  LTD. |

SHALINI DOGRA (SBN 309024)
shalini@dogralawgroup.com
**DOGRA LAW GROUP PC**
2219 Main Street, Unit 239
Santa Monica, CA 90405
Telephone: 747 234 6673
Facsimile:  310 868 0170

Attorneys for Named Plaintiff and Proposed Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NILIMA AMIN, on behalf of themselves and all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>SUBWAY RESTAURANTS, INC., a Delaware Corporation; FRANCHISE WORLD HEADQUARTERS, LLC., a Connecticut Limited Liability Corporation; SUBWAY FRANCHISEE ADVERTISING | Case No: 4:21-CV-00498-JST<br><br>**MODEL STIPULATION AND [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION**<br><br>District Judge Jon S. Tigar<br>Oakland Courthouse, Courtroom 6, 2nd Floor<br><br>TAC Filed: July 28, 2022 |

|   |   |
|---|---|
| 1 | TRUST FUND LTD., a Connecticut Corporation; and DOES 1 through 50, Inclusive, |
| 2 | |
| 3 | Defendants. |

Plaintiff NILIMA AMIN and Defendants SUBWAY RESTAURANTS, LLC. (improperly sued as "Subway Restaurants, Inc."), FRANCHISE WORLD HEADQUARTERS, LLC. and SUBWAY FRANCHISEE ADVERTISING FUND TRUST LTD. (improperly sued as "Subway Franchisee Advertising Trust Fund LTD.") (collectively, the "Parties") jointly submit this Model Stipulation and Order re Discovery of Electronically Stored Information for Standard Litigation, as follows:

1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Court's Guidelines for the Discovery of ESI.

3. PRESERVATION

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

  a) Only ESI created or received between January 21, 2018 and January 21, 2021 will be preserved;

  b) The Parties have begun and will continue to meet and confer regarding the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved; *e.g.*, "HR head," "scientist," and "marketing manager." The Parties shall add or remove custodians as reasonably necessary;

      c)      The Parties will agree on the number of custodians per party for whom ESI will be preserved;

      d)      These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civil P. 26(b)(2)(B) and ESI from the following sources will be preserved but not searched, reviewed or produced:

            i.    backup systems and/or tapes used for disaster recovery;

            ii.   systems, server and network logs; and

            iii.  systems no longer in use that cannot be accessed;

      e)      Among the sources of data the Parties agree are not reasonably accessible and do not need to be preserved are:

            i.    Deleted, slack, fragmented or unallocated data only accessible by forensics;

            ii.   Random access memory (RAM), temporary files or other ephemeral data that are difficult to preserve without disabling the operating system;

            iii.  Temporary internet files, history, cache, cookies and the like;

            iv.  Data in metadata fields that are frequently updated automatically, such as last-opened dates;

            v.   Mobile device activity logs;

            vi.  Server or network logs;

            vii. Dynamic fields in databases or log files not stored or retained in the usual course of business;

            viii. Data stored on photocopiers, scanners and fax machines; or

            ix.  Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement and/or disposition of computer equipment by the party;

4.     SEARCH

      The Parties agree that in responding to an initial Fed. R. Civil P. 34 request, or earlier if

appropriate, they will meet and confer about methods to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

5. PRODUCTION FORMATS

    A. **Digitized Paper Documents:**

        i. Documents originally in paper/physical form will be digitized into single-page, group IV (G4) format, black and white TIFF files at 300 into single-page TIFF images, group IV format, 300 dots per inch (dpi), when possible; documents produced in native format or in an electronic format need not comply with this provision.

        ii. When possible the filename will match the document's Bates number and will be zero padded with no blank spaces. The Bates numbering will be consistent across the production, contain no special characters and be numerically sequential within a given document. Attachments to documents must be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

        iii. The Parties will include with each production delivery an archival image link file as an Opticon image load file (.OPT).

        iv. The Parties will include standard Concordance default delimited text files as agreed in a .DAT file or similar format, and will include all available fielding data, including beginning and ending Bates numbers, beginning and ending attachment numbers and number of pages, except where otherwise agreed. The Parties will produce hard-copy documents with related searchable OCR (as discussed below) and bibliographic information. Multi-page documents must be produced as single documents (*i.e.*, properly unitized) and not multiple single-page documents. Where color is required to interpret the document, that image should be produced in color as .jpg format. Hard-copy photographs should be produced as color .jpg, if originally in color, or grayscale .tif files, if originally in black-and-white.

        v. The Parties will apply Optical Character Recognition (OCR) software to all applicable documents and create OCR-searchable files in .TXT format for each page digitized as in (i) above; filenames for .TXT files will synchronize with/be identical to the filename for the

corresponding TIFF file (see (i) above).  Delivery TIFF files will include the corresponding full text .TXT files.

