Mark C. Goodman (State Bar No. 154692)
  mark.goodman@bakermckenzie.com
Christina M. Wong (State Bar No. 288171)
  christina.wong@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111
Telephone: +1 415 576 3000
Facsimile:  +1 415 576 3099

Attorneys for Defendants
SUBWAY RESTAURANTS, LLC.,
FRANCHISE WORLD HEADQUARTERS, LLC and
SUBWAY FRANCHISEE ADVERTISING FUND TRUST LTD.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| NILIMA AMIN, on behalf of herself and all others similarly situated,<br><br>             Plaintiffs,<br><br>vs.<br><br>SUBWAY RESTAURANTS, INC., a Delaware Corporation; FRANCHISE WORLD HEADQUARTERS, LLC., a Connecticut Limited Liability Corporation; SUBWAY FRANCHISEE ADVERTISING TRUST FUND LTD., a Connecticut Corporation; and DOES 1 through 50, Inclusive,<br><br>             Defendants. | Case No.  4:21-cv-00498-JST<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS**<br><br>Date:         August 10, 2023<br>Time:        2:00 p.m.<br>Before:      The Hon. Judge Jon S. Tigar<br>Courtroom: 6, 2nd Floor (Oakland) |

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

NOTICE OF MOTION ....................................................................................................................1

REQUESTED RELIEF ..................................................................................................................2

STATEMENT OF ISSUES TO BE DECIDED ...........................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................3

I.      INTRODUCTION .............................................................................................................3

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................................5

        A.      Counsel Notifies Subway Of Its Tuna Claims In March 2020 ...........................5

        B.      Subway Provides Counsel With Proof That Its Tuna Is Real ...........................6

        C.      Counsel Amend The Complaint Three Times, Alleging Shifting Theories About The Tuna Products To Extend The Litigation.......................................................................7

        D.      Plaintiff Fails To Respond To Subway's Discovery By The Statutory Deadline And The Court Orders Counsel To Show Good Cause For This Failure ...............................8

        E.      Plaintiff's Counsel Serves A Harassing 30(b)(6) Deposition Notice ............................10

        F.      Plaintiff's Counsel Fail To Disclose An Expert And Seek Voluntary Dismissal...........11

III.    LEGAL STANDARD .......................................................................................................11

        A.      Sanctions Pursuant To Section 1927.................................................................11

        B.      The Court's Inherent Authority To Issue Sanctions ......................................13

IV.     DISCUSSION ...................................................................................................................13

V.      CONCLUSION..................................................................................................................18

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page No(s).</u>

3

### Cases

4

*B.K.B. v. Maui Police Dept.*,

5
   276 F.3d 1091 (9th Cir. 2002) ................................................................................11, 13

6

*Barber v. Miller*,
   146 F.3d 707 (9th Cir. 1998) .........................................................................................12

7

*Chambers v. NASCO, Inc.*,

8
   501 U.S. 32 (1991) .............................................................................13, 14, 17, 18

9

*Edwards v. General Motors Corp.*,
   153 F.3d 242 (5th Cir. 1998) ..............................................................................12, 14, 18

10

*Fink v. Gomez*,

11
   239 F.3d 989 (9th Cir. 2001) .........................................................................................17

12

*In re Girardi*,

13
   611 F.3d 1027 (9th Cir. 2010) .............................................................................12, 15, 18

14

*Hamilton v. Boise Cascade Express*,
   519 F.3d 1197 (10th Cir. 2008) ............................................................................12, 13

15

*Haynes v. City and County of San Francisco*,

16
   688 F.3d 984 (9th Cir. 2012) ..............................................................................12, 13

17

*Hyde v. Midland Credit Mgmt., Inc.*,

18
   567 F.3d 1137 (9th Cir. 2009) .......................................................................................11

19

*Julien v. Zeringue*,
   864 F.2d 1572 (Fed. Cir. 1989)......................................................................................12

20

*New Alaska Dev. Corp. v. Guetschow*,

21
   869 F.2d 1298 (9th Cir. 1989) .......................................................................................14

22

*Norelus v. Denny's, Inc.*,

23
   628 F.3d 1270 (11th Cir. 2010) .......................................................................................12

24

*People of the State of N.Y. by Vacco v. Operation Rescue Nat.*,
   80 F.3d 64 (2d Cir. 1996)..............................................................................................12

25

*Primus Auto. Fin. Servs., Inc. v. Batarse*,

26
   115 F.3d 644 (9th Cir. 1997) .......................................................................................13

27

28

*Redding v. Prosight Specialty Mgmt. Co.*,
    No. CV 12-98-H-CCL, 2015 WL 3916041 (D. Mont. June 25, 2015).....................................12, 13

*Welk v. GMAC Mortg., LLC*,
    720 F.3d 736 (8th Cir. 2013) ...........................................................................................................12

**Statutes / Other Authorities**

28 U.S.C. §1927 ..................................................................................................................... *passim*

Civ. L. R. 7-2 ...................................................................................................................................1, 2

Civ. L. R. 7-8 ...................................................................................................................................1

Fed. R. Civ. P. 11 ...........................................................................................................................15

Fed. R. Civ. P. 41(a)(2).................................................................................................................10, 11

Kellner Law ...................................................................................................................................8, 9

Lanier Law .....................................................................................................................................6

1

## NOTICE OF MOTION

2

3        Pursuant to 28 U.S.C. §1927, the Court's inherent authority and Local Rules 7-2 and 7-8, notice

4   is hereby given that on August 10, 2023 at 2:00 p.m., or as soon thereafter as counsel may be heard,

5   in Courtroom 6, 2nd Floor, of the United States Courthouse, located at 1301 Clay Street, Oakland,

6   California   94612, before the Honorable Jon S. Tigar, Defendants Subway Restaurants, LLC

7   (improperly sued as "Subway Restaurants, Inc."), Franchise World Headquarters, LLC, and Subway

8   Franchisee Advertising Fund Trust Ltd. (improperly sued as "Subway Franchisee Advertising Trust

9   Fund Ltd.") (collectively, "Subway") will move this Court for an Order of Sanctions against the

10  plaintiff's counsel.

