1 | Mark C. Goodman (State Bar No. 154692)
  |   mark.goodman@bakermckenzie.com
2 | Christina M. Wong (State Bar No. 288171)
  |   christina.wong@bakermckenzie.com
3 | **BAKER & McKENZIE LLP**
  | Two Embarcadero Center, 11th Floor
4 | San Francisco, CA  94111
  | Telephone: +1 415 576 3000
5 | Facsimile:  +1 415 576 3099

6 | Attorneys for Defendants
  | SUBWAY RESTAURANTS, LLC.,
7 | FRANCHISE WORLD HEADQUARTERS, LLC and
  | SUBWAY FRANCHISEE ADVERTISING FUND TRUST LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| NILIMA AMIN, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SUBWAY RESTAURANTS, INC., a Delaware Corporation; FRANCHISE WORLD HEADQUARTERS, LLC., a Connecticut Limited Liability Corporation; SUBWAY FRANCHISEE ADVERTISING TRUST FUND LTD., a Connecticut Corporation; and DOES 1 through 50, Inclusive,<br><br>Defendants. | Case No.  4:21-cv-00498-JST<br><br>**DECLARATION OF CHRISTINA M. WONG IN SUPPORT OF MOTION FOR SANCTIONS**<br><br>Date:         August 10, 2023<br>Time:        2:00 p.m.<br>Before:      The Hon. Judge Jon S. Tigar<br>Courtroom: 6, 2nd Floor (Oakland) |

1

I, Christina M. Wong, declare as follows:

1. I am an attorney admitted to practice law in the state of California. I am an associate with Baker McKenzie LLP, counsel of record for Defendants Subway Restaurants, LLC (improperly sued as "Subway Restaurants, Inc."), Franchise World Headquarters, LLC, and Subway Franchisee Advertising Fund Trust Ltd. (improperly sued as "Subway Franchisee Advertising Trust Fund Ltd.") (collectively, "Subway") in this matter. I make this declaration in support of Subway's Motion for Sanctions. I make this declaration based on my personal knowledge and, if called as a witness, I could and would testify under oath to the facts stated herein.

**Factual And Procedural Background**

2. On March 17, 2020, Shalini Dogra sent a letter to Doctor's Associates Inc., Subway's corporate parent, purportedly on behalf of her client Thomas Bull, claiming that Subway's tuna is not tuna. That letter was forwarded to Baker McKenzie, as Subway's counsel. Attached hereto as **Exhibit 1** is a true and correct copy of Ms. Dogra's March 17, 2020 letter to Doctor's Associates Inc.

3. On April 15, 2020, Subway's in-house counsel responded to Ms. Dogra's March 17 letter confirming that it had records proving that its tuna is tuna and informing Ms. Dogra that Subway's parent company had no involvement in the marketing or sale of Subway tuna products. Baker McKenzie was blind copied with that letter. Attached hereto as **Exhibit 2** is a true and correct copy of Subway's April 15, 2020 letter to Ms. Dogra.

4. On April 23, 2020, Subway Restaurants, Inc. received essentially the same letter that Ms. Dogra sent to Doctor's Associates Inc., a copy of which was forwarded to Baker McKenzie. Attached hereto as **Exhibit 3** is a true and correct copy of Ms. Dogra's letter received by Subway Restaurants, Inc. on April 23, 2020.

5. On June 26, 2020, Subway's in-house counsel responded to Ms. Dogra's April 23 letter again stating that there was no basis for the claim. Subway also specifically told Ms. Dogra that Subway Restaurants, Inc. is a leasing entity that has nothing to do with the marketing or sale of Subway tuna products and that it would not be a proper party to any lawsuit making claims relating to Subway tuna products. Subway warned that, if Ms. Dogra named Subway Restaurants, Inc. in a

lawsuit alleging claims relating to tuna products, it would be required to pursue appropriate sanctions. Baker McKenzie was blind copied with that letter. Attached hereto as **Exhibit 4** is a true and correct copy of Subway's June 26, 2020 letter to Ms. Dogra.

