Mark C. Goodman (State Bar No. 154692)
 mark.goodman@bakermckenzie.com
Christina M. Wong (State Bar No. 288171)
 christina.wong@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111
Telephone: +1 415 576 3000
Facsimile:  +1 415 576 3099

Attorneys for Defendants
SUBWAY RESTAURANTS, LLC.,
FRANCHISE WORLD HEADQUARTERS, LLC and
SUBWAY FRANCHISEE ADVERTISING FUND TRUST LTD.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| NILIMA AMIN, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SUBWAY RESTAURANTS, INC., a Delaware Corporation; FRANCHISE WORLD HEADQUARTERS, LLC., a Connecticut Limited Liability Corporation; SUBWAY FRANCHISEE ADVERTISING TRUST FUND LTD., a Connecticut Corporation; and DOES 1 through 50, Inclusive,<br><br>Defendants. | Case No.  4:21-cv-00498-JST<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS**<br><br>Date:         August 10, 2023<br>Time:         2:00 p.m.<br>Before:      The Hon. Judge Jon S. Tigar<br>Courtroom: 6, 2nd Floor (Oakland) |

**TABLE OF CONTENTS**

**Page No.**

I. INTRODUCTION ................................................................................................................1

II. DISCUSSION .....................................................................................................................2

    A. Sanctions Are Appropriate Because Counsel Knew This Case Was Frivolous ...2

    B. Counsel's Ongoing Misconduct Confirms That Sanctions Are Appropriate .......7

    C. The Sanctions Sought Are Reasonable And Appropriate .....................................8

III. CONCLUSION ...................................................................................................................8

# TABLE OF AUTHORITIES

**Page No(s).**

## Cases

*B.K.B. v. Maui Police Dept.*,
  276 F.3d 1091 (9th Cir. 2002) .................................................................................................. 6

*Edwards v. General Motors Corp.*,
  153 F.3d 242 (5th Cir. 1998) .................................................................................................... 3

*F.D.I.C. v. Calhoun*,
  34 F.3d 1291 (5th Cir. 1994) .................................................................................................... 8

*Guzman v. Walmart Inc.*,
  Case No. 22-cv-03465 (filed May 15, 2023, E.D. Ill.) .............................................................. 2

*Hyde v. Midland Credit Mggmt., Inc.*
  567 F.3d 1137 (9th Cir. 2009.) ................................................................................................. 6

*Lesorgen et al. v. Mondelēz Global, LLC*,
  Case No. 3:22-cv-50375, (filed May 19, 2023, W.D. Ill.) ........................................................ 2

## Statutes

28 U.S.C. §1927 ............................................................................................................................ 6, 8, 9

Fed. R. Civil P. 11 ........................................................................................................................... 1, 2

Fed. R. Civil P. 41 ............................................................................................................................... 7

## I. INTRODUCTION

Plaintiff's counsel do not (and cannot) dispute that, for over two years, they stubbornly pursued claims against Subway notwithstanding the fact that they had been provided detailed records and certifications tracking Subway's tuna from the exact location in the ocean where the fish were caught all the way to the restaurants in which that tuna was sold -- records and information that showed that there was nowhere in the supply chain process where Subway's tuna was or could be substituted with other ingredients.  Counsel have also known for over two years the scientific reason conducting a polymerase chain reaction (PCR) test on high-temperature cooked tuna that has been mixed with other ingredients in a sandwich would not produce reliable DNA results for determining whether the protein is tuna.  Now desperate to avoid responsibility for ignoring the facts and the science, counsel baldly argue that their meritless claims were justified because they simply presented a "conflicting view." But there is an important difference between asserting claims based on genuinely disputed facts and ignoring the evidence and scholarship that lays bare allegations, as counsel have done here.  As officers of the Court, attorneys have an affirmative duty to investigate the factual and legal merits of claims before filing a complaint or making any submission to the Court.  Fed. R. Civil P. 11.  Counsel in this litigation not only did not perform the required diligence, they actively rejected the truth just so that they could keep this abusive, lawyer-driven lawsuit going to Subway's great prejudice.

Tellingly, even after Subway filed its motion detailing counsel's sanctionable misconduct, including Ms. Dogra's fraud on the Court, counsel only continue to employ bad faith litigation tactics: just two weeks ago, counsel filed a brief in which they again blatantly lied to the Court, promising that "[a]t no time" did they seek to dismiss this case without prejudice (*see* Dkt. 104 at 3) when they explicitly stated in their dismissal motion that "there is good cause to continue [the action]" and asked "the Court to dismiss [the plaintiff's] claims **without prejudice**."  (Dkt. 93 at 2 (emphasis added).) This is outrageous.  Indicative of their total disregard for the Court's rules, the plaintiff's reply and this Opposition were **both** filed untimely filed.  This lack of candor and cavalier approach to the rules cannot be without consequence, as the plaintiff's lawyers hope.