      **B.**     **Documents Originating Electronically**: Standard electronic documents, emails and presentations will be produced as TIFF images with related searchable text, metadata and bibliographic information.  All passwords and encryption must be removed from electronic documents prior to production.  All attachments addenda, enclosures and/or exhibits to parent documents will be produced and identified as they relate to the respective document.

          i.     Digital documents will be produced with corresponding .TXT files as outlined above in Section (A), *supra,* and with extracted metadata fields, as set forth in the below Metadata Table.

          ii.     Extracted text, as opposed to OCR text, will be delivered with the production and formatted in .TXT file, as above with OCR text files.

          iii.     All spreadsheets will be produced in native format with searchable text for the entire document, metadata and bibliographic information, where available.  The Parties will provide a single placeholder image that must contain at a minimum the BEGDOC# and state that the document was natively produced.  The Bates range for a spreadsheet should be a single number (*e.g.,* ABC00000001 – ABC00000001).  The linked native file name should match the BEGDOC#/DOCID with the appropriate file extension.  Available metadata and text will be produced in the same manner as other documents.

          iv.     The Parties will produce presentations in full slide image format with speaker notes (which should follow the full images of the slides) and with related searchable text, metadata and bibliographic information.  Presentations should also be produced in native format (*e.g.*, as .PPT files).  The linked native file name should match the BEGDOC#/DOCID with the appropriate file extension.

          v.     All hidden text (*e.g.*, track changes, hidden columns, hidden slides, mark-ups, notes) shall be able to be expanded and rendered in the extracted text file.  For files that cannot be expanded, linked native files shall be produced with the image files.

          vi.     All image-only files (*e.g.,* non-searchable .PDFs, multi-page TIFFs, Snipping

Tool screenshots and all other images that contain text) shall be produced with associated OCR text, metadata and bibliographic information.

        vii.      All embedded objects (*e.g.,* graphical files, Word documents, Excel spreadsheets, .wav files) that are found within a file shall be produced so as to maintain the integrity of the source document as a single document. For purposes of production, the embedded files shall remain embedded as part of the original source document. Hyperlinked files must be produced as separate, attached documents. Any objects that cannot be rendered to images and extracted text (*e.g.,* .wav, .avi files) must be produced as separate extracted files treated as attachments to the original file.

        viii.      Archive file types (*e.g.*, .zip, .rar) must be uncompressed for processing. Each file contained within an archive file should be produced as a child to the parent archive file. If the archive file is an attachment, that parent/child relationship must also be preserved.

        ix.      The Parties shall produce, upon request, documents or databases in native format if produced in TIFF or other static format (PDF, etc.) in the event the documents are inadequate in the form produced.

**I.**    **Deduplication**

The Parties will endeavor to deduplicate ESI. Documents will be deduplicated as against the entire population for all custodians and deduplicated custodians listed as above in Section I. The Parties will retain all deduplicated documents for the duration of the action or as agreed and may request production of deduplicated documents for particular custodians by identifying the applicable Bates numbers in writing.

6.    DOCUMENTS PROTECTED FROM DISCOVERY

    a)    Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not a waiver of any valid privilege in this case or in any other federal or state proceeding.

     b)     Communications involving trial counsel that post-date the filing of the original complaint in this action need not be included on a privilege log.  Communications may be identified on a privilege log by category, rather than individually, if appropriate.

7..    MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED.**

Dated:  January 27, 2023     By:   /s/ Patrick McNicholas
    McNICHOLAS & McNICHOLAS, LLP
    Patrick McNicholas, Esq.
    Jeffrey R. Lamb, Esq.
    Emily R. Pincin, Esq.
    *Attorneys for Plaintiffs*

Dated:  January 27, 2023     By:   /s/ Mark Lanier
    THE LANIER LAW FIRM, PC
    Mark Lanier, Esq. (Admitted *Pro Hac Vice*)
    Alex Brown, Esq.  (Admitted *Pro Hac Vice*)
    Mark Lanier, Esq. (Admitted *Pro Hac Vice*)
    Jonathan Wilkerson, Esq. (Admitted *Pro Hac Vice*)
    *Attorneys for Plaintiffs*

Dated:  January 27, 2023     By:   /s/ Shalini Dogra
    DOGRA LAW GROUP PC
    Shalini Dogra, Esq.
    *Attorneys for Plaintiffs*

Dated:  January 27, 2023     By:   /s/ Mark C. Goodman
    BAKER McKENZIE LLP
    Mark C. Goodman, Esq.
    Christina M. Wong, Esq.
    *Attorneys for Defendants*

///

///

**ATTESTATION OF CONCURRENCE**

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) and agreement from all counsel within this e-filed document.

Dated:  January 27, 2023          By:     /s/ Mark C. Goodman
                                          Mark C. Goodman

* * *

**ORDER**

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated: _____     _____
                                          Hon. Jon S. Tigar
                                  UNITED STATES DISTRICT JUDGE