11       This motion is made on the grounds that counsel of record -- specifically, Shalini Dogra, Mark

12  Lanier, Jonathan Wilkerson, Patrick McNicholas, Jeffrey Lamb and Richard Kellner -- unreasonably

13  and vexatiously multiplied proceedings in this action by filing multiple complaints making and then

14  pursuing allegations they knew did not have any truthful basis and did so in bad faith and for the

15  improper purpose of harassing Subway and to extract an unjustified settlement.  The factual allegations

16  in the multiple complaints filed by counsel in this lawyer-driven lawsuit were both patently false and

17  inconsistent with their prior filings and the facts known to the plaintiff's counsel.  Indeed, Subway

18  provided counsel with documents and other evidence demonstrating that the claims alleged against

19  Subway were false but counsel ignored that evidence and refused to abandon their claims, causing

20  Subway to incur substantial expenses that should have never had to have been incurred.  Furthermore,

21  counsel for the plaintiff have conducted themselves in bad faith, including by unreasonably increasing

22  Subway's fees and costs in the litigation, disregarding their discovery obligations, submitting false

23  declarations to the Court, ignoring Court orders and deadlines and belatedly seeking to voluntarily

24  dismiss their claims in an effort to avoid imminent adverse rulings from the Court.

25       This motion is based on this notice of motion, the accompanying memorandum of points and

26  authorities, the declaration of Christina M. Wong, the proposed order, all filings, evidence and

27  pleadings on file in this case and on such other matters and arguments of counsel as may be presented

28  to the Court at or before the time of the hearing.  The amount sought by Subway is just and proper and

the plaintiff's counsel should be sanctioned to prevent and deter them from engaging in further improper litigation conduct and abusing the class action mechanism.

## REQUESTED RELIEF

Defendants' motion seeks sanctions against the plaintiff's seven attorneys in this litigation, jointly and severally, in the amount of $617,955.49, plus additional amounts incurred in connection with bringing this motion and opposing the plaintiff's motion for voluntary dismissal.  These fees and costs were incurred in connection with defending against this frivolous litigation, including by preparing two motions to dismiss the complaints filed by counsel, preparing and responding to discovery, litigating discovery disputes, the cost of experts and in otherwise addressing the false claims made by the plaintiff's counsel and the adverse publicity generated by the same.  Defendants seeks this order pursuant to 28 U.S.C. §1927, the Court's inherent authority, Local Rule 7-2 and any and all other applicable laws.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether sanctions are justified against the plaintiff's counsel for unreasonably and vexatiously initiating and then extending these proceedings, recklessly continuing to pursue this lawsuit when they knew that the lawsuit was unmeritorious?

2.     Whether the Court should exercise its inherent authority to award fees and costs to Subway in light of the plaintiff's counsel's bad faith litigation tactics and vexatious conduct that caused Subway to incur substantial expense that it otherwise would not have had to incur?

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

If ever there was a case that demands the imposition of sanctions against counsel for litigating in bad faith, it is this.  Over two years after they filed this class action alleging fabricated and reckless claims that Subway's tuna is not tuna, the plaintiff's lawyers across four law firms seek to abandon the lawsuit now that they are being forced to actually prove their allegations.  Counsel had more than ample opportunity to conduct due diligence and withdraw this meritless lawsuit at the pleading stage, well before it proceeded to discovery and class certification.  These very experienced lawyers chose not to do so, forcing Subway to incur substantial fees and costs, and should not be permitted to escape responsibility for making that choice.

From the moment the plaintiff's counsel filed this lawsuit in January 2021, Subway has been exceptionally forthcoming -- not only with the plaintiff and her counsel, but with the public -- in showing that Subway's tuna is 100% real, wild-caught tuna.  Having absolutely nothing to hide, Subway voluntarily provided the plaintiff's counsel with documentation detailing its tuna supply chain in such detail that they could track Subway's tuna from the exact location in the ocean where the fish were caught, to the fishery that processed and packaged the tuna, all the way to the Subway restaurants where the tuna was prepared and sold to consumers.  Despite having all of this evidence, the plaintiff's counsel continued to pursue claims that were directly contradicted by the evidence that had been provided to them, filing three amended complaints with ever-shifting absurd theories about the contents of Subway's tuna.  First, counsel claimed that Subway's tuna was not tuna at all.  Then, they claimed that, although the tuna was tuna, it was not the species or type of tuna that the plaintiff supposedly had expected.  When the Court dismissed those claims, counsel reverted back to their original theory that Subway's tuna was not tuna, or that it was not 100% tuna.  Again, all of these theories are clearly debunked by the evidence Subway provided in early 2021.  While Subway expressly and very clearly warned counsel with each amended complaint that it would be seeking sanctions if they chose to pursue claims without a basis in law or fact, in the hope that counsel would abide their ethical obligations and put these claims to rest, the plaintiff's counsel elected to press forward with the litigation, to Subway's great detriment.

Counsel's bad faith litigation tactics took this litigation from one that should have never been filed (or, at the very least, should have been withdrawn at the pleading stage) to an exorbitantly expensive case that has now lasted over two years.  Counsel have forced Subway to go through multiple rounds of motions to dismiss, burdensome discovery, motion practice over the plaintiff's discovery abuses, expert disclosures and preparation for class certification.  And now that counsel are faced with an imminent adverse rulings from the Court for their discovery abuses and a deadline to file a class certification motion that they know they cannot win, they have suddenly decided to abandon this case.  It is not coincidence that this request for voluntary dismissal comes immediately after Judge Cisneros admonished counsel for lying to the Court, before they were required to demonstrate good cause as to why they failed to timely provide discovery responses to Subway and on the heels of their failure to provide class certification expert disclosures.