6. On February 1, 2021, after the plaintiff and her lawyers filed their original complaint, my colleague Mark Goodman sent a letter to Ms. Dogra and the Lanier on behalf of Subway referring counsel to Subway's April 15 and June 26, 2020 letters to Ms. Dogra in which it told her there was no factual basis to the allegations in the complaint. The letter demanded that the plaintiffs immediately withdraw their claims and reminded counsel of their duty to comply with Federal Rule of Civil Procedure 11. Attached hereto as **Exhibit 5** is a true and correct copy of Mr. Goodman's February 1, 2021 letter to Ms. Dogra.

7. On February 5, 2021, Ms. Dogra responded to Mr. Goodman's letter that the plaintiffs would not withdraw their complaint. In that letter, she acknowledged that Subway Restaurants, Inc., one of the Subway entities named in the complaint, is a "leasing entity." Attached hereto as **Exhibit 6** is a true and correct copy of Ms. Dogra's February 5, 2021 letter.

8. On March 5, 2021, Mr. Goodman sent a letter to Ms. Dogra, Mark Lanier, Alex Brown and Jonathan Wilkerson by which Subway provided a scientific explanation for why the methodology of conducting DNA testing on processed, denatured tuna extracted from Subway products would not render reliable DNA results. With that letter, Subway also provided documents and records, including certificates of origin from fisheries, sea captains and canning companies, chain of custody records showing where the fish were caught and cooked, product specifications, nutritional testing and evaluation documents and tuna preparation instructions. Subway further demanded that the plaintiff withdraw the lawsuit as without basis in law or fact. Attached hereto as **Exhibit 7** is a true and correct copy of Mr. Goodman's March 5, 2021 letter to Ms. Dogra and the Lanier attorneys.

9. On April 7, 2021, Mr. Goodman sent additional information and documents showing the results of Subway's testing of randomly selected, unopened pouches of its tuna at the distribution level for its California stores. Mr. Goodman's letter also provided background on the tuna catching methods, manufacturing processes and photographic examples of the tuna used in its products.

Subway again demanded that the plaintiff immediately dismiss the lawsuit and retract her claims, which were causing unwarranted and highly damaging negative publicity for Subway. Attached hereto as **Exhibit 8** is a true and correct copy of Mr. Goodman's April 7, 2021 letter to Ms. Dogra and the Lanier attorneys.

10. On June 14, 2021, after the plaintiffs associate Patrick McNicholas, Jeffrey Lamb and Emily Pincin from the McNicholas & McNicholas law firm as counsel and filed their first amended complaint in this litigation, Mr. Goodman sent another letter to counsel demanding that the plaintiff withdraw the pleading on the basis that the allegations were unsupported and directly contradicted by the evidence previously provided by Subway. The letter also warned that, if the plaintiffs did not withdraw their complaint, Subway would seek sanctions. Attached hereto as **Exhibit 9** is a true and correct copy of Mr. Goodman's June 14, 2021 letter to the McNicholas attorneys, Ms. Dogra and the Lanier attorneys.

11. Attached hereto as **Exhibit 10** is a true and correct copy of the transcript of the October 7, 2021 hearing on Subway's motion to dismiss the first amended complaint.

12. On November 11, 2021, after the plaintiffs filed their second amended complaint, Mr. Goodman sent another letter to counsel demanding that they withdraw their pleading on the basis that the pleading reverted back to the plaintiffs' previously abandoned claim that Subway's tuna is not tuna, which was unsupported and contradicted by the evidence Subway had provided in March and April 2021. The letter also reminded the plaintiff's counsel of their duty to comply with Federal Rule of Civil Procedure 11 and demanded that the plaintiffs withdraw the complaint or Subway would pursue sanctions. Attached hereto as **Exhibit 11** is a true and correct copy of Mr. Goodman's November 11, 2021 letter to Ms. Dogra, the Lanier attorneys and the McNicholas attorneys.