Federal courts across the country are recognizing abusive, lawyer-driven consumer class action lawsuits like this one for what they really are:  baseless, self-serving actions that do not promote the

public good but seek to take advantage of consumer protection laws that were not meant to be used as weapons against businesses and to take up court resources with matters that are not based in fact or law.  Very recently, U.S. District Judge Steven Seeger dismissed a putative class action against Walmart complaining about the amount of olive oil in mayonnaise, noting that "Courts have an institutional interest in protecting themselves from frivolous cases, because it is not fair to the countless other litigants in countless other cases that deserve a court's attention."  *Guzman v. Walmart Inc.*, Case No. 22-cv-03465, Dkt. 23, Memo. Op. & Order (filed May 15, 2023, E.D. Ill.).  District Court Judge Iain Johnston likewise dismissed a false advertising lawsuit against popular snack food company Mondelēz alleging that its mint flavored gum did not contain real mint and reprimanded counsel, citing to counsel's Rule 11 obligations.  *Lesorgen et al. v. Mondelēz Global, LLC*, Case No. 3:22-cv-50375, Dkt. 29, Memo. Op. and Order (filed May 19, 2023, W.D. Ill.) ("Spaghetti is best eaten, not thrown at walls").

Counsel's "fake tuna" lawsuit against Subway is more egregious than these cases.  Counsel here had **actual knowledge** that Subway's tuna was not fake and that their "tests" were invalid.  Yet, counsel continued to press forward with their frivolous litigation, driving up litigation costs and wasting precious judicial resources in the process, only to try to abandon their claims when faced with having engage in discovery and prove their case.  This is not okay.  As Judge Seeger noted: "[w]hen a party files a frivolous case, and consumes the court's attention, everyone else foots the bill."  *Guzman v. Walmart Inc.*, Case No. 22-cv-03465, Dkt. 23, Memo. Op. & Order (filed May 15, 2023, E.D. Ill.).  Accordingly, Subway respectfully requests that the Court sanction the plaintiff's counsel and award Subway its full expenses for having to defend against this reckless lawsuit.

## II.   DISCUSSION

### A.   Sanctions Are Appropriate Because Counsel Knew This Case Was Frivolous

Counsel concede that -- years ago -- Subway provided detailed records, certifications and chain-of-custody documents demonstrating that the "fake tuna" allegations that counsel were threatening were unsupportable as a matter of fact.  To avoid the consequences of filing and maintaining this lawsuit in the face of such evidence, counsel argue that the supply chain and sourcing documents that Subway provided to them were unreliable because they were not produced "under

oath" and, thus, have "no particular indicia of reliability." (Dkt. 105 at 5.) This is absurd. Indeed, counsel never challenged the authenticity of Subway's records until faced with a sanctions motion and have never asked Subway to certify or otherwise authenticate the records showing that Subway tuna is real tuna, which Subway obviously surely would have done to avoid the extraordinary expense and negative publicity caused by this litigation. In any event, upon receiving the evidence from Subway, counsel had an duty to investigate the merits of the claims and a duty to cease pursuing the claims once counsel knew they lacked merit. *Edwards v. General Motors Corp.*, 153 F.3d 242, 247 (5th Cir. 1998) (sanctions appropriate for "willful continuation of a suit known to be meritless").

Counsel next suggest that the Court should not consider Subway's proffer of evidence in 2021 because doing so would require a "credibility determination." But that is precisely what the Court must do in ruling on a motion for sanctions. Whether sanctions against counsel pursuing a frivolous claim are appropriate turns on what ***counsel actually knew when they filed and maintained the lawsuit***. The facts relevant to counsel's knowledge and their bad faith conduct in continuing to pursue the claims that they now ask the Court to dismiss demonstrate that counsel knew that their claims were frivolous in 2021 when they filed this lawsuit. As set forth in Subway's motion:

- Counsel knew since 2020 that Subway's documents showed that its tuna is 100% real, line caught tuna to which mayonnaise is added at the restaurants to create Subway's tuna product but counsel nonetheless filed a lawsuit in January 2021 alleging that Subway's tuna was not real tuna and naming Subway Restaurants, Inc., which they knew did not sell any tuna products at all, as a defendant. (Dkt. 102-2, Exs. 2 & 4.)
- Counsel knew by at least March 2021 that conducting a PCR test on heavily cooked, denatured tuna protein that has been mixed with other ingredients (*e.g.*, mayonnaise, sandwich toppings, etc.) would not produce reliable or conclusive test results, as Subway provided an explanation of the science leading to that result and references to the relevant scientific journals and studies detailing the failings in using such tests, but counsel refused to withdraw their baseless claims. (Dkt. 102-2, Exs. 7-8.)
- Counsel knew by at least March or April 2021 that the claims had no factual merit because Subway provided counsel with detailed records and documents showing

exactly where Subway tuna were caught, where and how the tuna were cooked and packaged, where the cooked tuna was imported into the United States and which Subways stores sold specific packages of tuna, which were all labeled, stored, shipped and tracked as required by FDA regulations. Subway also provided counsel with its own test results of unopened pouches of tuna which confirmed the tuna was tuna. (Dkt. 102-2, Exs. 7-8.)

- Counsel amended their claims three times, advancing different theories about Subway's tuna -- despite having information demonstrating that they were making allegations in bad faith -- just to survive the pleading stage. (Dkt. 33, 54 & 63.)

- Counsel disregarded their obligations to litigate this case in good faith, failed to timely respond to Subway's discovery requests, provided woefully deficient late responses and then submitted a false declaration to the Court to try to justify their failures to follow the rules. (Dkt. 85, Exs. A-C.)

- Counsel served a harassing 30(b)(6) notice on Subway Restaurants, Inc. -- the only defendant to receive a deposition notice -- knowing that entity was not a proper party to this litigation and refused to withdraw the improper deposition notice, forcing Subway to lodge objections. (Dkt. 85, Exs. E-G.)

- Counsel ignored the expert disclosure deadline and waited until after Subway provided full expert reports and incurred expert fees before disclosing that it would be seeking to dismiss this lawsuit, without prejudice. (Dkt. 102-2, Exs. 19-20.)

Consistently with the lack of candor displayed throughout this litigation, the plaintiff's counsel -- after claiming that Subway's evidence was not reliable -- accuse Subway of not providing enough information, claiming Subway "fail[ed] to acknowledge or explain how the NY Times and Plaintiff both obtained similar results as to the proteins within the 'tuna' product." (Dkt. 105 at 6.) This claim is also demonstrably false. In Subway's March 5, 2021 letter to counsel, Subway specifically tells counsel that PCR testing on cooked fish is not reliable:

> [T]here is no valid and scientifically supported methodology to reliably test processed tuna products to confirm that they in fact contain tuna. Instead, the denatured proteins in these products result in DNA fragmentation that

>such protein-based testing methods -- including the real-time polymerase chain reaction (PCR) [proposed by the plaintiff's counsel] will fail. (Dkt. 101-2 at 22.)

Subway also provided citations to scientific journals and studies regarding DNA testing on cooked tuna, the full contents of which were available to counsel had they simply taken the time to conduct due diligence. (*Id*.) Moreover, Subway explicitly explained that "DNA testing of processed tuna products -- especially tuna mixed with mayonnaise and other ingredients -- would render results that are 'inconclusive,' due to the inability to detect intact DNA identifying the fish species." (*Id*.) On April 7, 2021, Subway provided to counsel its own test results conducted on unopened pouches of tuna using an appropriate testing methodology, results that, unsurprisingly, confirmed that Subway's tuna was tuna. (Dkt. 102-2 at 72.) Counsel ignored this information, too. Even now, counsel's only response to Subway's scientific explanation is the kind of speculation and circular flawed reasoning that led to the filing of this lawsuit in the first place: "if a product's DNA structure is so denatured [and] broken down" during the cooking process, it begs the question "Is there even tuna in the product." (Dkt. 105 at 6.) As a matter of common sense, simply cooking fish at a very high temperature does not transform that fish into an entirely new species. Cooked tuna is obviously still tuna even if it no longer has detectable DNA.

Counsel then argues that their lawsuit cannot be frivolous because, in June 2021, the New York Times purportedly had a laboratory conduct PCR tests on samples of Subway tuna and those tests could not identify DNA. Ignoring the fact that the New York Times' tests suffered from the same flaws as the plaintiff's counsel's tests, whatever the New York Times -- which had not been provided the information that the plaintiff's counsel had been provided -- purportedly did is completely irrelevant to this lawsuit. What matters in this case is what ***these counsel*** did and what ***these counsel*** knew when they filed and maintained this lawsuit. Indeed, by the time the New York Times article was published in June 2021, counsel had already filed their complaint and Subway had already explained to counsel why PCR tests are inappropriate on the tuna products at issue here. Tellingly, counsel do not even attempt to explain how their claims could be appropriate in the face of the information that was provided to them.