While Subway agrees that the plaintiff's claims obviously must be dismissed (since they never should have been filed), and this lawsuit should be ended once and for all, it is far too late for the plaintiff's counsel to walk away from the damage they have caused with no ramifications.  There have been real and serious consequences to counsel's frivolous lawsuit and reckless allegations.  On top of substantial litigation costs, Subway has suffered extensive harm to its business and goodwill as a result of the media frenzy created by those sensational allegations, subjecting Subway and its franchisees to public ridicule, reputational harm and loss of business.  To mitigate the impact from the allegations, Subway invested significant resources into combatting the misinformation sown by the plaintiff's lawyers, including by launching a dedicated website fact-checking their baseless claims, detailing to the public the inner workings of Subway's supply chain and explaining its quality control processes.[1]  This campaign to set the record straight and assure consumers that its tuna is, in fact, tuna has been a massive undertaking that was only necessary because the plaintiff's lawyers refused to retract their irresponsible claims at the pleading stage.[2]

While it is important for consumers to have representation in relation to meritorious claims involving dangerous or fraudulent products, this lawsuit highlights the disturbing trend of plaintiffs'

---

[1] Subway has incurred over $617,000 in legal fees and costs alone.
[2] https://www.subway.com/en-us/tunafacts

Case No.  4:21-cv-00498-JST
DEFS' MOTION FOR SANCTIONS

1   class action attorneys filing frivolous lawsuits that they know have no basis in fact or the law.  Such

2   meritless lawyer-driven lawsuits are intended to do one thing:  Exploit consumer laws that are meant

3   to protect actual victims of harm by making false but sensational claims to coerce companies into

4   settlement to avoid reputational harm and the high cost of litigation.  On top of being unjust to

5   Subway, the plaintiff's counsel's illegitimate use of our already overburdened legal system and their

6   abuse of the class action mechanism undermine public policy and diminish the public's faith in the

7   judicial system.  Counsel should not now be allowed to simply walk away from the burning building

8   after all of the harm they have caused.  Indeed, this case is a prime example of why the Court is

9   empowered to impose sanctions for bad faith litigation tactics and can award expenses that never

10  should have been incurred but for such conduct.

11          Given these circumstances, Subway respectfully requests that the Court issue sanctions

12  against the plaintiff's attorneys for filing this lawsuit, maintaining the claims despite clear evidence

13  that the allegations had no merit and forcing Subway to incur substantial fees, costs and damage to

14  its business.

15  **II.      FACTUAL AND PROCEDURAL BACKGROUND**

16          **A.      Counsel Notifies Subway Of Its Tuna Claims In March 2020**

17          On March 17, 2020, Shalini Dogra sent a letter to Subway's parent company indicating that

18  her client, Thomas Bull, intended to bring class action claims against the company based on

19  allegations that tuna products he purchased at Subway® locations "were not in fact tuna, nor did they

20  contain any tuna."  (Wong Decl., Ex 1.)  Ms. Dogra's letter did not provide any basis for these

21  assertions but nonetheless demanded that Subway take various steps to "rectify" the issues

22  complained of in her letter.  (*Id.*)  Subway's legal team promptly responded that its tuna was, in fact,

23  tuna and that Subway had records that verify the authenticity of its tuna products.  (Wong Decl., Ex

24  2.)  Subway also clarified that its corporate parent company, to whom the letter was sent, was not

25  involved the advertising or sale of Subway menu items and would not be a proper party to any lawsuit

26  asserting these claims.  (Wong Decl., Ex 4.)

27          On April 23, 2020, Ms. Dogra sent essentially the same letter to Subway Restaurants, Inc., a

28  leasing entity that was not involved in the advertising or sale of menu items.  (Wong Decl., Ex 3.)

1   Subway's legal team responded to that letter, too, reiterating that there was no basis for those claims.

2   (Wong Decl., Ex 4.)  Subway also told Ms. Dogra that Subway Restaurants, Inc. was a leasing entity

3   and would not be a proper party to any lawsuit relating any tuna-related claims and warned that if

4   she or her client were to improperly name that entity in a lawsuit (which nonetheless she subsequently

5   did), it would seek sanctions.  (*Id.*)  Ms. Dogra never responded to that letter or provided a basis for

6   her allegations.

7           **B.      Subway Provides Counsel With Proof That Its Tuna Is Real**

8           Seven months later, Ms. Dogra teamed up with Mark Lanier -- one of the richest and well-

9   known plaintiffs' class action attorneys in the country -- and two of his colleagues at the Lanier Law

10  Firm (Alex Brown and Jonathan Wilkerson) to file this litigation based on the allegations in Ms.

11  Dogra's 2020 letters but on behalf of different plaintiffs:  Karen Dhanowa and Nilima Amin.  (Dkt.

12  5.)  The complaint named "Subway Restaurants, Inc." as a party even though Subway had made clear

13  to Ms. Dogra that it was not a proper party, demonstrating that she had not conducted an appropriate

14  investigation or diligence before filing the complaint.  Subway immediately sent a letter to Ms. Dogra

15  and the Lanier lawyers citing to its prior correspondence that addressed the baseless nature of these

16  claims.  (Wong Decl., Ex 5.)  Subway demanded that the plaintiffs withdraw their complaint or, at a

17  minimum, provide the DNA testing results that supposedly supported their claims so that Subway

18  could directly address the source of the plaintiffs' mistaken conclusion that its tuna was somehow

19  not tuna.  (*Id.*)   Plaintiffs' counsel refused to provide their testing results and insisted on proceeding

20  with the litigation against Subway Restaurants, Inc. and the other entities.  (Wong Decl., Ex 6.)

21          Having absolutely nothing to hide, Subway took the path of full transparency.  In March and

22  April 2021, Subway provided the plaintiffs' counsel with documents and other information

23  disproving their claim that Subway's tuna was not tuna.  (Wong Decl., Exs. 7-8.)  Despite not

24  knowing exactly what methodology counsel had used to purportedly test the DNA of the tuna in

25  Subway products, Subway provided a scientific explanation that any DNA testing on highly cooked,

26  processed tuna taken from finished Subway products would not render reliable DNA test results.