13. On January 16, 2023 at 12:25 p.m., I sent a draft joint case management conference statement to Ms. Dogra, the McNicholas attorneys and the Lanier attorneys requesting the plaintiff's sections for filing by 12:00 p.m. on January 17, 2023, in accordance with the Court's scheduling order. (Dkt. 70.) Having received no response, I sent a follow up email on January 17 at 10:50 a.m. requesting the plaintiff's sections. Having still received no response by 11:55 p.m., which was just

1  five minutes before the Court's filing deadline, we proceeded to file Subway's case management
2  statement separately (*see* Dkt. 71).
3        14.    On February 13, 2023, the plaintiff served her first set of discovery requests on
4  Subway and served a 30(b)(6) deposition notice on Subway Restaurants, Inc.  Attached hereto as
5  **Exhibits 12, 13, & 14** are true and correct copies of the plaintiff's February 13, 2023 discovery
6  requests and deposition notice.  As a result of the deposition notice, we worked with Subway to
7  identify witnesses to testify on topics arguably relating to class certification and met with potential
8  witnesses at Subway's headquarters to prepare them for a deposition on class certification issues.
9  We also collected information to prepare responses to the plaintiff's discovery requests.
10       15.    On February 21, 2023, I met with Richard Kellner, Jeffrey Lamb and Shalini Dogra,
11 counsel for the plaintiff, by videoconference.  That was the first time I met the plaintiff's counsel.
12 During that meeting, Mr. Kellner indicated that he would be taking the lead on this litigation for the
13 plaintiff.  I told Mr. Kellner that the plaintiff's 30(b)(6) notice was improper because, among other
14 things, (1) the Court ordered bifurcated discovery limited to class certification at this stage of the
15 litigation and the topics requested sought merits discovery, (2) the notice set the location of the
16 deposition in Los Angeles, when the defendants are all located outside of California, and (3) the
17 notice set a date for the deposition without conferring with on the availability of counsel and the
18 witnesses.
19       16.    On March 6, 2023, I met with Mr. Kellner and Ms. Dogra by videoconference
20 regarding the plaintiff's deficient responses to Subway's January 4, 2023 discovery requests and the
21 plaintiff's improper 30(b)(6) notice.  During that meeting, I again told Mr. Kellner and Ms. Dogra
22 that the plaintiff's deposition notice improperly sought merits discovery and, as we had previously
23 made clear, Subway Restaurants, Inc. is not a proper party to the litigation because it was a leasing
24 entity that had nothing to do with the marketing or sale of Subway's tuna products and that no longer
25 existed in any event.  I also related to the plaintiff's counsel that Subway Restaurants. Inc.'s
26 successor entity, Subway Restaurants, LLC, did not have relevant information, either.  I told counsel
27 that Franchise World Headquarters, LLC was the Subway entity that would have information
28 relating to the class certification topics requested in the deposition notice and, thus, the notice should

be served on that entity and limited to class certification issues. I also told counsel that, although the plaintiff served the wrong entity, we would begin identifying individuals from Franchise World Headquarters that could testify on the topics that related to class certification in an effort to move this case forward. I requested that the plaintiff withdraw the defective subpoena to avoid the need for Subway to prepare objections that would not move the case forward and to avoid needless motion practice.

17. On March 7, 2023, I sent a meet and confer letter to the plaintiff's counsel following up on the February 21 and March 6 meet and confer sessions regarding the impropriety of the plaintiff's 30(b)(6) notice to Subway Restaurants, Inc. and demanded that the plaintiff withdraw the deposition notice or Subway would be forced to respond to the notice and seek its fees and costs for having to do so. Attached hereto as **Exhibit 15** is a true and correct copy of my March 7, 2023 letter to counsel regarding the plaintiff's 30(b)(6) deposition notice.

18. On March 15, 2023, having received no response from the plaintiff's counsel regarding Subway's demand that the plaintiff withdraw the improper 30(b)(6) notice directed at Subway Restaurants, Inc., Subway served on the plaintiff formal objections to the deposition notice. Attached hereto as **Exhibit 16** is a true and correct copy of Subway's March 15, 2023 objections.