Moreover, even if the New York Times article were relevant to the Court's analysis on Subway's sanctions motion, it does not support counsel's argument that their lawsuit is not frivolous. If anything, the New York Times article supports the conclusion that PCR tests are not reliable for identifying heavily cooked tuna. According to the article, the author took tuna from multiple Subway sandwiches, not from the bags of tuna at the stores, packed those samples in Ziploc bags and shipped them in Styrofoam coolers with ice to a commercial lab to conduct a PCR test. (*See* https://www.nytimes.com/2021/06/19/style/subway-tuna-sandwich-lawsuit.html.) As the plaintiff's counsel should have known by that time, a PCR test is not a reliable method for determining the species of heavily cooked fish and the author of the article recognized this major flaw in the testing, noting in the article that "[o]nce tuna has been cooked, its DNA becomes denatured…**making it difficult, if not impossible to identify**." (*Id*. (emphasis added).) Of course, counsel conveniently omit from the Opposition this critical caveat in the article, which eviscerates their argument. Counsel likewise ignore the crucial fact that multiple labs refused the New York Time's request to test the tuna product samples at all, "citing technical limitations and company policies that made [the samples of] tuna ineligible for analysis." (*Id*.) In fact, the only lab that agreed to conduct a PCR test was "wary about the challenges of identifying a fish that's been cooked at least once, mixed with mayo, frozen and shipped across the country" and refused to be identified in the article. (*Id*.) Unsurprisingly, that anonymous lab concluded that it "cannot identify the species," which merely substantiates exactly what Subway had warned counsel about all along:  PCR testing on cooked tuna would not detect DNA.

Because there can be no question that counsel knew their claims were without merit and they still forged ahead with the litigation despite clear evidence and science, the Court can and should find that those lawyers unreasonably and vexatiously multiplied proceedings and conducted themselves with recklessness and in bad faith. 28 U.S.C. §1927; *Hyde v. Midland Credit Mggmt., Inc.* 567 F.3d 1137, 1141 (9th Cir. 2009.); *B.K.B. v. Maui Police Dept*., 276 F.3d 1091, 1107 (9th Cir. 2002). Accordingly, sanctions are appropriate under section 1927 and the Court's inherent authority.

### B.     Counsel's Ongoing Misconduct Confirms That Sanctions Are Appropriate

Even after Subway filed its motion for sanctions, counsel for the plaintiff continue to engage in bad faith litigation tactics, flouting the Court's rules and telling more bald-faced lies to the Court. In the reply brief in support of the plaintiff's motion for dismissal, Mr. Lamb falsely claims that "***[a]t no time*** did Plaintiff seek dismissal ***without prejudice*** -- Plaintiff is entirely agreeable and assumed this Court would dismiss the action with prejudice." (Dkt. 104 at 3, emphasis added.) This is patently false.  ***The very first paragraph of the plaintiff's motion plainly states***:  "Plaintiff…continues to believe there is good cause to continue [the action] as addressed herein.…Plaintiff respectfully requests the Court to dismiss her claims without prejudice." (Dkt. 93 at 2.)  Given Ms. Dogra's prior misrepresentations to the Court in a sworn declaration -- which counsel do not even acknowledge in the Opposition, let alone dispute -- it is extremely troubling that they would make further misrepresentations to the Court.  Counsel's convenient about-face seeking dismissal with prejudice after vigorously arguing that the case should be dismissed without prejudice is a dishonest attempt to try to avoid sanctions as a condition of dismissal under Federal Rule 41, given that courts are less inclined to issue such sanctions when a case is dismissed with prejudice.  This lack of candor is stretched further when counsel injects two pages of argument opposing sanctions as a condition of dismissal under Rule 41 ***even though Subway is not seeking sanctions under that rule.[1]***

In addition to lying to the Court and misrepresenting Subway's positions, counsel continue to disregard the Court's rules, this time by submitting late filings.  Pursuant to the Court's standing order for all civil cases before Judge Tigar, "[a]ll filing deadlines are at 5:00 p.m. unless otherwise ordered." (Standing Order at 1.)  Twice in the last two weeks, the plaintiff's counsel have submitted filings after the Court's deadline.  Plaintiff's reply brief in support of her motion to dismiss was filed at 5:44 p.m. and the opposition to the sanctions motion was filed at 6:35 p.m.  (*See* Dkt. 104 & Dkt.