27  (*Id.*)  Additionally, while having no pre-discovery obligation to do so, Subway produced substantial

28  documents and records establishing that its tuna is real tuna, including certificates of origin from

fisheries, sea captains and canning companies, chain-of-custody records showing where in the ocean the fish was caught and by which boat, and specifications showing where and how the tuna was cooked. (Wong Decl., Exs. 7-8.) Simply put, Subway voluntarily gave the plaintiffs' lawyers more than sufficient evidence for them to know that its tuna is real and that their client's claims were false.

### C. Counsel Amend The Complaint Three Times, Alleging Shifting Theories About The Tuna Products To Extend The Litigation

This lawsuit should have ended when Subway provided evidence that its tuna is tuna. But rather then admit they were wrong, in May 2021 the plaintiffs' legal team brought on three more lawyers from a *third* plaintiffs' class action firm -- Patrick McNicholas, Jeffrey Lamb and Emily Pincin of McNicholas & McNicholas, LLP -- ostensibly to find a way to keep this case going. (Dkt. 25.) Disregarding the clear evidence that Subway provided, the plaintiffs' litigation team filed an amended complaint alleging an entirely new theory: that Subway's tuna products are tuna but may not have been "100% sustainably caught skipjack and yellowfin tuna" and/or might have contained "tuna species that come from anything less than healthy stocks, for example Albacore and Tongol." (Dkt. 33 at ¶¶2, 4-6; *see also* Dkt. 51 at 1.) The problem with that theory was the plaintiffs could not point to any such representations by Subway about its tuna that they read or relied upon. Subway demanded that the plaintiffs withdraw these claims and warned that, if they did not do so, Subway would seek sanctions. (Wong Decl., Ex 9.) Counsel refused, forcing Subway to bring a motion to dismiss. (Dkt. 39; Dkt. 51 at 5-8.) The Court granted Subway's motion and allowed the plaintiffs' counsel leave to amend based on Mr. McNicholas instance at oral argument that they could "simply amend the complaint to adequately plead the reliance." (Transcript of October 7, 2021 Hearing at 5:11-14.)

Rather than plead reliance as Mr. McNicholas represented to the Court, or abandon their manufactured claims as they should have, counsel filed an amended complaint changing their theory about Subway's tuna yet again, this time reverting back to their previously abandoned claim that the tuna products did not contain tuna at all or, alternatively, that the tuna products did not contain "only tuna." (Dkt. 54.) Subway demanded that counsel withdraw that frivolous filing or it would seek sanctions. (Wong Decl., Ex 11.) Counsel refused again, forcing Subway to file another motion to

dismiss that iteration of the complaint, which the Court granted in part and denied in part.  (Dkt. 57 & 62.)  While the Court recognized that Subway's assertions that its tuna is tuna may be true, it allowed the plaintiffs' claims to proceed because it could not adopt merits arguments at the pleading stage.  (Dkt. 62 at 7.)

On July 28, 2022, counsel filed their third amended complaint, this time dropping Karen Dhanowa as a plaintiff and proceeding with just Nilima Amin as the class representative.  (Dkt. 63.) At the first case management conference in the case, the plaintiff's counsel requested leave to add "one or more named plaintiffs" to the case.  (Dkt. 68.)  The Court gave the plaintiff and her counsel until November 10, 2022 to amend the complaint but they did not file an amended pleading or otherwise attempt to add another plaintiff to the litigation.  (Dkt. 70.)

**D.     Plaintiff Fails To Respond To Subway's Discovery By The Statutory Deadline And The Court Orders Counsel To Show Good Cause For This Failure**

Given the tight schedule for class discovery set by the Court, on January 4, 2023, Subway served its first set of written discovery on the plaintiff, making the plaintiff's deadline to respond February 3.  (Dkt. 85, Ex. A-C.)  Although represented by three law firms, the plaintiff failed to respond by the deadline and did not request an extension of time to respond.  (Dkt. 85, Ex. D; Dkt 89 at ¶3.)  On February 10, Subway sent notice to the plaintiff that she waived her objections and demanded that the plaintiff provide substantive responses (without objections) by February 17.  (Dkt. 85, Ex. D.)  Plaintiff's counsel did not respond to that letter and failed to comply with the deadline, even though they had added a fourth law firm, Kellner Law Group, to their growing team of lawyers.[3]

On February 19, the Sunday of the President's Day weekend, the plaintiff finally served discovery responses, including a scant production of just *two documents* in response to Subway's 30 document requests: (1) a heavily redacted credit card statement with no transaction level details; and (2) her resume, totaling a mere 15 pages.  (Dkt. 85, Exs. E-G.)  Plaintiff's written responses were likewise deficient.  Several responses asserted *only* objections (which had been waived) and provided

---

[3] Plaintiff's counsel filed a notice of association of counsel for Richard Kellner on February 16, 2023.  (Dkt. 81.)  However, Mr. Kellner signed the discovery requests that the plaintiff served on February 13, suggesting he was involved in this case before February 16.  [CITE]

no information whatsoever, while others provided incoherent narratives that did not respond to the specific question asked.  (*Id.*)  On March 10, the parties filed a joint discovery letter brief regarding these deficiencies, which was referred to Magistrate Judge Lisa Cisneros.  (Dkt. 82.)

On March 17, Judge Cisneros ordered the parties to provide copies of the relevant discovery requests, the deficient responses and the written communications between the parties by March 21.  (Dkt. 84.)   Subway complied with the order and submitted the requested documents and correspondence by the Court's deadline.  (Dkt. 85.)  Plaintiff's counsel, however, failed to comply with Judge Cisneros's order; six days later, Ms. Dogra submitted a declaration incorrectly stating that "in early February, before the first wave of discovery was due" she "had conversations with defense counsel Christina Wong, Esq. regarding our need for more time to respond."  (Dkt. 86 at ¶3.)  These representations were false, as the first time Ms. Wong met or spoke with Ms. Dogra or any counsel for the plaintiff was on February 21, ***after*** the plaintiff's discovery responses were already past due.  (Dkt. 89 at ¶2.)  Plaintiff's counsel never requested more time to respond or ever contacted Subway's counsel regarding the plaintiff's discovery responses before they were due.  (*Id.* at ¶3.)