19. On March 15, 2023, Subway served responses to the plaintiff's written discovery responses and produced over 4,800 pages of documents to the plaintiff.

20. Pursuant to the Court's November 1, 2022 Scheduling Order (Dkt. 70), the parties' deadlines to exchange expert reports for class certification was April 3, 2023. Subway provided its class certification expert disclosure and expert report to the plaintiff. Plaintiff did not provide any disclosure or report by the April 3 deadline.

21. On March 30, 2023, the Court held a hearing on the discovery letter brief regarding the plaintiff's untimely and deficient discovery responses. Attached hereto as **Exhibit 17** is a true and correct copy of the transcript of the March 30, 2023 hearing.

22. That same day, Mr. Goodman and I received an email from Patrick McNicholas asking to discuss potential resolution of the case. We responded to the plaintiff's proposal with Subway's proposed terms for settlement. Plaintiff's counsel did not respond to our email.

23. On April 3, 2023, Baker McKenzie sent a proposal to the plaintiff's counsel proposing a compromise regarding the plaintiff's discovery responses in accordance with Judge Cisneros's order (Dkt. 90). Having received no response from the plaintiff's counsel, on April 4, 2023, Ms. Chung sent a follow up email to the plaintiff's counsel about Subway's proposal regarding the plaintiff's discovery responses. Attached hereto as **Exhibit 18** is a true and correct copy of the April 3 and 4, 2023 emails from Ms. Chung to the plaintiff's counsel.

24. That same day, Mr. Lamb responded to Ms. Chung's email, stating that, "[i]nstead of addressing the discovery issue," he was preparing "a stipulation for dismissal" and asked if Subway would sign the stipulation. Mr. Goodman responded to Mr. Lamb's email that Subway would oppose a motion to dismiss that did not compensate Subway for its expenses incurred as a result of the plaintiff's lawsuit. Mr. Lamb responded by proposing a joint email to Judge Cisneros. Attached hereto as **Exhibit 19** is a true and correct copy of the April 4, 2023 email exchange between Ms. Chung, Mr. Goodman and Mr. Lamb.

25. Before Subway's counsel had the opportunity to respond to the plaintiff's proposed joint email, Mr. Lamb unilaterally emailed the Court representing that the plaintiff intended to file a motion to dismiss pursuant to Federal Rule of Civil Procedure 41(a)(2). Attached hereto as **Exhibit 20** is a true and correct copy of the April 4, 2023 email from Mr. Lamb to the Court.

**Subway's Attorneys' Fees And Costs**

26. In preparing Subway's motion for fees and costs, I personally reviewed, with the assistance of a senior paralegal in my office, the billing records maintained by Baker McKenzie LLP for this matter dating from the inception of this lawsuit on January 21, 2021 through April 17, 2023.

27. Based upon that review, Subway incurred a total of $498,750.55 in attorneys' fees, $87,227.50 in experts' fees and $31,977.44 in other costs for a total of $617,955.49. This amount does not include all of the fees and costs incurred after April 17, 2023 or associated with bringing this motion or opposing the plaintiff's request for voluntary dismissal.

28. Of the amount set forth in paragraph 27, Subway has been billed for $498,750.55 in attorneys' fees from the inception of this action through April 17, 2023. Based on the above-referenced review of billing records, these legal services rendered include the following:

| Statement Date | Description of Work | Timekeepers' Name/Fees | Total Fees |
|---|---|---|---|
| 02/24/2021 | Review the plaintiffs' complaint and claims relating to tuna products; prepare response to the press regarding inquiries relating to the lawsuit. | Mark Goodman (Partner) $ 1,998.00<br><br>Anne Assayag (Senior Associate) $ 2,680.65 | $ 4,678.65 |
| 03/09/2021 | Prepare Rule 11 letter to the plaintiffs' counsel; review response from the plaintiffs' counsel and prepare reply; development of litigation Strategy (includes, inter alia, legal research, investigation of claims and defenses, case management and administrative tasks); engage experts for analysis on testing methodologies; collect documents relating to supply chain and sourcing information to provide to the plaintiffs' counsel. | Mark Goodman (Partner) $ 12,987.03<br><br>Anne Assayag (Senior Associate) $ 5,999.52<br><br>Peter Barto (Litigation Specialist) $ 1,873.12 | $ 20,859.67 |
| 04/12/2021 | Ongoing meet and confer regarding the plaintiff's claims; research re claims; research relating to protein testing; collect documents relating to authenticity of tuna to provide to the plaintiffs' counsel. | Mark Goodman (Partner) $ 13,186.80<br><br>Anne Assayag (Senior Associate) $ 6,893.10<br><br>Peter Barto (Litigation Specialist) $ 749.25<br><br>Nathaniel Wilkes (Docketing) $ 166.50 | $ 20,995.65 |
| 05/14/2021 | Review and analysis of additional documents for production relating to methodology and manufacturing processes proving authenticity of tuna and prepare letter demanding that the | Mark Goodman (Partner) $ 4,895.10<br><br>Alexander Davis (Senior Associate) $ 421.80<br><br>Anne Assayag (Senior Associate) $ 1,212.67 | $ 6,529.67 |

| Statement Date | Description of Work | Timekeepers' Name/Fees | Total Fees |
|---|---|---|---|
| | plaintiff's counsel withdraw claims. | | |
| 06/08/2021 | Continuation of discussions relating to demand that the plaintiffs withdraw their claims; meet and confer re preparation of joint case management conference statement | Mark Goodman (Partner) $ 11,088.90<br><br>Alexander Davis (Senior Associate) $ 4,218.00<br><br>Anne Assayag (Senior Associate) $ 127.65<br><br>Desirée Hunter-Reay (Associate) $ 434.75<br><br>Nada Hitti (Paralegal) $295.54 | $ 16,164.84 |
| 07/14/2021 | Review and analysis of the plaintiffs' claims set out in first amended complaint; preparation; research relating to new claims and theories; preparation of stipulation for extending time to respond to amended complaint; prepare letter to the plaintiffs' counsel regarding claims; respond to media inquiries regarding the lawsuit. | Mark Goodman (Partner) $ 19,980.00<br><br>Alexander Davis (Senior Associate) $ 4,428.91<br><br>Heiko Burow (of Counsel) $ 610.50<br><br>Peter Barto (Litigation Specialist) $ 1,985.50 | $27,004.91 |
| 08/16/2021 | Conduct legal research and prepare motion to dismiss first amended complaint; compilation of voluminous declarations and supporting exhibits; preparation of request to take judicial notice; preparation of the Subway defendants' corporate disclosure statements and certification of interested entities. | Mark Goodman (Partner) $ 12,121.20<br><br>Alexander Davis (Senior Associate) $ 9,740.26<br><br>Nada Hitti (Paralegal) $ 1,862.95<br><br>Peter Barto (Litigation Specialist) $ 2,712.55 | $26,436.96 |