---

[1] Subway's motion specifically seeks sanctions pursuant to section 1927 and the Court's inherent authority, yet counsel argues against dismissal under Federal Rule 41. (Dkt. 105 p. 10-12.) Obviously, Rule 41 has nothing to do with Subway's motion.  Counsel's injection of irrelevant arguments appears to be an attempt to make additional arguments in support of the plaintiff's dismissal motion. (*See* Dkt. 104.)  The Court did not authorize or invite counsel or the plaintiff to supplement that motion, so any Rule 41 arguments should not be considered.

105.) While such technical violations of rules are not usually indicia of bad faith, here -- where these counsel have violated myriad other rules and deadlines -- they do reveal counsel's bad faith.

### C. The Sanctions Sought Are Reasonable And Appropriate

Counsel argues that the amount of sanctions that Subway seeks are excessive but they cannot dispute that those fees and costs are what Subway was forced to incur as a result of their baseless claims and bad faith litigation tactics. Tellingly, counsel's cited authority confirms that, where a lawsuit never should have been filed, it is appropriate to "shift the entire financial burden of the action's defense" to the plaintiff. *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994). As discussed *supra* and in Subway's opening papers on this motion, Ms. Dogra knew in 2020 when Subway responded to her two demand letters that Subway had records and documents showing that its tuna was tuna. (Dkt. 102-2, Exs. 2 & 4.) Subway then provided Ms. Dogra and the attorneys at the Lanier law firm with evidence proving its tuna was real in March and April 2021. (Dkt. 102-2, Exs. 7-8.) The attorneys from the McNicholas law firm had that same information when they teamed up with Ms. Dogra and the Lanier lawyers in May 2021, yet those lawyers collectively filed a first, second and third amended complaint anyway. (Dkts. 25 & 33.) Mr. Kellner also had this information when he associated into the case in February 2023 and served an abusive 30(b)(6) deposition notice to the one entity that counsel had been told was an improper defendant to this litigation. Subway was forced to incur significant expenses preparing witnesses to testify to the over forty topics in that notice, just like Subway was forced to respond to baseless claims, try to get the plaintiff to respond to discovery and obtain expert opinions and testimony regarding the inability of a class to be certified in this action. Under such circumstances, the amount of sanctions sought are reasonable and the Court should award Subway all of the expenses it actually incurred since the inception of this lawsuit.

### III. CONCLUSION

Section 1927 and the Court's inherent authority to issue sanctions are meant to prevent bad faith conduct by counsel and to manage litigation conduct. Plaintiff's cadre of well-funded lawyers brought a class action lawsuit that was not supported by facts or law and they refused to dismiss this lawsuit after being presented evidence disproving their claims. Even after Subway filed its motion

8                           Case No.  4:21-cv-00498-JST
                             REPLY ISO DEFS' MOTION FOR SANCTIONS

for sanctions based on their bad faith litigation tactics, counsel continue to lie to the Court and flout the Court's rules.  Such conduct is appalling, inexcusable and sanctionable.

Accordingly, Subway requests that the Court exercise its authority under 28 U.S.C. §1927 and its inherent power to impose sanctions on the plaintiff's counsel -- specifically, Shalini Dogra, Mark Lanier, Jonathan Wilkerson, Patrick McNicholas, Jeffrey Lamb and Richard Kellner, all of whom signed various pleadings and/or actively participated in extending this lawsuit -- in the amount of $617,955.49, plus the costs incurred in association with this motion and Subway's opposition to the plaintiff's request for voluntary dismissal, which represents Subway's reasonable attorneys' fees and costs incurred to defend the claims alleged in this litigation.  Should the Court determine that a lesser amount is appropriate, Subway requests at least sanctions for amounts incurred to defend the litigation since April 2021, when Subway provided the plaintiff's counsel with evidence that Subway's tuna is real and that their client's claims were unsupportable.

Dated:  May 25, 2023                                **BAKER & McKENZIE LLP**


By:    /s/ Mark C. Goodman
          Mark C. Goodman
Attorneys for Defendants
SUBWAY RESTAURANTS, INC.,
FRANCHISE WORLD HEADQUARTERS, LLC, and SUBWAY FRANCHISEE ADVERTISING TRUST FUND LTD.