On March 30, at the hearing on the discovery letter, Judge Cisneros expressed "concerns about how discovery has been handled by the Plaintiffs' counsel."  (Wong Decl., Ex. 17, 4:6-7.) Mr. Lamb, who appeared on behalf of the plaintiff, had no explanation for Ms. Dogra's statements and admitted that he "was concerned" by her declaration, too.  (*Id.* at 5:20.)  Judge Cisneros admonished the plaintiff's counsel that "it's hard to have much faith in Ms. Dogra because she blew off the deadline that even the Court had set for her to file a declaration.  So her credibility…is in serious question."  (*Id.* at 12:12-15.)  Furthermore, the judge noted that "[a]ll it would have taken was a communication [to Subway], any kind of email, phone call from Ms. Dogra or anybody on the counsel's team" before the plaintiff's deadline to serve responses "but there was nothing and…that is troubling." (*Id.* at 12:17-25.)  Judge Cisneros further stated:  "it's hard to have any kind of confidence in Ms. Dogra going forward.  And I struggle -- I kind of wonder whether or not I have confidence in counsel overall for Plaintiffs." (*Id.* at 13:21-25.)  She then ordered the parties to attempt to reach a compromise regarding the plaintiff's deficient discovery responses and, if the parties could

not reach a compromise, the plaintiff's counsel had to file a declaration by noon on April 5 providing good cause for the untimely discovery responses.  (Dkt. 90, Mar. 30, 2023 Order.)

On April 3, Subway sent the plaintiff its proposed compromise on the parties' discovery dispute but the plaintiff and her counsel never substantively responded to that proposal.  (Wong Decl., Ex 18.)  Instead, on April 4, the plaintiff's counsel contacted the Judge Cisneros's clerk indicating that they intended to file a motion for voluntary dismissal pursuant to Rule 41(a)(2), apparently to avoid Judge Cisneros's discovery order requiring the plaintiff's counsel to submit a declaration of good cause for their discovery abuses.  (Wong Decl., Ex 19.)

**E.     Plaintiff's Counsel Serves A Harassing 30(b)(6) Deposition Notice**

On February 13, 2023, the plaintiff served her first set of written discovery requests on the Subway defendants and issued a 30(b)(6) deposition notice for "Subway Restaurants, Inc."  (Dkt. 85, Ex. E-G.)  Subway timely responded to the written discovery requests to the extent they sought information relating to class certification, which is what the Court had ordered, providing written responses and a substantial production of over 4,800 pages of documents.  (Wong Decl., Ex 14.)  The deposition notice, however, was improper for several reasons.  As an initial matter, as the plaintiff's counsel was well aware, "Subway Restaurants, Inc." was a leasing entity with no responsibility whatsoever for the marketing or sale of any Subway® menu items (including tuna products).  (Wong Decl., Ex 4.)  Subway had repeatedly told the plaintiff's counsel that this entity is not a proper party to the litigation, including in its pre-litigation letter to Ms. Dogra nearly three years earlier.  (Wong Decl., Ex 2.)  Indeed, in her February 5, 2021 letter to Subway's counsel refusing to withdraw the original complaint, Ms. Dogra acknowledged that Subway Restaurants, Inc. is a "leasing entity." (Wong Decl., Ex. 6.)  Subway has also told the plaintiff's counsel that Subway Restaurants, Inc. no longer exists and its successor entity, Subway Restaurants, LLC, likewise has nothing to do with the marketing or sale of tuna.  (Wong Decl., Exs 2 & 4.)  Accordingly, there is no one available from Subway Restaurants, Inc. or LLC that could testify to any of the topics requested in the deposition notice and certainly not to any issue relevant to this litigation.  The deposition notice was also improper because the majority of the listed topics were directed at merits discovery even though the

parties' had previously agreed and the Court ordered that discovery would be bifurcated to address issue of class certification first.  (Wong Decl., Ex 14.)

Due to these deficiencies, Subway requested -- both during a February 21 meet and confer call and in a March 7 letter -- that the plaintiff withdraw the deposition notice and serve a new, revised 30(b)(6) notice on the proper entity (Franchise World Headquarters) that was limited to topics relating to class certification.  (Wong Decl. at ¶¶ 15 & 17 & Ex. 15.)  Counsel refused to withdraw the deposition notice, forcing Subway to prepare a formal response and objections to the notice by the March 15 deadline and to prepare a witness to testify, incurring additional unnecessary fees to do so.

### F.   Plaintiff's Counsel Fail To Disclose An Expert And Seek Voluntary Dismissal

In addition to missing the statutory deadline to respond to Subway's discovery requests, the plaintiff and her counsel failed to meet the April 3 deadline for class certification expert disclosures. (Dkt. 70, Nov. 1, 2022 Scheduling Order; Wong Decl., at ¶ 20.)  Of course, Subway complied with this deadline and provided its expert's report to the plaintiff.  (Wong Decl., at ¶ 20.)

On April 4, the day after receiving Subway's expert report and on the eve of counsel's deadline to file a declaration of good cause regarding their discovery failures, counsel requested that Subway to stipulate to dismiss the case, clearly seeking to avoid the imminent adverse rulings that they would be facing for their failure to abide Court deadlines.  (Wong Decl., Ex 19.)  Subway responded that any stipulated dismissal would need to account for the fees and costs Subway had incurred a result of the plaintiff's frivolous lawsuit.  (Wong Decl., Ex 19.)  Plaintiff did not respond to Subway's conditions and, instead, unilaterally contacted the Court indicating that it intended to file a motion to dismiss pursuant to FRCP 41(a)(2).  (Wong Decl., Ex 20.)