| Statement Date | Description of Work | Timekeepers' Name/Fees | Total Fees |
|---|---|---|---|
| 09/21/2021 | Review and analysis of the plaintiff's opposition papers to motion to dismiss; research relating to reply to opposition; prepare for and attend hearing on motion to dismiss first amended complaint; review of order granting motion to dismiss with leave to amend the complaint. | Mark Goodman (Partner) $ 7,095.60<br><br>Alexander Davis (Senior Associate) $ 684.00<br><br>Peter Barto (Litigation Specialist) $ 145.80 | $ 7,925.40 |
| 10/18/2021 | Perform case management and provide updates to the client. | Mark Goodman (Partner) $ 388.80 | $ 388.80 |
| 01/21/2022 | Prepare for and participate in hearing on the motion to dismiss; prepare joint case management conference statement. | Mark Goodman (Partner) $ 6,901.20<br><br>Alexander Davis (Senior Associate) $ 9,740.26<br><br>Anne Assayag (Senior Associate) $ 124.20<br><br>Peter Barto (Litigation Specialist) $ 218.70 | $ 8,684.10 |
| 01/31/2022 | Review and conduct research and analysis of claims in the second amended complaint; prepare Rule 11 letter to the plaintiffs' counsel and demand that the plaintiffs withdraw the complaint; prepare motion to dismiss second amended complaint; begin preparation of brief, various declarations and numerous exhibits. | Mark Goodman (Partner) $ 10,303.20<br><br>Anne Assayag (Senior Associate) $ 8,756.10<br><br>Peter Barto (Litigation Specialist) $ 2,624.40<br><br>Tiffany Humphries (Associate) $ 3,419.55<br><br>Kelton Basirico (Associate) $ 765.45 | $ 25,868.70 |
| 01/31/2022 | Research and analysis of various legal theories; continue preparation of the | Mark Goodman (Partner) $ 18,565.20<br><br>Alexander Davis (Senior Associate) | $ 48,770.55 |

| Statement Date | Description of Work | Timekeepers' Name/Fees | Total Fees |
|---|---|---|---|
| | motion to dismiss second amended complaint; meet and confer with plaintiffs' counsel; file of the motion to dismiss; review and analysis of opposition papers; research issues in preparation of reply brief to the opposition; filing of reply. | $ 205.20<br><br>Anne Assayag (Senior Associate) $ 23,784.30<br><br>Peter Barto (Litigation Specialist) $ 1,931.85<br><br>Tiffany Humphries (Associate) $ 3,419.55<br><br>Kelton Basirico (Associate) $2,239.65<br><br>Lynn Danielson (Docketing) $ 36.00<br><br>Nathaniel Wilkes (Docketing) $ 198.00 | |
| 02/28/2022 | Additional research re claims; meet and confer with plaintiffs' counsel re evidence provided. | Mark Goodman (Partner) $ 2,835.00<br><br>Anne Assayag (Senior Associate) $ 2,047.50<br><br>Nathaniel Wilkes (Docketing) $ 54.00 | $ 4,936.50 |
| 03/29/2022 | Continue conducting research. | Mark Goodman (Partner) $ 1,134.00<br><br>Anne Assayag (Senior Associate) $ 393.75<br><br>Peter Barto (Litigation Specialist) $ 191.25 | $ 1,719.00 |
| 04/28/2022 | Perform case management and provide updates to the client. | Mark Goodman (Partner) $ 453.60 | $ 453.60 |
| 08/22/2022 | Review and analysis of order re motion to dismiss second amended complaint; further meet and confer with plaintiff's counsel. | Mark Goodman (Partner) $ 5,443.20<br><br>Anne Assayag (Senior Associate) $ 393.75 | $ 5,836.95 |
| 09/27/2022 | Review and analysis of new claims in plaintiff's third-amended complaint; | Mark Goodman (Partner) $ 4,422.60<br><br>Christina Wong (Senior Associate) $5,518.80 | $ 9,941.40 |