### III.   LEGAL STANDARD

### A.   Sanctions Pursuant To Section 1927

Section 1927 allows the Court to award fees against "any attorney…who so multiples the proceedings in any case unreasonably and vexatiously" in any civil suit in federal court.  28 U.S.C. §1927; *Hyde v. Midland Credit Mgmt., Inc.,* 567 F.3d 1137, 1141 (9th Cir. 2009).  Attorneys' fees

1    under section 1927 are appropriate if an attorney's conduct is in bad faith or reckless.  *B.K.B. v. Maui*

2    *Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir.

3    1998).  The purpose of such awards is "to deter attorney misconduct, or to compensate the victims

4    of an attorney's malfeasance, or to both compensate and deter."  *Haynes v. City and County of San*

5    *Francisco*, 688 F.3d 984, 987 (9th Cir. 2012) (citing *Hamilton v. Boise Cascade Express*, 519 F.3d

6    1197, 1205 (10th Cir. 2008) (sanctions awards are "victim-centered," as their purpose is to

7    compensate a party for having to endure opposing counsel's abusive litigation practices)).  Thus, a

8    district court possesses discretion to determine whether to award "straight fee recovery or a lodestar-

9    limited recovery."  *Hamilton*, 519 F.3d at 1206-07.  Moreover, awards under section 1927 may

10   include the fees and expenses incurred by the opposing party to obtain the award because such

11   amounts are necessarily incurred as a result of the conduct that gave rise to section 1927 sanctions.

12   *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1298 (11th Cir. 2010).

13        To satisfy the "unreasonable and vexatious" requirement, it is sufficient that "the attorney

14   recklessly or intentionally misled the court" or "recklessly raised a frivolous argument which resulted

15   in the multiplication of the proceedings."  *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010).  In

16   other words, sanctions are appropriate under section 1927 where an attorney's conduct, "viewed

17   objectively, manifests either intentional or reckless disregard of the attorney's duties to the court,"

18   *Julien v. Zeringue*, 864 F.2d 1572, 1575 (Fed. Cir. 1989), or "when the attorney's actions are so

19   completely without merit as to require the conclusion that they must have been undertaken for some

20   improper purpose such as delay,"  *People of the State of N.Y. by Vacco v. Operation Rescue Nat.*, 80

21   F.3d 64, 72 (2d Cir. 1996); *Redding v. Prosight Specialty Mgmt. Co.*, No. CV 12-98-H-CCL, 2015

22   WL 3916041 (D. Mont. June 25, 2015).

23        Section 1927 also considers whether the conduct at issue "multipl[ied] the proceedings."  This

24   element is satisfied where the conduct has resulted in unnecessary proceedings caused by, for

25   example, multiple frivolous claims and repeated filings (*see Welk v. GMAC Mortg., LLC*, 720 F.3d

26   736, 738-39 (8th Cir. 2013)) or where an attorney continues to litigate proceedings after their lack of

27   merit has become apparent (*Edwards v. General Motors Corp.*, 153 F.3d 242, 247 (5th Cir. 1998)).

28   The Ninth Circuit has also required a finding of subjective bad faith, "which is present when an

attorney knowingly or recklessly raises a ***frivolous*** argument, or argues a meritorious claim for the purpose of harassing an opponent." *B.K.B.*, 276 F.3d at 1107 (original emphasis) (quoting *Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 436 (9th Cir. 1996); *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (sanctions are appropriate in cases "where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose," *quoting Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)).

### B.  The Court's Inherent Authority To Issue Sanctions

The Court also has the inherent power to assess fees and costs against a party or attorney when either has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).  Courts rely on this inherent authority to impose sanctions, even if sanctions would also be appropriate under other sources of authority.  *Id.* at 50-51.   The purpose of this authority is to allow the courts to "to protect the due and orderly administration of justice and maintain the authority and dignity of the court."  *Batarse*, 115 F.3d at 648 (internal quotations and citation omitted).  "The imposition of sanctions…transcends a court's equitable power concerning relations between the parties and reaches ***a court's inherent power to police itself***, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's misbehavior." *B.K.B*, 276 F.3d at 1108.  Before awarding such sanctions, "the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Batarse,* 115 F.3d at 648 (*quoting Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)).  A finding of bad faith is supported by the same standard required under § 1927.  *See id*; *Redding*, 2015 WL 3916041.

### IV.  DISCUSSION

Plaintiff's counsel's bad faith pursuit of this frivolous lawsuit, reckless misstatements of fact, lack of diligence in abiding deadlines and intentional misrepresentations to the Court warrant an award of Subway's fees and costs under both section 1927 and the Court's inherent authority.  Section 1927 permits the Court to compensate Subway for having to endure counsel's abusive litigation practices and to deter such conduct in the future. *Haynes*, 688 F.3d at 987; *Hamilton*, 519 F.3d at

1205.  Moreover, where "the frequency and severity of [the party's] abuses of the judicial system" are extreme and there is a "resulting need to ensure that such abuses [are] not repeated," the Court has discretion to compensate the party that had to endure such abuses by requiring the offending party to pay all attorneys' fees.  *Chambers*, 501 U.S. at 56-57.  The conduct in this litigation warrants sanctions in the amount of Subway's full expenses on both of these bases.