11

| Statement Date | Description of Work | Timekeepers' Name/Fees | Total Fees |
|---|---|---|---|
| | prepare answer for filing with the court. | | |
| 10/18/2022 | Conduct research regarding potential motions. | Mark Goodman (Partner) $ 1,360.89<br><br>Christina Wong (Senior Associate) $3,252.15 | $ 4,612.95 |
| 11/21/2022 | Research issues; meet and confer with experts; review experts' reports; meet and confer regarding case management conference statement. | Mark Goodman (Partner) $ 10,546.20<br><br>Christina Wong (Senior Associate) $ 8,376.75<br><br>Peter Barto (Litigation Specialist) $ 3,098.25<br><br>Valerie Pardon (E-Discovery) $ 337.50 | $ 22,358.70 |
| 11/30/2022 | Research issues; meet and confer with experts; review experts' reports. | Mark Goodman (Partner) $ 5,216.40<br><br>Christina Wong (Senior Associate) $ 4,730.40<br><br>Peter Barto (Litigation Specialist) $ 1,989.00<br><br>Nada Hitti $ 239.40<br><br>Valerie Pardon (E-Discovery) $ 303.75 | $ 12,478.95 |
| 12/14/2022 | Review documents in preparation for initial disclosures. | Christina Wong (Senior Associate) $ 985.50 | $ 985.50 |
| 01/12/2023 | Begin preparation for discovery; meet and confer re various discovery disputes | Mark Goodman (Partner) $ 2,381.40<br><br>Christina Wong (Senior Associate) $ 4336.20<br><br>Michelle Chung (Associate) $ 5,999.85<br><br>Peter Barto (Litigation Specialist) $ 4,092.75<br><br>David Cederquist (E-Discovery) $ 445.50 | $ 17,255.70 |
| 02/28/2023 | Prepare interrogatories, requests for | Mark Goodman (Partner) $ 8,442.00 | $ 27,825.75 |

| Statement Date | Description of Work | Timekeepers' Name/Fees | Total Fees |
|---|---|---|---|
| | production and requests for admission for service on plaintiff's counsel; prepare protective stipulated order for discovery. | Christina Wong (Senior Associate) $ 7,884.00<br><br>Michelle Chung (Associate) $ 11,193.75<br><br>Nathaniel Wilkes (Docketing) $ 306.00 | |
| 03/31/2023 | Review and analysis of discovery propounded by plaintiff; prepare responses; review and analysis of documents; meet and confer re discovery disputes. | Mark Goodman (Partner) $ 9,450.00<br><br>Christina Wong (Senior Associate) $ 10,249.20<br><br>Michelle Chung (Associate) $ 13,342.95<br><br>Peter Barto (Litigation Specialist) $ 3,118.50<br><br>Ben Flint (E-Discovery) $135.00<br><br>Nathaniel Wilkes (Docketing) $ 54.00 | $ 36,349.65 |
| 04/17/2023 | Review plaintiff's responses to discovery; meet and confer re various discovery disputes; prepare and file joint discovery letter brief re plaintiff's responses; attend hearing re discovery disputes. | Mark Goodman (Partner) $ 55,188.00<br><br>Christina Wong (Senior Associate) $ 41,292.45<br><br>Michelle Chung (Associate) $ 33,760.35<br><br>Peter Barto (Litigation Specialist) $ 5,746.95<br><br>Ben Flint (E-Discovery) $ 1,383.75<br><br>David Cederquist (E-Discovery) $ 526.50<br><br>Nada Hitti $ 1,020.60<br><br>Valerie Pardon (E-Discovery) $ 303.75<br><br>Nathaniel Wilkes (Docketing) $ 432.00 | $ 139,688.10 |
| **TOTAL: $498,750.55** | | | |

29. The rates charged by Subway's legal team for this matter are as follows:

| Year | Partner | Associate / Counsel | Paralegal | Litigation Support / eDiscovery |
|---|---|---|---|---|
| 2021 | $1080-1260 | $470-900 | $355-425 | $200 |
| 2022 | $1080-1260 | $315-1095 | $405-425 | $200-473 |
| 2023 | $1260-1400 | $995-1095 | $420-495 | $200-375 |

30. Based on the above-referenced review of Subway's billing records for this matter, Subway incurred $31,977.44 in costs from inception of this litigation through May 1, 2023. These amounts include costs relating to Court filing fees paid by Subway's counsel, online legal research fees, photocopies, postal and courier services, telephone charges, travel airfare, lodging, meals, mileage, transportation charges for case-related hearings and meetings and expert costs.

31. Should the Court grant Subway's request for, Subway will submit its billing records for this matter to the Court for *in camera* review to enable the Court to further assess the specific amounts incurred by Subway.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 4th day of May, 2023 in San Francisco, California.

_____
Christina M. Wong