There can be no legitimate question that this lawsuit is and always has been driven by the plaintiff's lawyers.  In March and April 2020, Ms. Dogra threatened to bring this lawsuit on behalf of a completely different person.  (Wong Decl., Ex 1.)  Subway told her then that the alleged tuna claims lacked any merit and that Subway had records proving its tuna was real.  (Wong Decl., Ex 2.)  Subway also warned Ms. Dogra that she was threatening to sue Subway entities that had nothing to do with the marketing or sale of tuna (*i.e.*, Subway's parent company and leasing entity Subway Restaurants, Inc.).  (Wong Decl., Exs 4.)  Thus, if she were to file claims against these improper entities, Subway would seek sanctions.  (*Id.*)  Ms. Dogra ignored these facts and warnings and, seven months later, teamed up with Mark Lanier to file this lawsuit using new individuals as the named plaintiffs and intentionally naming Subway Restaurants, Inc. as a defendant, even though they knew that entity was not a proper party and had nothing to do with the plaintiff's claims about Subway's tuna.[4]

Even if Ms. Dogra and Mr. Lanier could claim they were somehow unaware that their lawsuit was frivolous when they filed it (which they cannot truthfully do), they could not make such a claim after April 2021, when Subway provided them with documentation that its tuna was real and their clients' claims lacked merit.  *Edwards*, 153 F.3d at 245 (affirming section 1927 sanctions for the "willful continuation of a suit known to be meritless"); *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989) ("Bad faith is present when an attorney knowingly or recklessly

---

[4] On February 5, 2021, after filing the original complaint improperly naming Subway Restaurants, Inc. as a defendant, Ms. Dogra acknowledged in a letter to Subway's counsel that she had received Subway's April 2020 letter and knew that Subway Restaurants, Inc. was a "leasing entity," essentially admitting that she intentionally named a party she knew was improper for no legitimate reason.  (Wong Decl., Ex. 6.)

1    raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent").

2    *Inter alia,* Subway provided counsel with detailed chain-of-custody records tracing Subway's tuna

3    to the exact location in the ocean where the fish was caught, to the fishing boat that caught the tuna,

4    to the fishery that cooked and packaged the tuna, to the distribution center that imported the tuna, all

5    the way through to the specific Subway restaurants where the tuna made into tuna salad and sold to

6    the public. (Wong Decl., Ex 8.)  The documents included nutritional test results, product evaluation

7    documents and Subway's tuna preparation instructions, demonstrating that there was nowhere in the

8    process where the tuna could be substituted or altered.  (Wong Decl., Ex 8.) Subway also provided

9    counsel with a detailed, scientific explanation why the plaintiff's purported methodology of

10   conducting DNA testing on cooked tuna taken from the tuna salad in finished Subway products (*i.e.*,

11   assembled sandwiches, wraps and salads) would not render reliable DNA test results.  (Wong Decl.,

12   Ex 7.)  For instance, when tuna is cooked at high temperatures and processed for packaging, the DNA

13   is denatured and would not provide reliable test results.  (Wong Decl., Ex 7.) And, when the tuna is

14   served at Subway restaurants, it is mixed with mayonnaise at the restaurants to create tuna salad,

15   which would obviously impact DNA testing.  (*Id.*)

16          Even with this evidence, Ms. Dogra and Mr. Lanier still refused to abandon this litigation as

17   they were obligated to do.  *In re Girardi*, 611 F.3d at 1060 (awarding sanctions for violations of

18   section 1927's duty to "correct or withdraw litigation positions after it becomes obvious that they are

19   meritless").  Desperate to keep this high-profile lawsuit alive, the plaintiff's counsel added three more

20   lawyers from a third plaintiffs' firm -- Patrick McNicholas, Jeffrey Lamb and Emily Pincin of

21   McNicholas & McNicholas -- to their team.  (Dkt. 25)  Over the course of the next two years, not

22   only did the plaintiff's team of seven lawyers refuse to abandon the lawsuit -- even after Subway

23   asked them repeatedly to dismiss the claims and notified them that continuing to litigate the case

24   would violate Rule 11 -- they took active steps to prolong the litigation, filing ***three more amended***

25   ***complaints*** alleging ever-shifting theories about Subway's tuna and forcing Subway to bring two

26   complex motions to dismiss, on which Subway was successful.  (Wong Decl., Exs 10-11; Dkt. 33,

27   54 & 64.)

28

1    Counsel continued their harassing and bad faith conduct by continuing to pursue the litigation

2    through the discovery phase while simultaneously being uncooperative throughout that process.  In

3    February 2023, counsel added Richard Kellner, a self-proclaimed plaintiffs' class action expert from

4    a **fourth** law firm, to their already large team to take the lead on discovery in the litigation.  (Dkt.

5    81.)  While Subway participated in discovery in good faith, the plaintiff's counsel completely shirked

6    their obligations.  For instance, even though the Court expressly ordered bifurcated discovery limited

7    to class certification obligations, counsel propounded broad merits discovery and insisted that

8    Subway respond to discovery on the merits despite the Court's order.  (Wong Decl., Exs 12-14.)

9    Counsel also served a harassing 30(b)(6) deposition notice on Subway Restaurants, Inc. -- despite

10   still knowing that it was an improper party that had nothing to do with Subway's tuna products -- and

11   demanded that entity (and that entity only) provide witnesses to testify on forty-five (45) topics, most

12   of which clearly related to merits discovery, in violation of the Court's order.   (Wong Decl., Ex 14.)

13   Despite intentionally serving the wrong entity and propounding merits-based discovery, the

14   plaintiff's lawyers refused to withdraw the deposition notice, forcing Subway's counsel to prepare

15   objections and prepare a witness for deposition on various topics, needlessly driving up costs that

16   could and should have been avoided.  (Wong Decl., Ex 16.)

17       Making things worse, the plaintiff's counsel flouted their client's discovery obligations,

18   forcing Subway to seek Court intervention and incur substantial fees to obtain the information to

19   which it was entitled.  Although represented by eight attorneys, the plaintiff completely ignored

20   Subway's discovery requests and failed to respond by the statutory deadline. (Dkt. 85, Ex. D.)  When

21   Subway sent a letter to counsel a week after the deadline notifying them that the plaintiff had waived

22   her objections by failing to timely respond and demanding that she provide substantive responses

23   (without objections) within a week, they ignored that letter and failed to comply with that deadline.

24   (*Id*.)  Over two weeks after the deadline to respond to discovery had passed, and without providing

25   any explanation whatsoever for the delay, counsel finally served woefully deficient discovery

26   responses that asserted waived objections and did not provide the information requested.  (Dkt. 85,

27   Exs. E-G.)   Subway was then forced to seek the Court's assistance to address these deficient

28   responses. (Dkt. 82.)  In response to Subway's discovery motion, Ms. Dogra submitted a patently

false declaration to the Court claiming that Subway had granted the plaintiff an extension of time to respond to discovery when it absolutely did not do so, intentionally misleading the Court about this issue.  (Dkt. 86 at ¶3; Dkt. 89 at ¶2.)  *See, e.g., Chambers*, 501 U.S. at 42 (affirming district court's award of sanctions for misconduct that included lying to and misleading the court); *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) ("an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power."  Subway was forced to expend still further resources responding to these false claims.  (Dkt. 89.)  There can be no legitimate question that the plaintiff's counsel has conducted themselves in bad faith by flouting discovery obligations and their obligations of candor with the Court, creating unnecessary motion practice for Subway.

That was not the first or only time the plaintiff's attorneys have ignored deadlines or disregarded Court rules in this litigation.  As just a few examples, the plaintiff's counsel: (1) missed the Court's November 10, 2022 deadline to amend the third amended complaint and add "one or more" named plaintiffs (Dkt. 68 at 5; Dkt. 70); (2) failed to provide the plaintiff's sections of the parties' joint case management statement, forcing Subway to file its statement separately to meet the filing deadline[5] (Dkt. 71 & 72); (3) failed to submit documents and correspondence pursuant to the Court's March 17 order (Dkt. 84); and (4) failed to make expert disclosures by the April 3 deadline (Wong Decl. at ¶¶ 13, 20).  It is no coincidence that now, when the plaintiff's counsel are facing possible consequences for these actions and omissions, they are suddenly ready to seek dismissal.  To be sure, through the motion for dismissal, counsel seek to avoid the Court's order that counsel submit a declaration demonstrating good cause for their failure to timely respond to Subway's discovery requests.  (Dkt. 90.)  They also seek to circumvent the consequences of their failure to make expert disclosures, which would preclude them from submitting expert testimony to support their class certification motion if this case were to proceed.  Of course, Subway complied with the expert disclosure deadline and produced to the plaintiff the comprehensive report of its damages

---

[5] Plaintiff subsequently filed her section on January 18, two days after the deadline.

expert, incurring over $75,000 in expert costs that it could have avoided had the plaintiff's counsel dismissed this litigation when they should have.  (Wong Decl., Ex 20.)

Where, as here, the "frequency and severity" of counsel's "abuses of the judicial system" are so extreme as to require the Court to "ensure that such abuses [are] not repeated," the Court has "discretion to vindicate itself and compensate [the injured party] by requiring [the offending litigant or attorney] to pay for all attorney's fees."  *See Chambers*, 501 U.S. at 56-57 (all attorneys' fees recoverable where "Chambers' actions were 'part of a sordid scheme of deliberate misuse of the judicial process' designed 'to defeat NASCO's claim by harassment, repeated and endless delay, mountainous expense and waste of financial resources'").

Plaintiff's counsel should be subject to sanctions for filing this frivolous lawsuit, continuing to prolong litigation despite having clear evidence for *over two years* that their claims were unmeritorious and forcing Subway to incur completely unnecessary costs and fees.  The timing of their sudden request to dismiss this lawsuit shows that lack of merit and is a transparent to try to avoid imminent adverse rulings and events if the case were to proceed.  The law abhors this type of misuse of litigation.  *Chambers*, 501 U.S. at 56-57; *In re Girardi*, 611 F.3d at 1060; *Edwards*, 153 F.3d at 245.  Because this action was brought without any factual basis or reasonable inquiry to determine a factual basis, and seeks nothing more than to harass Subway, the plaintiff and her counsel should be required to reimburse Subway and their counsel for all of the costs and expenses they had to incur to address claims that should never have been brought in the first place.

## V.    CONCLUSION

While sanctions are a harsh punishment reserved for extreme cases, this case is a textbook example of why sanctions exist.  Section 1927 and the Court's inherent authority to issue sanctions are meant to prevent bad faith conduct by counsel and manage litigation conduct.  Here, the plaintiff's team of well-funded lawyers brought a class action lawsuit based on no facts and refused to dismiss this lawsuit years ago after being presented evidence disproving their claims.  Plaintiff's counsel were given every opportunity to withdraw their meritless claims at the pleading stage but they refused to do so, pointedly choosing to ignore the evidence and to force Subway to spend valuable resources litigating claims that have no basis in law or fact, motivated by the prospect that Subway might simply

pay a windfall settlement just to make them and the bad publicity they created go away.  Such litigation conduct is inexcusable and should not be condoned, much less encouraged.  Subway therefore request that the Court exercise the authority afforded by 28 U.S.C. §1927 and its inherent power to impose sanctions on the plaintiff's counsel -- specifically, Shalini Dogra, Mark Lanier, Jonathan Wilkerson, Patrick McNicholas, Jeffrey Lamb and Richard Kellner, all of whom signed various pleadings or actively participated in extending this frivolous lawsuit -- in the amount of $617,955.49, plus additional costs incurred in association with this motion and Subway's opposition to the plaintiff's request for voluntary dismissal, which represents Subway's reasonable attorneys' fees and costs incurred to defend the claims alleged in this litigation.  Should the Court determine that a lesser amount is appropriate, Subway requests sanctions for amounts incurred to defend the litigation after April 2021, when Subway provided the plaintiff's counsel with evidence that Subway's tuna is real and that their clients claims were unsupportable.

Dated:  May 4, 2023

**BAKER & McKENZIE LLP**

By: _____

Mark C. Goodman
Attorneys for Defendants
SUBWAY RESTAURANTS, INC.,
FRANCHISE WORLD HEADQUARTERS,
LLC, and SUBWAY FRANCHISEE
ADVERTISING TRUST FUND LTD.